## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Renita Francois, and<br>McEvans Francois,<br><br>                              Plaintiffs,<br><br>    -against-<br><br><br>Bath & Body Works, LLC,<br>The Premier Candle Corporation,<br>ABC Corporation 1-10, and<br>JOHN and JANE DOES 1-10,<br>                              Defendant. | Civil Action No.: 25-3725<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Renita Francois and McEvans Francois ("Plaintiffs"), by and through their attorneys, bring this action against Bath & Body Works, LLC ("BBW") and The Premier Candle Corporation ("Premier Candle") for strict liability, negligence, failure to warn, product defect, breach of warranty, and loss of consortium related to a defective candle that exploded and caused severe burns and permanent disfigurement to Plaintiff Renita Francois, while being witnessed by her husband, Plaintiff McEvans Francois.

### INTRODUCTION

1. Defendant Bath & Body Works, LLC, does not manufacture its candles. Instead, it outsources production to third-party vendors, including The Premier Candle Corporation, a Canadian company that manufactured the candle in question.

2. Defendant The Premier Candle Corporation operates outside of the United States and is not obligated to follow U.S. manufacturing standards. As a result, the candle that injured Plaintiff was manufactured with substandard materials, improper safety measures, and inadequate testing, creating an unreasonable risk of explosion.

3. Defendants, despite knowing of prior explosions and safety risks related to their three-wick candles, failed to recall, redesign, or properly warn consumers about the risk of catastrophic injury.

4. Before Plaintiff's injury, Defendants were aware of multiple consumer claims of malfunctioning candles bursting into flames beyond the confines of their containers,

exploding, and producing other dangerous effects. Despite this knowledge, Defendants failed to act, demonstrating a reckless disregard for consumer safety.

5. As a direct result of Defendants' conduct:

   a. Plaintiff Renita Francois suffered severe second-degree burns, post-inflammatory hyperpigmentation, emotional distress, and permanent scarring.\Plaintiff McEvans Francois, who witnessed his wife's face crackling as the wax burned her skin, suffered emotional trauma, loss of intimacy, and loss of consortium.

6. As a direct result of Defendants' conduct:

   a. Plaintiff Renita Francois suffered severe second-degree burns, post-inflammatory hyperpigmentation, emotional distress, and permanent scarring.
   b. Plaintiff McEvans Francois, who witnessed his wife's face crackling as the wax burned her skin, suffered emotional trauma, loss of intimacy, and loss of consortium.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (Diversity Jurisdiction), as the parties are citizens of different states and countries, and the amount in controversy exceeds $75,000.00.

8. Venue is proper in the Eastern District of New York according to 28 U.S.C. § 1391(b) because Defendant Bath & Body Works, LLC places its products into the New York retail market, making it subject to jurisdiction in this Court. The plaintiff resides within this jurisdiction. Additionally, The Premier Candle Corporation places its products into the U.S. market through Bath & Body Works, Banana Republic, Michael Kors, PartyLite, Costco, Este Lauder, Ralph Lauren, Crabtree & Evelyn, and Kate Spade, making it subject to jurisdiction in this Court.



**The Premier Candle Corporation Website Detailing some of their US customers**

## THE PARTIES

9.  Plaintiff Renita Francois is a resident of Valley Stream, New York, and was injured in the explosion of a defective Bath & Body Works "Sweater Weather" three-wick candle on January 19, 2023.

10. Plaintiff McEvans Francois is Renita Francois' husband, who witnessed his wife's face catch fire, crackle, and blister as molten wax burned her skin, resulting in severe emotional distress, PTSD, and loss of consortium.

11. Defendant Bath & Body Works, LLC is a Delaware limited liability company with its principal place of business in Reynoldsburg, Ohio. Defendant manufactures, distributes, markets, and sells candles nationwide, including in New York.

12. Defendant The Premier Candle Corporation is a Canadian company that manufactures candles for Bath & Body Works, including the candle that exploded and injured Plaintiff. Premier Candle is not owned or operated by Bath & Body Works, and it is not obligated to follow U.S. manufacturing safety standards.

13. Bath & Body Works negligently outsourced its manufacturing to Premier Candle without maintaining adequate oversight, safety inspections, or quality control, allowing dangerous candles to enter the U.S. market.

14. Defendant ABC Corporation 1-10 are corporations or entities whose identities are currently unknown but who participated in, facilitated, or benefited from the wrongful conduct alleged herein.

15. Defendants John Does 1-10 are other individuals and entities whose identities are currently unknown but who have played a role in the wrongful conduct alleged herein.

## FACTUAL BACKGROUND

### BEFORE THE CANDLE WAX EXPLOSION:
### THE LIFE OF RENITA FRANCOIS

16. Before the catastrophic explosion that left her permanently scarred and forced her to confront challenges she never imagined, Renita Francois was—and still is—a leader, a visionary, and a woman of remarkable strength.

17. However, the explosion irrevocably changed how she experiences the world, how she moves through spaces, and how others perceive her.

18. Renita's confidence, once unshakable, has been fractured. As a forward-facing leader in public safety, policy, and social justice, she has always been on stage, at podiums, in front of cameras, and in rooms where her voice carried weight.

19. Now, she finds herself forced to navigate sympathy, unwanted stares, and intrusive questions about her injuries rather than the work she is there to champion.

20. This is not just a physical injury—it is an emotional and psychological battle, an assault on her self-perception, and a daily reminder of a tragedy that could have been prevented.

1. A Life Rooted in Family, Love, and Purpose

21. Renita's most significant source of joy and grounding has always been her family.

22. Her 2016 family photo encapsulates the strength of her foundation—a loving, joyful, and deeply connected home built with her husband and children. She was not just a mother and wife—she was the glue that held everything together.

a. A Mother First – Her 2014 and 2017 maternity photos reflect the pure joy of anticipation, a woman eagerly awaiting the arrival of her children, committed to creating a loving, secure, and inspiring home.





5

**CIRCA 2014, CLEAR FACED, BURN FREE RENITA FRANCOIS AND HER
HUSBAND MCEVANS FRANCOIS ENJOY THEIR FIRST YEAR OF MARRIAGE
AND THE BIRTH OF THEIR FIRST CHILD**

b. Cherishing Milestones – In her 2015 photo with her daughter, she is the embodiment
of maternal pride, savoring the small but significant moments that make motherhood
meaningful.



**PLAINTIFF RENITA FRANCOIS CLEAR FACED AND INJURY FREE
IN A PHOTO WITH HER DAUGHTER**

c.  Family Traditions and Unity – The 2018 Christmas family photo is more than just a holiday portrait—it is a testament to how Renita cultivated a home filled with joy, traditions, and unwavering love.



**2017 PREPARING TO WELCOME A NEW MEMBER TO THE FAMILY**



**2018 HOLIDAY PHOTO WITH THEIR EXPANDED FAMILY**

23. She is not just present in her family's life—she is their foundation.

24. Now, the mother who once created magical childhood memories for her children is faced with the painful reality of them seeing her differently, asking questions about the scars that weren't there before, and witnessing her struggle with insecurities she never had.

   2.  A Trailblazer in Leadership and Public Service

25. Renita is a nationally recognized leader in public safety, community advocacy, and strategic policy reform.

   a. A Cornell-Educated Executive – She earned an MBA in General Management from Cornell University's Johnson College of Business, a testament to her intellect, leadership, and ability to navigate complex systems of governance.

   b. A Proud Member of Alpha Kappa Alpha Sorority, Incorporated – As a lifelong member of Alpha Kappa Alpha Sorority, Inc., she has lived by the principles of scholarship, leadership, and service, paving the way for women in business, advocacy, and government.

   c. An Architect of Public Safety Reform – As Executive Director of the Mayor's Action Plan for Neighborhood Safety, she revolutionized the way New York City approached crime prevention, ensuring that communities were active participants in shaping safety policies.

   d. A National Changemaker – As Chief Strategy Officer at Tides Advocacy, she expanded her impact beyond New York, leading national initiatives in social justice and political reform.

26. Her 2019 photo with Mayor Bill de Blasio is proof of her significant role in shaping policies at the highest levels. She was not just in the room—she was leading the conversation.



**PICTURED WITH CHIRLANE MCCRAY, FORMER FIRST LADY OF NEW YORK CITY, AND FORMER NEW YORK CITY MAYOR BILL DE BLASIO.  PLAINTIFF FRANCOIS IS CLEAR FACED AND SCAR FREE IN 2019 AS EXECUTIVE DIRECTOR OF THE MAYOR'S ACTION PLAN FOR NEIGHBORHOOD SAFETY**

27. Now, she dreads stepping in front of a room.

28. Before the explosion, Renita was bold, fearless, and effortless in commanding an audience.

29. Today, she walks into public meetings, panel discussions, and leadership summits knowing that her scars speak before she does.

30. Instead of her policy expertise, her years of experience, or the transformative work she has led, the first thing people see, the first thing they ask about, is what happened to her face.

31. This should not be her reality.

32. She should not have to explain the pain of an explosion every time she walks into a room. She should not have to brace for sympathy, pity, or invasive questions before she gets to discuss the work she has dedicated her life to.

   3.   A Life of Celebration, Connection, and Energy

33. Renita has always been the life of the party, the connector, the woman who makes things happen.

34. She was the one who brought people together, whether for family celebrations, professional networking events, or impromptu gatherings just for the joy of it.

   a.   Her 2014 and 2016 family photos show her ability to turn everyday life into something special, always adding warmth, love, and intention to the lives of those around her.



**2016 FAMILY PHOTO, BURN FREE AND SCAR FREE**

10

    b. She was the organizer, the friend who checked in, the person who made sure everyone was celebrated and supported.

    c. She thrived on connection—she lived for engaging with people, building relationships, and being in spaces where she could uplift others.

35. Now, she hesitates before stepping into social settings.

36. She worries about who will stare too long, who will whisper, who will say something inappropriate but well-meaning.

37. She carries the weight of knowing that when people see her, they don't see the confident, accomplished woman she has always been—they see a victim, a woman who suffered an unthinkable injury. They let their perception of her change before she even speaks.

38. This is not how Renita should have to experience the world.

    4. <u>A Life Forever Altered</u>

39. On January 19, 2023, in an instant, Renita Francois' life was changed in ways she never could have imagined.

40. The Bath & Body Works "Sweater Weather" three-wick candle, manufactured by The Premier Candle Corporation, exploded in her face, engulfing her skin, lips, and hands in molten wax and flames.

    a. The woman who once moved through the world with confidence now navigates it with uncertainty and self-consciousness.

    b. The woman whose smile was a source of joy for those around her now sees only the scars left behind by corporate negligence.

    c. The woman who dedicated her life to uplifting others now fights for her own justice, for accountability, and for the right to be seen for who she truly is, not just what happened to her.



11

41. Despite everything, Renita Francois is still here. She is still powerful, still brilliant, still a force to be reckoned with.

42. But her life should not have been forced into this new reality.

43. This lawsuit is not just about compensation—it is about accountability. It is about ensuring that corporations that prioritize profit over consumer safety do not escape responsibility for the harm they cause.

44. This is about making sure that Renita's scars are not just a painful reminder of negligence but a catalyst for justice.

### THE EXPLOSION:
### A MOMENT OF HORROR THAT CHANGED EVERYTHING

1.  A Quiet Evening Turned Catastrophic

45. On the morning of January 19, 2023, Renita Francois was in the comfort of her home, preparing for her day. Like countless others, she lit her Bath & Body Works "Sweater Weather" three-wick candle, expecting nothing more than a warm glow and a pleasant scent.

46. Instead, within moments, her life changed forever.

47. As Renita smelled the candle, a sudden explosion erupted from the glass container, propelling molten wax and flames outward in every direction.


### RENITAS PILLOW AND BED SHEET WITH WAX
### AFTER THE CANDLE EXPLODED

48. The force of the explosion sent a shockwave of fire and debris directly into her face.

    a.  Scalding hot wax covered her skin within seconds, searing into her forehead, cheeks, and lips.
    b.  Her vision blurred as the heat engulfed her, her eyelashes melting, her eyebrows singed away in an instant.
    c.  Her skin, once smooth and unblemished, began to sizzle, forming immediate blisters and raw, exposed burns.

49. The pain was instant, unrelenting, and beyond anything she had ever experienced. The wax continued to burn as it hardened, refusing to cool.

50. Her husband, watching in horror, scrambled to extinguish the fire and get her to safety, but the damage had already been done.

2.  The Aftermath: A Scene of Devastation

    a.  <u>The Physical Damage</u>

51. Renita's once-pristine bedroom had been transformed into a disaster zone.

    a.  The burnt candle sat deformed on her dresser, its glass container charred, cracked, and partially disintegrated from the blast.



**DEFENDANTS CANDLE AT THE LOCATION OF THE FIRE**

b. Molten wax had splattered across the room, staining the walls, bedding, and furniture.



**DEFENDANTS CANDLE AT THE LOCATION OF THE FIRE**

c. The floors were covered in hardened wax, a visible path from the bedroom to the bathroom, where Renita's husband had desperately tried to cool the burning wax from her face and arms under running water.



**CANDLE WAX ON FLOOR FROM THE BEDROOM TO THE BATHROOM SINK WHERE RENITAS' HUSBAND OUSTED THE FLAME IN WATER. AS HE RAN TO OUT THE FLAME, THE WAX SPILLED ONTO THE FLOOR**

d.  The plaintiff's Husband removed the label from the Candle after it had cooled down, as the label had shriveled and melted.



**LABEL FROM CANDLE**



**AFTERMATH OF CANDLE**

52. The photos of the scene tell a chilling story—this was not a minor accident. This was an uncontrolled explosion.

    a. <u>Renita's Injuries: A Lifetime of Scars</u>

53. The true devastation, however, was not the damaged furniture or wax-covered floors—it was the irreversible injury to Renita's face and body.

    a. Her face was left raw and swollen, her skin blistering and peeling from the extreme heat.



b. Her lips were burned and cracked; her facial skin marred by large patches of darkened, damaged tissue.



c. Her arms, which she had instinctively used to shield herself, bore deep, circular burn
   wounds, permanent reminders of where the wax had struck.



54. The pain was beyond excruciating. Her body trembled from shock; her nervous system was overwhelmed by the severity of the burns. There was no escape from the agony, no way to undo the damage that had already occurred.

55. The woman who once carried herself with confidence, who stood before audiences as a leader, a changemaker, a force of nature, now found herself unrecognizable in the mirror.

   3.  <u>Medical Emergency: The Fight to Preserve Her Face</u>

56. Renita was rushed to the emergency room, where doctors and nurses scrambled to treat her injuries.

     a.  Her face was nearly unrecognizable—swollen, raw, and covered in layers of burnt and peeling skin.



b. Her eyes, partially sealed by swelling, barely opened as the medical team assessed the extent of the burns.



c.  Every touch, every movement, every attempt to clean her wounds sent fresh waves of searing pain through her body.



57. She was diagnosed with second-degree burns covering large portions of her face and arms. Doctors warned that some areas might require extensive long-term treatment, including laser therapy and reconstructive dermatology.

    4. The Psychological and Emotional Toll

58. The explosion did not just leave physical scars—it left deep emotional wounds.

    a. A confident, highly visible leader, Renita had spent years standing before crowds, leading policy discussions, and appearing on public panels.

    b. Now, she found herself hesitating before stepping into the public eye, fearing the stares, the whispers, the inevitable questions about her injuries.

    c. The woman who once commanded respect for her expertise now found that the first thing people noticed was the damage to her face, not the brilliance of her mind.

59. Her self-esteem, once unshakable, had been shattered. She no longer felt like the woman she had worked so hard to become.

60. Her children, too young to fully understand what had happened, saw their mother in pain and asked questions she wasn't ready to answer.

    a. "Mommy, what happened to your face?"

    b. "Are you going to be, okay?"

61. Questions that cut deeper than the burns ever could.

**A PREVENTABLE TRAGEDY
CAUSED BY NEGLIGENCE**

62. This was not an isolated incident.

63. Bath & Body Works and its third-party manufacturer, The Premier Candle Corporation, knew or should have known that their candles posed a risk of explosion.

    a. This was a product marketed for relaxation, yet it became a source of severe injury and permanent trauma.

    b. This was a brand trusted by millions, yet they failed to test their product properly, ignored safety risks, and prioritized profit over consumer safety.

    c. This was a candle sold without an adequate warning, leaving customers like Renita vulnerable to life-altering injuries.

64. The pain, the scars, the irreversible changes to Renita's life—none of it had to happen.

65. This lawsuit is not just about what happened to Renita—it is about preventing this from happening to anyone else.

## DEFENDANTS KNEW OR SHOULD HAVE KNOWN:
## THE TOXIC AND HIGHLY FLAMMABLE
## NATURE OF THE SWEATER WEATHER CANDLE

66. Bath & Body Works, LLC and its third-party manufacturer, The Premier Candle Corporation, had ample prior knowledge that their candles posed a serious and foreseeable risk of explosion, severe burns, and life-altering injuries.

67. Despite this knowledge, they continued to manufacture, market, and sell defective candles without adequate warnings, proper testing, or necessary product modifications to prevent catastrophic failures.

68. This was not an accident—this was the direct result of corporate negligence, a pattern of ignored warnings, and a willful disregard for consumer safety.

69. Despite selling the candle as a harmless everyday item, Defendants knew or should have known that the ingredients used in its formulation were volatile, combustible, and capable of causing severe harm. The product contained the following hazardous substances:

1. <u>A Product Composed of Highly Flammable and Toxic Chemicals</u>

    a. HF Wax - IGI 1230 Fully Refined Paraffin Wax (10-30%)
   - A petroleum-based substance known for its flammability.
   - When burned, it can release toxic fumes, including benzene and toluene, both classified as carcinogens.
   - Paraffin wax has been studied for its potential to emit harmful volatile organic compounds (VOCs) when heated, contributing to indoor air pollution and fire hazards.

    b. Benzyl Benzoate (5-10%)
   - Classified as an Acute Toxicant (H302)—harmful if swallowed.
   - Known to cause skin irritation and allergic reactions.
   - Listed as hazardous to the environment (H411), demonstrating its toxic persistence.

    c. Cineole (<1%)
   - Flammable liquid classification (H226)—confirming its potential for fire hazards.
   - Used in various fragrance products, cineole is highly volatile and can intensify combustion when exposed to an ignition source.

    d. 2,4-Dimethylcyclohex-3-ene-1-carbaldehyde (<1%)
   - Causes skin irritation (H315) and is classified as a skin sensitizer (H317).

- Toxic to aquatic life (H411), suggesting prolonged hazardous effects even in small amounts.
- Its presence in the candle mixture increases the risk of unstable combustion reactions.

e. 2-Methyl-5-(1-methylethenyl) cyclohex-2-en-1-one (<1%)

- Harmful if swallowed (H302) and classified as a skin sensitizer (H317).
- The compound is combustible and can contribute to flash fires when exposed to heat or direct flames.

f. 1,3,4,6,7,8-Hexahydro-4,6,6,7,8,8-hexamethylindeno[5,6-c] pyran (<1%)

- Classified as an Aquatic Acute Toxin (H400) and Aquatic Chronic Toxin (H410), revealing its long-term toxic effects.
- This chemical is often used in fragrances but has been flagged for its potential to emit harmful vapors when burned.

g. 2,6-Di-tert-butyl-p-cresol (<1%)

- Known for its ability to accumulate in biological systems and the environment.
- Can decompose into hazardous byproducts when exposed to high temperatures.

2. <u>A Reckless Combination: Why This Candle Was a Fire and Explosion Hazard</u>

70. The Sweater Weather candle was not merely a fire hazard due to the presence of an open flame, but because its chemical formulation actively contributed to dangerous combustion reactions.

   a. The highly flammable nature of its wax and chemical additives made it susceptible to flash ignition, increasing the risk of unexpected flame height and instability.

   b. The presence of volatile fragrance chemicals, including benzyl benzoate and cineole, created a flammable vapor environment around the candle.

   c. These vapors, combined with sustained heat from burning wicks, could lead to an accelerated combustion event, also known as a flashover or explosion.

   d. The candle's glass container was not reinforced to withstand such volatile reactions, increasing the likelihood of rupture, glass shattering, and wax projection upon ignition.

71. Defendants knew or should have known that the combination of these substances posed a significant risk of sudden and dangerous combustion, making the candle inherently unsafe for household use.

**FORESEEABLE RISK:**
**DEFENDANTS FAILED TO WARN CONSUMERS**

72. Despite this clear chemical instability, Defendants failed to provide an adequate warning regarding:

a. The heightened risk of flare-ups and unpredictable flame behavior due to the candle's volatile fragrance and wax formulation.

b. The potential for flash fires and sudden wax ignition, which could result in severe burns or explosions.

c. The failure of the glass container to withstand rapid combustion reactions, making it prone to shattering upon exposure to extreme heat and fire expansion.

d. The presence of airborne toxins released upon burning increases the risk of indoor air contamination, skin irritation, and respiratory distress.

73. Had Defendants exercised reasonable care, Renita Francois would not have suffered severe burns, scarring, and permanent disfigurement from an entirely preventable explosion.

74. Instead, Defendants marketed a dangerously defective product without disclosing its toxic, flammable, and inherently hazardous nature, placing millions of unsuspecting consumers at risk.

75. This lawsuit seeks to hold them accountable for their negligence, their failure to warn, and their reckless disregard for consumer safety.



## DEFENDANTS' PRIOR KNOWLEDGE OF CANDLE
## EXPLOSION RISKS AND FAILURE TO WARN

76. The explosion of the Bath & Body Works "Sweater Weather" Scented Candle was not an isolated event—it was the result of longstanding defects that Defendants knew about and actively chose to ignore. Bath & Body Works, LLC, and its third-party manufacturer, The Premier Candle Corporation, had a clear and documented history of candle-related hazards, including prior recalls, explosion complaints, and known chemical instability within their products.

77. Despite these red flags, Defendants continued to manufacture, distribute, and market their candles without implementing necessary safety measures, reinforcing containers, or providing adequate warnings to consumers.

78. This failure to act demonstrates a blatant disregard for consumer safety, directly leading to Renita Francois' catastrophic injuries.

1.  A Documented History of Explosive Candle Failures

79. As early as 2016, Bath & Body Works was forced to recall certain votive candles due to explosion risks, signaling corporate knowledge of the issue.

   a. The Consumer Product Safety Commission (CPSC) recall records show that candles manufactured and sold by Bath & Body Works were prone to excessive flame heights, uncontrolled burn rates, and structural failures.
   b. These defects led to documented cases of candle explosions, glass shattering, and injuries caused by molten wax and fire hazards.
   c. Despite this prior recall, Defendants failed to conduct a comprehensive safety review of their candle line, continuing to sell products with similar flammable and unstable compositions.

80. Given this prior knowledge, Bath & Body Works and The Premier Candle Corporation had an undeniable duty to reassess and reformulate their candles to prevent further incidents, yet they chose not to.

81. Instead of addressing serious safety concerns, Defendants continued to market and sell candles with volatile, flammable ingredients that had already caused documented injuries.

2.  A Pattern of Consumer Complaints, Ignored by Defendants

82. Beyond the recall history, consumers had repeatedly warned Bath & Body Works that their candles were hazardous, describing experiences eerily similar to what happened to Renita Francois.

83. A review of documented consumer complaints highlights a disturbing pattern of negligence:

  a. Multiple complaints described flames that grew uncontrollably high, often reaching dangerous levels within minutes of ignition.

  b. Consumers reported candles that refused to extinguish properly, with flames reigniting even after being blown out.

  c. Several customers documented incidents where candles exploded upon extinguishment, launching molten wax across their homes and onto their skin.

  d. Many described glass containers shattering from heat exposure, with sharp fragments causing injury, and wax igniting surrounding objects.

84. Instead of investigating and rectifying these hazards, Defendants continued manufacturing and selling their defective candles, ignoring the clear and growing body of evidence that their products posed a severe risk to consumer safety.

85. These complaints mirror the exact conditions that led to Renita Francois' injuries, proving that Defendants were fully aware of the risks long before this incident occurred.

  3.  Failure to Reinforce Containers or Modify Wax Composition

86. Despite a documented history of candles exploding, shattering, and causing severe burns, Bath & Body Works made no meaningful attempt to correct these defects.

  a. The glass containers used for the Sweater Weather candle were not reinforced to withstand thermal stress or sudden ignition surges.

  b. The paraffin wax blend, mixed with highly volatile fragrance compounds, increased the likelihood of flashover combustion, yet Defendants did not alter the formula to reduce instability.

  c. The wicks used in these candles contributed to irregular burn patterns, leading to excessive flame height, soot accumulation, and rapid heat intensification.

  d. The product labeling failed to include necessary safety warnings regarding the potential for explosion, molten wax dispersal, and shattering hazards.

87. By choosing not to modify the candle's structural integrity or composition, Defendants ensured that more consumers—like Renita Francois—would eventually suffer life-changing injuries from an entirely foreseeable and preventable hazard.

  4.  The Sweater Weather Candle's Chemical Composition Was an Explosion Risk

88. The Safety Data Sheet (SDS) for the Sweater Weather Candle, produced by Bath & Body Works and The Premier Candle Corporation, confirms that the product contains a combination of highly flammable and toxic ingredients, such as IGI 1230 Fully Refined Paraffin Wax (10-30%).

    a. Highly flammable and known to release volatile organic compounds (VOCs) such as benzene and toluene, both of which are carcinogenic.

    b. Paraffin wax burns at inconsistent rates, thereby increasing the risk of uncontrolled flame behavior and explosion.

    c. Benzyl Benzoate (5-10%)

- Classified as an Acute Toxicant (H302), harmful if ingested, and a skin irritant.

- This compound is also known to vaporize under heat, contributing to sudden flare-ups when exposed to flames.

    d. Cineole (<1%)

- Classified as a Flammable Liquid (H226), confirming its combustibility.

- Vaporizes at low temperatures, adding to the risk of ignition beyond the wick area.

    e. 2,4-Dimethylcyclohex-3-ene-1-carbaldehyde (<1%)

- Known for its ability to cause skin irritation and classified as an environmental hazard.

- Its chemical instability contributes to unpredictable combustion reactions.

    f. 2,6-Di-Tert-Butyl-P-Cresol (<1%)

- Decomposes into hazardous byproducts when exposed to high temperatures.

- Can accumulate in biological systems, increasing toxic exposure risks.

89. These chemicals, when combined in a single candle, created a product that was inherently unstable and prone to dangerous combustion events.

90. Rather than taking corrective action to reformulate the product, Defendants concealed the risks and continued to market the candle as a safe household item.

    5. <u>Defendants Acted with Gross Negligence and Conscious Disregard for Safety</u>

91. Despite a mountain of evidence pointing to the dangerous nature of their candles, Defendants chose to prioritize corporate profit over consumer well-being.

    a. They ignored known safety risks and continued to sell a dangerous product, despite prior recalls.

    b. They disregarded consumer complaints detailing similar incidents, thereby failing to acknowledge a foreseeable risk.

    c. They failed to modify the candle's design, wick composition, or container strength, thereby ensuring that future incidents would occur.

    d. They did not provide sufficient warnings, leaving consumers unaware of the dangers they faced when lighting these candles.

92. Bath & Body Works and The Premier Candle Corporation had every opportunity to prevent this tragedy, yet they made a deliberate decision not to act.

93. Their gross negligence and conscious disregard for consumer safety make them fully liable for the catastrophic injuries suffered by Renita Francois.

94. Bath & Body Works and The Premier Candle Corporation were aware that their products were dangerous, having been previously warned by complaints and recalls, yet they actively chose not to correct the defects.

95. As a direct result of their recklessness, Renita Francois now lives with permanent physical, emotional, and psychological trauma.

96. This lawsuit seeks to hold them accountable for their failures, demand full compensation for the harm they caused, and ensure that no other consumer suffers the same fate.

### SAFER ALTERNATIVE DESIGN ALLEGATION

97. Upon information and belief, safer alternative designs were available and feasible at the time of manufacture that would have significantly reduced or eliminated the risk of explosion, without impairing the candle's functionality or consumer appeal. These safer alternatives include, but are not limited to:

   a. Non-paraffin wax alternatives such as soy wax or coconut wax blends, which have lower volatility, reduced emission of flammable vapors, and a lower risk of flash ignition compared to paraffin-based candles.

   b. Double-walled or heat-tempered glass containers, which are specifically engineered to withstand thermal stress, thereby significantly reducing the risk of glass shattering or explosion during regular use.

   c. Self-extinguishing or flame-regulating wicks, which are widely available in the commercial market and are designed to maintain safe flame heights, reduce soot accumulation, and prevent thermal runaway.

   d. Integrated metal wick clips and wick centering devices, which prevent wick migration and excessive wax pooling—two known factors that contribute to overheating and combustion instability.

e.   Enhanced safety labeling, including visible warnings regarding chemical volatility, risk of spontaneous flare-ups, and the specific hazards associated with leaning into or smelling a lit candle.

98. Defendants failed to implement any of these safer alternatives, despite their availability, cost-effectiveness, and widespread use in the candle manufacturing industry. The omission of these safer designs rendered the Sweater Weather candle unreasonably dangerous for its intended use and constitutes a design defect under New York law.

## SPECIFIC MANUFACTURING DEFECT ALLEGATION

99. Upon information and belief, the specific "Sweater Weather" candle that injured Plaintiff Renita Francois was defectively manufactured and deviated materially from the intended design specifications and from other units in the same product line. The deviation included one or more of the following:

a.   Overloaded fragrance oil content, exceeding safe combustion thresholds, which made the candle more susceptible to volatile flare-ups and flash ignition.

b.   Excessively long or improperly treated wicks, which caused unsafe flame heights, rapid wax pooling, and increased heat concentration leading to combustion instability.

c.   A structurally compromised or microfractured glass container, which failed under normal heat exposure, resulting in an uncontrolled explosion of molten wax and flame.

d.   Non-uniform or improperly blended wax composition, containing excessive paraffin concentrations or uneven fragrance distribution that destabilized burn behavior.

e.   Improper wick centering or securing, allowing the flame to contact the sidewall of the glass container, accelerating localized thermal stress and glass rupture.

100.        These defects were not present in the majority of properly manufactured Sweater Weather candles. They resulted from errors in the production, quality control, or assembly processes overseen by Defendant The Premier Candle Corporation.

101.        The defective nature of the Plaintiff's specific unit was confirmed by the immediate and violent explosion that occurred upon its first use, despite her adherence to all

safety instructions. This deviation from the expected performance of the product rendered the candle unreasonably dangerous and directly caused Plaintiff's injuries.

## KEY DIFFERENCES BETWEEN U.S. AND CANADIAN LEGAL STANDARDS FOR SCENTED CANDLE MANUFACTURING

102.         The United States and Canada have distinct legal frameworks governing the manufacture of scented candles, each with different regulatory requirements, testing protocols, and enforcement mechanisms. While both countries aim to ensure consumer safety, the level of oversight, mandatory compliance, and product liability protections vary significantly.

103.         The key differences between U.S. and Canadian scented candle regulations highlight why The Premier Candle Corporation, headquartered in Canada, was able to manufacture the defective Sweater Weather candle without being subject to the same rigorous standards required in the U.S.

1.  Regulatory Oversight: Stronger U.S. Enforcement vs. Weaker Canadian Compliance

United States:

104.         The Consumer Product Safety Commission (CPSC) is the primary regulatory body responsible for overseeing candle safety, fire hazards, and product recalls.

105.         U.S. regulations incorporate industry-driven safety standards, such as those set by ASTM International, which dictate flammability limits, container integrity, and labeling requirements.

106.         Manufacturers must adhere to strict reporting requirements, ensuring that any known hazards are disclosed within 24 hours, or risk civil penalties and product liability lawsuits.

Canada:

107.         The Canada Consumer Product Safety Act (CCPSA), administered by Health Canada, governs candle safety but focuses mainly on general product safety rather than industry-specific standards.

108.         There are fewer mandatory testing requirements, meaning that manufacturers have more discretion in determining what constitutes a "safe" product.

109.        Canada relies heavily on voluntary compliance, meaning that unsafe products may remain on the market longer without regulatory intervention.

Key Difference:

110.        The U.S. has a more proactive enforcement system with strict compliance mandates, while Canada relies more on voluntary adherence and does not impose industry-wide safety testing on scented candles.

2.  Fire Safety & Flammability Testing: Comprehensive U.S. Protocols vs. Limited Canadian Requirements

United States:

111.        ASTM F2417 requires manufacturers to conduct fire hazard testing, including:

a.  Flame height limits to prevent uncontrolled burns.
b.  Wax pool stability tests to ensure candles do not ignite unpredictably.
c.  Wick burn rate assessments to control how the candle melts and prevent excessive heat buildup.

112.        Glass container candles must be tested for thermal stress resistance to ensure they can withstand prolonged burning without cracking or exploding.

Canada:

113.        No equivalent industry-wide standard for candle burn testing exists in Canada.

114.        The primary concern in Canadian regulations is to prevent spontaneous reignition after a candle is extinguished (SOR/2016-165).

115.        There are no specific testing requirements for flame height, wax stability, or wick burn behavior.

Key Difference:

116.        The U.S. mandates rigorous burn testing and container integrity assessments, while Canada does not require comprehensive safety testing beyond ensuring the candle does not reignite on its own.

3.  Labeling & Chemical Disclosure: Detailed U.S. Requirements vs. Vague Canadian Standards

United States:

117.        The Fair Packaging and Labeling Act (FPLA) requires clear and specific labeling for candles, including:

    a. Product identity (e.g., "Scented Candle – Sweater Weather").
    b. Net weight of wax content (in ounces or grams).
    c. Manufacturer details, including name and contact information.

118.        California's Proposition 65 requires warning labels for candles containing hazardous chemicals, including benzene, formaldehyde, and phthalates.

119.        ASTM F2058 mandates the inclusion of specific fire safety warnings to inform consumers about potential hazards.

Canada:

120.        No mandatory labeling requirements exist for fragrance chemicals or toxic emissions.

121.        The CCPSA prohibits misleading product claims but does not require manufacturers to disclose hazardous ingredients on labels.

122.        There is no Canadian equivalent to Proposition 65, meaning products containing known carcinogens or toxic substances can be sold without consumer warnings.

Key Difference:

123.        U.S. law mandates strict labeling requirements, including chemical disclosures and fire hazard warnings, while Canadian regulations lack similar transparency mandates.


    4.  Toxic Chemical Regulations: Stricter U.S. Limits vs. Looser Canadian Standards

United States:

124.        The Environmental Protection Agency (EPA) and California Air Resources Board (CARB) regulate volatile organic compounds (VOCs) in scented candles to limit indoor air pollution.

125.        Certain fragrance components must be tested for toxic emissions to ensure they do not produce harmful fumes when burned.

126.        Lead-core wicks are strictly prohibited, and metal-based wick cores must be independently tested to confirm compliance.

Canada:

127.        Lead-core wicks are banned, but Canada does not require testing for volatile fragrance emissions, soot production, or indoor air quality hazards.

128.        No federal agency regulates VOC emissions in candles, meaning that Canadian manufacturers do not have to test for potential long-term health effects.

Key Difference:

129.        U.S. manufacturers are required to limit harmful emissions and disclose hazardous chemicals, whereas Canadian laws do not mandate testing for fragrance safety or long-term health risks.

    5.   Recalls & Consumer Protection: U.S. Has Stronger Enforcement Powers

United States:

130.        The CPSC has broad authority to issue mandatory recalls for dangerous candles, including those that exhibit excessive flames, glass container breakage, or pose explosion risks.

131.        Companies are legally required to report safety concerns within 24 hours of becoming aware of them.

Canada:

132.        Health Canada primarily relies on voluntary recalls, which means that potentially dangerous products may remain on shelves for longer periods.

133.        Manufacturers are encouraged, but not required, to report safety defects unless the government intervenes.

134.        There is no automatic recall process for candles exhibiting hazardous burn behavior.

Key Difference:

135.        The U.S. enforces mandatory recalls and imposes legal penalties for non-compliance, whereas Canada's system is largely voluntary and lacks strong enforcement measures.

136.        These regulatory differences explain how The Premier Candle Corporation was able to manufacture and sell the hazardous Sweater Weather candle despite its serious safety risks:

  a. Premier Candle Corporation was not subject to the strict testing protocols required by U.S. law, allowing an unstable and unsafe candle to be sold without proper quality control measures in place.
  b. Canada's weaker regulatory framework meant that the candle did not undergo mandatory testing for explosive risk, excessive flame height, or container durability.
  c. Bath & Body Works, LLC failed to ensure that the products manufactured by its third-party supplier met U.S. safety standards before selling them to American consumers.
  d. The lack of chemical disclosure laws in Canada enabled Premier Candle Corporation to use volatile fragrance compounds without warning consumers of their risks.

137.        As a result, Bath & Body Works and The Premier Candle Corporation knowingly placed an unsafe product into the hands of unsuspecting consumers, leading to the catastrophic injuries suffered by the Plaintiff.

## PREMIER CANDLE CORPORATION:
## THE NEGLIGENT THIRD-PARTY MANUFACTURER OF
## BATH & BODY WORKS CANDLES

138.        Premier Candle Corporation, a Canada-based manufacturer, was directly responsible for the design, formulation, and production of the defective Sweater Weather Scented Candle that exploded in Plaintiff's face, causing severe burns, permanent scarring, and lifelong emotional trauma.

139.        Despite being the sole entity controlling the candle's composition, chemical stability, and structural integrity, Premier Candle Corporation failed in its duty to manufacture a safe product. Instead, it produced a volatile, flammable, and chemically unstable candle that put consumers at serious risk of catastrophic injury.

140.        As the third-party manufacturer of Bath & Body Works candles, Premier Candle Corporation was not subject to U.S. safety regulations and operated without oversight from Bath & Body Works, LLC, allowing a dangerous and defective product to enter the American market unchecked.

141.        Despite being aware of the significant risks associated with scented candles, including flash fires, erratic burn behavior, and container failure, Premier Candle

Corporation failed to implement the necessary safety testing, labeling, or product modifications to prevent consumer harm.

142.        This reckless and negligent failure directly resulted in the explosion that injured the Plaintiff.

1.  <u>Premier Candle Corporation Designed and Manufactured the Explosive Candle</u>

143.        Premier Candle Corporation oversaw every aspect of the candle's production, including:

   a. Selecting the raw materials, including the specific paraffin wax, fragrance oils, and wick type.
   b. Formulating the wax blend and fragrance mixture, which created a volatile and combustible combination.
   c. Constructing the candle's glass container, which was fragile, improperly reinforced, and incapable of withstanding the heat generated by prolonged use.
   d. Failing to test the candle's burn stability, leading to excessive flames, high-temperature combustion, and spontaneous reignition risks.

144.        Despite having full control over the product's chemical and physical properties, Premier Candle Corporation did not ensure that the candle was safe for household use. Instead, it knowingly manufactured a product that posed a severe risk of explosion when used as intended.

2.  <u>Premier Candle Corporation Was Not Subject to U.S. Safety Regulations</u>

145.        Because Premier Candle Corporation is headquartered in Canada, it is not subject to the stringent safety requirements imposed by U.S. agencies, such as the Consumer Product Safety Commission (CPSC).

146.        Had the Sweater Weather Candle been manufactured in the United States, it would have been required to comply with:

   a. <u>ASTM F2417</u> – Fire safety standards for candles
   b. <u>ASTM F2058</u> – Safety labeling requirements
   c. <u>CPSC Guidelines</u> – Flammability, container stability, and hazardous emissions testing
   d. <u>California Proposition 65</u> – Disclosure of hazardous chemicals

147.        Because Premier Candle Corporation was located outside the U.S., it was not required to comply with these stringent regulations, allowing an unsafe product to enter the American market without proper testing, warnings, or quality control.

38

148.     This regulatory loophole enabled Premier Candle Corporation to produce candles with unstable wicks, volatile fragrance chemicals, and structurally weak glass containers, making the risk of explosion foreseeable and preventable.

### 3. The Sweater Weather Candle Was a Fire and Explosion Hazard

149.     Premier Candle Corporation formulated the Sweater Weather candle using a combination of paraffin wax, volatile fragrance oils, and a fragile glass container, all of which contributed to the explosion that injured Plaintiff.

A. Highly Flammable Paraffin Wax Blend

   a. Paraffin wax (HF Wax - IGI 1230 Fully Refined, 10-30%) is a petroleum-derived substance known for its combustibility.
   b. When burned, paraffin wax emits benzene and toluene, both classified as carcinogens and hazardous air pollutants.
   c. Paraffin wax burns inconsistently, increasing the risk of erratic flames, wax pooling, and dangerous temperature fluctuations.

B. Volatile and Unstable Fragrance Oils

   a. Benzyl Benzoate (5-10%) is combustible at high temperatures, increasing the risk of unpredictable flame bursts.
   b. Cineole (<1%) is classified as a Flammable Liquid (H226), meaning it can contribute to sudden ignition events.
   c. 2,4-Dimethylcyclohex-3-ene-1-carbaldehyde (<1%) is chemically unstable, which increases unpredictable burn behavior.

C. Weak, Unreinforced Glass Container

   a. The candle's glass container was not designed to withstand thermal stress, making it prone to cracking, shattering, and failure under heat exposure.
   b. The rapid expansion and contraction of heat created microfractures in the glass, which ultimately contributed to its sudden explosion.

150.     This combination of hazardous materials made the Sweater Weather Candle inherently unstable. Yet, Premier Candle Corporation failed to take any steps to reformulate or address the risks posed by these volatile compounds.

151.     Instead, the company allowed its defective product to be distributed and sold in the U.S. market without any meaningful oversight or consumer warnings.

4. <u>Premier Candle Corporation's Failure to Conduct Proper Safety Testing</u>

152.        As the third-party manufacturer responsible for producing the candle, Premier Candle Corporation had a duty to ensure that its product was safe before distributing it to Bath & Body Works for sale in the United States.

153.        However, the company negligently failed to conduct the following essential safety tests:

   a. Flammability testing to assess whether the candle's flame exceeded safe height thresholds.
   b. Container durability testing to ensure the glass can withstand repeated heating and cooling cycles.
   c. Combustion stability testing to prevent sudden ignition events or flame surges.
   d. Extinguishment testing to determine whether the candle could be safely blown out without the risk of explosion.

154.        Because Premier Candle Corporation failed to conduct these tests, it had no way of knowing how the candle would perform under real-world conditions, leaving unsuspecting consumers exposed to severe danger.

155.        Had the company performed even minimal safety testing, the candle's propensity to explode when extinguished would have been evident, preventing the catastrophic injuries suffered by the Plaintiff.

5. <u>Premier Candle Corporation Bears Full Legal Liability as the Manufacturer</u>

156.        As the sole manufacturer of the Sweater Weather candle, Premier Candle Corporation is strictly liable for:

   a. <u>Defective Design</u> – The candle's chemical composition and structural weaknesses made it inherently unsafe.
   b. <u>Manufacturing Defects</u> – The company failed to ensure product stability, leading to explosions under normal use conditions.
   c. <u>Failure to Warn</u> – The absence of proper safety warnings deprived consumers of critical information that could have prevented injuries.
   d. <u>Negligence in Quality Control</u> – Premier Candle Corporation failed to conduct necessary product testing before distributing the candles to Bath & Body Works.

157.        Under product liability law, manufacturers are strictly liable for injuries caused by their defective products. Because Premier Candle Corporation manufactured the Sweater Weather candle, it bears direct responsibility for the explosion that injured Plaintiff.

158.        Premier Candle Corporation manufactured a defective and dangerous product that had no place in the consumer market.

159.        Despite having full control over the candle's design, materials, and safety testing, the company failed to implement even the most basic precautions to prevent consumer injury.

160.        This lawsuit seeks to hold Premier Candle Corporation fully accountable for its reckless and negligent actions and ensure that no other consumer suffers similar harm from its unsafe products.

## AS FOR THE FIRST CAUSE OF ACTION
## STRICT LIABILITY (DEFECTIVE DESIGN & MANUFACTURING
## (Against Both Defendants)

161.        Plaintiff Francois incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

### DEFENDANTS PLACED A DEFECTIVELY DESIGNED AND MANUFACTURED PRODUCT INTO THE STREAM OF COMMERCE

162.        Defendants Bath & Body Works, LLC and The Premier Candle Corporation designed, manufactured, distributed, and sold the defective and unreasonably dangerous Sweater Weather candle, which was unfit for its intended use and caused catastrophic injury to Plaintiff, Renita Francois.

    a.  The Premier Candle Corporation, as the manufacturer, was responsible for the design, formulation, and assembly of the candle, which included highly flammable ingredients, structurally weak glass containers, and unstable wicking systems that made the product prone to explosions, wax ejection, and excessive flame heights.
    b.  Bath & Body Works, LLC, as the distributor and retailer, failed to ensure that the candles it sold complied with U.S. safety regulations, knowingly placing an untested dangerous product into the hands of unsuspecting consumers.

163.        Despite their joint responsibility for product safety, Defendants failed to perform adequate testing, failed to include sufficient warnings, and failed to take corrective action despite prior reports of similar explosions, making them strictly liable under applicable product liability laws.

### THE DEFECTIVE DESIGN MADE THE CANDLE UNREASONABLY DANGEROUS

164.        The Sweater Weather candle contained inherent design flaws that made it prone to dangerous and foreseeable failures, including:

Highly Flammable Wax Composition

165.    The use of paraffin wax blended with volatile fragrance compounds created an unstable combustion environment, making the candle more susceptible to flare-ups, excessive heat, and rapid ignition.

166.    The candle produced dangerously high flames, reaching unsafe temperatures that increased the likelihood of an explosion.

Use of Unstable and Explosive Fragrance Oils

167.    The candle contained benzyl benzoate, cineole, and other volatile organic compounds (VOCs), which created a flammable vapor environment when heated, significantly increasing the risk of flash fires and uncontrolled combustion.

Inadequate Glass Container Strength

168.    The candle was housed in a thin, non-reinforced glass container, which could not withstand the thermal stress from the candle's prolonged burning cycle.

169.    The glass container shattered upon explosion, further intensifying the risk of severe burns, facial trauma, and property damage.

Wick Instability and Uncontrolled Burn Behavior

170.    The wicking system failed to regulate the burn rate, causing irregular melting, wax pooling, and unpredictable flame heights, all of which contributed to the instability of the product.

171.    Defendants knew or should have known that these design flaws posed a highly foreseeable risk of explosion, severe burns, and catastrophic injury to consumers.

THE MANUFACTURING PROCESS<br>WAS DEFECTIVE AND UNSAFE

172.    The manufacturing process used by The Premier Candle Corporation was grossly inadequate and lacked proper quality control, including:

    a.  Failure to Conduct Thermal Stress Testing: The glass container was not tested for resistance to repeated heating cycles, making it prone to failure under typical consumer use conditions.

    b.  Failure to Test for Combustion Stability: The chemical composition of the wax and fragrance oils was not tested for volatility, flashover risk, or uncontrolled burning behavior.

    c.  Failure to Enforce Consistency in Wick Length and Placement: Variations in wick length and positioning contributed to uneven burn patterns, increasing the risk of wax pooling, sudden flare-ups, and thermal runaway events that can lead to explosions.

    d. <u>Failure to Implement Proper Quality Assurance Standards</u>: Defendants failed to ensure that each batch of candles met safety benchmarks before releasing them into the marketplace.

173.    The candle that injured the Plaintiff was defectively manufactured because it contained these structural weaknesses, was improperly tested, and lacked necessary safeguards to prevent fire hazards.

**DEFENDANTS KNEW OR SHOULD HAVE**
**KNOWN OF THE DEFECTIVE NATURE OF THEIR PRODUCT**

174.    Despite prior reports of similar candle explosions and dangerously high flames, Defendants did nothing to address these hazards, demonstrating gross negligence and conscious disregard for consumer safety.

    a. Consumer complaints had been filed against Bath & Body Works candles for excessive flames, flare-ups, and wax projection injuries. Yet, Defendants failed to conduct an industry-wide recall or provide enhanced safety instructions.

    b. The Consumer Product Safety Commission (CPSC) previously recalled certain Bath & Body Works candles due to safety concerns, yet Defendants continued selling similar hazardous products without modification.

    c. The Premier Candle Corporation was not subject to U.S. manufacturing regulations, and Bath & Body Works, LLC failed to implement independent safety testing to verify compliance with ASTM and CPSC safety standards before distributing the product to consumers.

175.    By placing this defective product into the hands of unsuspecting consumers despite prior knowledge of its dangers, Defendants directly contributed to the life-altering injuries sustained by Plaintiff.

**PLAINTIFF USED THE CANDLE AS INTENDED,**
**YET IT EXPLODED, CAUSING SEVERE INJURIES**

176.    On January 19, 2023, Plaintiff Renita Francois used the Sweater Weather candle for the first time after purchasing it from Bath & Body Works. As an avid candle user, Plaintiff had previously used hundreds of Bath & Body Works candles without incident. She had developed a clear and thorough understanding of proper candle use, always ensuring that she carefully followed the safety instructions provided on each product.

1. <u>Plaintiff Followed the Candle's Safety Instructions Before Use</u>

177.    Before lighting the Sweater Weather candle, Plaintiff did exactly what she had done countless times before—she carefully read and adhered to the manufacturer's usage instructions. The candle's packaging included the following safety guidelines:

- "Burn candle within sight."
- "Keep away from things that catch fire."

43

- "Keep away from children and pets."
- "ALWAYS trim wicks to 1/4 inch before each relighting."
- "Keep wax pool free of wick trimmings and matches."
- "DO NOT burn candle more than 4-hour intervals."
- "DO NOT extinguish with water."
- "Avoid drafts."

178.    Plaintiff diligently followed each of these precautions before lighting the candle. She ensured that the candle was placed on a stable, fire-safe surface, away from any flammable materials, and in a well-ventilated space. She trimmed the wick to the recommended length, removed any potential debris from the wax pool, and prepared to enjoy the product exactly as directed by the manufacturer.

2.   Plaintiff's First Use of the Candle Ended in Disaster

179.    Curious to experience the fragrance of the Sweater Weather candle, Plaintiff leaned in slightly to smell its scent—an action that countless consumers perform daily when using scented candles for the first time.

180.    At that very moment, the candle violently exploded in her face.

a. Flames and molten wax shot outward from the glass container, striking Plaintiff's face, lips, and hands.
b. The sheer force of the explosion caused immediate burns, searing her skin and leaving her in excruciating pain.
c. The wax adhered to her face, continuing to burn even as she tried to remove it.
d. Her vision blurred, her eyelashes and eyebrows were singed away, and her skin was left raw and blistered.

181.    There was no warning, no indication of an impending danger—only an instantaneous explosion that turned a moment of curiosity into a catastrophic injury.

3.   The Candle's Explosion Was Not Due to User Error—It Was a Product Defect

182.    This explosion was not the result of improper use, negligence, or failure to follow safety guidelines.

a. Plaintiff had read and followed every safety instruction provided by the manufacturer before lighting the candle.
b. The Plaintiff was an experienced candle user who had safely burned hundreds of candles before.
c. Plaintiff did not misuse or alter the candle in any way that could have contributed to its explosion.

183.    Despite her meticulous adherence to the manufacturer's warnings and her extensive experience with Bath & Body Works candles, this product unexpectedly exploded, turning an everyday activity into a life-altering trauma.

## LEGAL BASIS FOR STRICT LIABILITY
## UNDER FEDERAL AND NEW YORK LAW

184.    Defendants Placed a Defectively Designed and Manufactured Product into the Stream of Commerce in Violation of Established Consumer Protection Laws.

185.    Under Restatement (Second) of Torts § 402A, manufacturers and distributors are strictly liable for injuries caused by a defective product when it:

   a. Contains a manufacturing defect (a deviation from the intended design that renders the product unsafe).
   b. Has a design defect (a flaw in its design that makes it inherently dangerous).
   c. Suffers from failure to warn (a lack of adequate safety instructions or warnings about foreseeable risks).

186.    Under New York Product Liability Law, a manufacturer or distributor is strictly liable when a product is unreasonably dangerous and causes injury while being used as intended.

Defendants Violated Federal Consumer Product Safety Laws

187.    The Consumer Product Safety Act (CPSA), 15 U.S.C. § 2051 et seq., places a duty on manufacturers and distributors to:

   a. Ensure that consumer products are not defective and do not create an unreasonable risk of injury.
   b. Report hazardous product defects to the Consumer Product Safety Commission (CPSC) under 15 U.S.C. § 2064(b) if a product creates a substantial risk of injury to the public.
   c. Recall products that have been determined to be dangerous under 16 C.F.R. § 1115.12, which Defendants failed to do despite knowledge of prior candle explosions.

188.    The Federal Hazardous Substances Act (FHSA), 15 U.S.C. § 1261 et seq., prohibits the sale of consumer products that contain dangerous chemicals without proper labeling and safety disclosures.

   a. The Sweater Weather candle contained highly flammable ingredients without sufficient warning labels, violating 16 C.F.R. § 1500.3(b)(4), which defines "flammable substances" requiring regulatory compliance.

Defendants Breached Industry Safety Standards Governing Candle Manufacturing

189.    Defendants failed to comply with ASTM International's fire safety standards for candles, including:

   a. ASTM F2417-17: Establishes safety requirements for fire hazards of candles, including wick stability, container integrity, and flame height.
   b. ASTM F2058-21: Mandates warning labels to protect consumers from candle-related hazards.

190.    Bath & Body Works, LLC, and The Premier Candle Corporation failed to meet these industry standards, resulting in the sale of an unreasonably dangerous product to consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants Bath & Body Works, LLC and The Premier Candle Corporation, awarding the following relief:

191.    Compensatory Damages
   a. Past and future medical expenses for the treatment of severe second-degree burns, reconstructive surgeries, dermatological treatments, pain management, and psychological therapy related to the trauma suffered by Plaintiff Renita Francois.
   b. Lost wages and loss of future earning capacity, as Plaintiff has suffered a significant reduction in her professional and personal capabilities due to permanent scarring, emotional trauma, and diminished confidence in public-facing roles.
   c. Pain and suffering damages, recognizing the excruciating physical agony, disfigurement, and the ongoing emotional and psychological distress caused by the explosion.
   d. Loss of enjoyment of life damages, for the permanent alterations to Plaintiff's appearance, self-esteem, and ability to engage socially, professionally, and personally with the same confidence she once had.

192.    Punitive Damages
   a. An award of punitive damages according to New York law and common law principles, due to Defendants' reckless disregard for consumer safety, knowing distribution of a hazardous product, and failure to take corrective action despite prior complaints, recalls, and warnings.
   b. A judicial finding that Defendants engaged in willful and wanton misconduct, justifying maximum punitive damages to deter future reckless business practices in consumer product safety.

193.    Equitable Relief – Recall and Corrective Action
   a. A full, nationwide recall of the Sweater Weather candle and any other candles manufactured by The Premier Candle Corporation that contain the same volatile wax formulation, flammable fragrance compounds, or structurally weak glass containers.
   b. An immediate suspension of sales and distribution of all similar Bath & Body Works candles until independent third-party safety verification confirms compliance with federal and industry safety standards.
   c. An order requiring Defendants to issue a public safety notice acknowledging the defective nature of the product and the risk posed to consumers.
   d. A court-mandated reformulation of candle ingredients, manufacturing processes, and quality control measures to prevent future catastrophic product failures.

194.    Injunctive Relief – Consumer Protection & Regulatory Compliance
   a. An injunction requiring Defendants to revise their labeling practices, ensuring that all future candles sold in the United States include explicit warnings regarding explosion risks, excessive flame height, thermal container failure, and chemical toxicity.
   b. A requirement that Bath & Body Works, LLC implement independent third-party safety audits for all candles produced by foreign manufacturers before they are placed on the U.S. market.

    c. An order compelling Defendants to establish a fund dedicated to consumer compensation for victims of defective Bath & Body Works candles, covering medical costs, lost wages, and permanent injury damages.

195.     <u>Attorneys' Fees and Litigation Costs</u>

    a. An award of attorneys' fees and litigation costs according to N.Y. Gen. Bus. Law § 349, due to the Defendants' deceptive business practices and failure to disclose known risks associated with their product.

196.     <u>Any Further Relief Deemed Just and Proper</u>

    a. Such other and further relief as this Court deems just and appropriate to fully compensate Plaintiffs for their injuries, damages, and losses caused by Defendants' reckless and negligent conduct.

## AS FOR THE SECOND CAUSE OF ACTION
### NEGLIGENCE
### (Against Both Defendants)

197.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

<u>DEFENDANTS HAD A DUTY TO ENSURE CONSUMER SAFETY</u>

198.     Defendants Bath & Body Works, LLC and The Premier Candle Corporation owed a duty of care to consumers, including Plaintiff Renita Francois, to design, manufacture, distribute, and sell products that were reasonably safe and free from unreasonable risks of harm.

199.     As corporations that profit from mass consumer sales, Defendants had a legal and ethical obligation to:

    a. Ensure that their candles were safe for ordinary use and would not pose an unreasonable risk of fire, explosion, or bodily harm.

    b. Properly test their products to identify and mitigate potential hazards before releasing them into the market.

    c. Adhere to well-established industry safety standards for candle design, wax formulation, and container integrity.

    d. Provide clear and accurate warnings to consumers about any known dangers associated with their candles.

    e. Promptly respond to prior reports of similar incidents and take corrective action to prevent further harm to consumers.

200.     Defendants were in a unique position to anticipate the risks associated with their product, as they were aware of:

    a. Prior complaints of candle explosions and excessive flames in Bath & Body Works' product line.

    b. The inherent volatility of the chemical compounds used in the Sweater Weather candle.

    c. The risk of glass container failure when exposed to extreme temperature fluctuations.

    d. Industry standards for candle safety, including ASTM regulations governing flammability, container strength, and wick performance.

201.    Despite having access to this information, Defendants failed to exercise reasonable care, instead placing an inherently dangerous product in the hands of unsuspecting consumers.

### DEFENDANTS BREACHED THEIR DUTY OF CARE
### BY SELLING A DEFECTIVE, DANGEROUS PRODUCT

202.    Despite their duty to protect consumers from preventable harm, Defendants failed in multiple respects by:

203.    <u>Outsourcing Manufacturing to a Foreign Entity Without Oversight</u>

    a. Bath & Body Works entrusted production to The Premier Candle Corporation, a Canadian-based manufacturer not subject to U.S. safety standards.

    b. By failing to independently verify compliance with American consumer safety regulations, Bath & Body Works allowed an unsafe product to enter the U.S. market without adequate testing or scrutiny.

204.    <u>Neglecting to Conduct Proper Safety Testing</u>

205.    The Premier Candle Corporation failed to test the Sweater Weather candle for stability, thermal endurance, or combustion safety.

206.    Had Defendants conducted even minimal safety testing, they would have discovered that:

    a. The paraffin wax blend was volatile and prone to irregular burn patterns and excessive flame height.

    b. The glass container was fragile and unable to withstand heat expansion, thereby increasing the likelihood of rupture and explosion.

    c. The fragrance compounds used in the candle created a highly flammable vapor environment, heightening the risk of flash fires and spontaneous combustion.

207.    Defendants' failure to conduct these standard tests amounted to a reckless disregard for consumer safety.

208.    <u>Ignoring Prior Consumer Complaints and Known Risks</u>

    a. Defendants were aware of past incidents of candle explosions, excessive flame heights, and glass shattering through direct consumer complaints, prior lawsuits, and product recalls.

    b. Despite this clear history of hazardous defects, Defendants took no corrective action, continuing to sell defective candles without modifying their design or providing stronger warnings.

    c. This deliberate indifference to safety concerns demonstrates gross negligence, as Defendants knowingly placed consumers at risk for severe burns, disfigurement, and traumatic injury.

209.    <u>Failing to Provide Adequate Warnings About Explosion Risks</u>

48

a. The Sweater Weather candle contained no warnings about its potential to explode, flare up, or project molten wax.
b. The safety label did not disclose the volatility of the fragrance compounds or the risk of glass container failure due to rapid temperature changes.
c. Because Defendants failed to warn, Plaintiff had no reason to suspect that simply smelling the candle would trigger an explosion, resulting in catastrophic injuries that could have been prevented.

<u>PLAINTIFF USED THE CANDLE AS INTENDED,</u>
<u>YET IT EXPLODED IN HER FACE</u>

210.     On January 19, 2023, Plaintiff Renita Francois used the Sweater Weather candle for the first time, carefully following all provided safety instructions.

a. She placed the candle on a flat, fire-resistant surface.
b. She ensured that the wick was trimmed to the manufacturer's recommended length.
c. She read and complied with the warnings listed on the packaging, including burn duration limits and draft avoidance.
d. She never left the candle unattended.
e. She did not use water to extinguish the candle.

211.     Plaintiff leaned in slightly to smell the candle—an action that any reasonable consumer would expect to be safe.

212.     At that moment, the candle violently exploded, launching molten wax and flames directly into her face.

a. Her skin was instantly seared, leaving second-degree burns on her forehead, cheeks, and lips.
b. The heat destroyed her eyelashes and eyebrows, permanently altering her appearance.
c. Molten wax adhered to her skin, worsening the burns as she tried to remove it.
d. Her husband, standing nearby, watched in horror as she screamed in agony, helpless to stop the flames from consuming her face.

213.     This was not a case of misuse or consumer error—Plaintiff did everything right, and yet she still suffered life-altering injuries due to Defendants' negligence.

<u>DEFENDANTS' NEGLIGENCE WAS THE DIRECT AND</u>
<u>PROXIMATE CAUSE OF PLAINTIFF'S INJURIES</u>

214.     As a direct result of Defendants' failure to exercise reasonable care, Plaintiff sustained devastating injuries, including:

a. Severe second-degree burns covering large portions of her face and arms.
b. Permanent scarring and post-inflammatory hyperpigmentation.
c. Emotional distress, psychological trauma, and diminished self-confidence.
d. Chronic pain, requiring extensive medical treatment, dermatological intervention, and potential reconstructive surgery.

215.     Had Defendants acted with reasonable care, Plaintiff would never have suffered these life-changing injuries.

216.    Defendants' negligence is indisputable—they failed to design a safe product, failed to test for foreseeable risks, failed to warn consumers, and failed to take action when prior complaints revealed the dangers of their candles.

## LEGAL BASIS FOR NEGLIGENCE UNDER FEDERAL AND NEW YORK LAW

217.    Defendants Had a Duty to Ensure Consumer Safety Under New York Common Law.

218.    Under *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339 (1928), a party is liable for negligence when:

   a. A duty of care exists.
   b. That duty is breached.
   c. The breach directly and proximately causes injury.

219.    Defendants owed a duty of care to ensure that the Sweater Weather candle was free from unreasonable risks of fire, explosion, and bodily harm before distributing it to the public.

Defendants Violated the Consumer Product Safety Act by Failing to Report Known Hazards.

220.    Under 15 U.S.C. § 2064(b), manufacturers and retailers must report to the CPSC when a product presents a substantial risk of injury.

221.    Defendants failed to report prior candle explosion incidents, despite receiving prior consumer complaints and having issued product recalls for similar hazards, thereby violating federal law.

Defendants' Negligence Proximately Caused Plaintiff's Injuries.

222.    Under New York law, proximate cause is established when an injury is a foreseeable result of a defendant's failure to take reasonable precautions.

223.    Here, the defective design, flammable materials, and weak container integrity made an explosion foreseeable; yet, the Defendants failed to redesign the product or warn consumers.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants Bath & Body Works, LLC and The Premier Candle Corporation, awarding the following relief:

224.    Compensatory Damages for Personal Injury
   a. Past and future medical expenses related to:
      1. Emergency medical care, skin grafting procedures, reconstructive surgeries, dermatological treatments, and pain management therapy resulting from the second-degree burns sustained by Plaintiff Renita Francois.
      2. Long-term psychiatric and psychological treatment for trauma, PTSD, anxiety, and emotional distress caused by the explosion and its lasting effects.

      3. Ongoing dermatological interventions to mitigate scarring and permanent skin discoloration due to burn trauma.

    b. Economic damages, including lost wages and diminished earning capacity, as Plaintiff's ability to work in public-facing roles, leadership capacities, and professional settings has been severely impacted due to the injuries and resulting psychological distress.

    c. Pain and suffering damages, recognizing the physical agony, disfigurement, and psychological distress endured by Plaintiff due to the Defendants' failure to exercise reasonable care in product safety.

    d. Loss of enjoyment of life damages, for the permanent alteration of Plaintiff's confidence, ability to engage socially, and emotional security as a result of her disfigurement and trauma.

225.   Punitive Damages for Defendants' Gross Negligence

    a. An award of punitive damages according to New York law and common law principles due to:

      1. Defendants' reckless failure to implement proper safety testing despite prior incidents of exploding candles, consumer complaints, and knowledge of the hazards associated with the product.

      2. Defendants' failure to recall or reformulate their hazardous candle despite being aware of its unreasonably dangerous nature.

      3. Defendants' failure to conduct thermal stress testing, flammability control, and independent third-party safety audits to prevent foreseeable consumer harm.

    b. A judicial finding that Defendants engaged in willful, wanton, and reckless conduct, justifying the maximum allowable punitive damages under New York and federal consumer protection laws.

226.   Equitable Relief – Consumer Protection & Industry Compliance

    a. A mandatory recall of the Sweater Weather candle and all similarly hazardous candles manufactured by The Premier Candle Corporation and sold by Bath & Body Works.

    b. A requirement that Defendants issue public recall notifications through online platforms, social media, and print advertising, warning consumers about the risk of explosion and severe burns associated with their candles.

    c. A court-mandated third-party audit of all Bath & Body Works candle manufacturing practices, ensuring compliance with:

      1. ASTM International safety standards (ASTM F2417 & ASTM F2058).

      2. Consumer Product Safety Commission (CPSC) guidelines for flammable household goods.

      3. Federal Hazardous Substances Act (FHSA) labeling and hazard disclosure requirements.

    d. An order requiring Bath & Body Works to implement pre-market testing for all future candles distributed in the U.S. to ensure they do not pose unreasonable risks of explosion, glass breakage, or excessive flame height.

227.   Injunctive Relief – Industry-Wide Safety Reforms

    a. A permanent injunction prohibiting Defendants from distributing or selling candles that fail to meet rigorous safety benchmarks, including:

      1. Thermal stress testing to prevent glass shattering.

      2. Fragrance oil volatility testing to prevent flash ignition.

3.  Mandatory inclusion of explosion risk warnings on product labels.
b.  An order requiring Bath & Body Works to disclose all hazardous chemicals used in its candles on both packaging and online listings, in compliance with:
1.  The Fair Packaging and Labeling Act (15 U.S.C. § 1451 et seq.).
2.  California Proposition 65 hazardous chemical disclosure laws.
3.  CPSC consumer safety warning guidelines for flammable household products.

228.     Attorneys' Fees and Litigation Costs
a.  An award of attorneys' fees and litigation costs according to:
1.  N.Y. Gen. Bus. Law § 349, for deceptive trade practices and failure to disclose known product hazards.
2.  15 U.S.C. § 2064(b), requiring manufacturers to report dangerous product defects to the CPSC.

229.     Any Further Relief Deemed Just and Proper
a.  Such other and further relief as this Court deems just and appropriate to fully compensate Plaintiffs for their injuries, damages, and losses caused by Defendants' negligent, reckless, and willfully dangerous conduct.

## AS FOR THE THIRD CAUSE OF ACTION
### FAILURE TO WARN
### (Against Both Defendants)

230.     Plaintiff Francois incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

### DEFENDANTS HAD PRIOR KNOWLEDGE OF THE
### EXPLOSION RISK YET FAILED TO WARN CONSUMERS

231.     Defendants Bath & Body Works, LLC and The Premier Candle Corporation knew or should have known that the Sweater Weather candle posed a significant and foreseeable risk of explosion, severe burns, and catastrophic injury to consumers.

232.     Despite this knowledge, Defendants failed to provide adequate warnings or safety instructions to protect consumers from the hazards associated with their defective product.

a.  Prior consumer complaints, product defect reports, and past candle recalls had already established that Bath & Body Works candles exhibited a pattern of dangerous and unpredictable combustion events.

b.  The volatile chemical composition of the Sweater Weather candle, combined with its structurally weak glass container, created an inherent and extreme fire hazard.

c.  Despite possessing this information, Defendants failed to issue a safety recall, update warning labels, or inform the public of the risks associated with their product.

233.     Instead, Defendants knowingly placed a dangerously defective product into the hands of unsuspecting consumers, providing them with misleading and insufficient safety warnings that did not accurately reflect the full extent of the dangers presented by the candle.

<u>THE PROVIDED WARNING LABEL FAILED TO<br>ADDRESS THE TRUE RISKS OF THE PRODUCT</u>

234.     The warning label on the Sweater Weather candle included general safety guidelines for candle use, including:

   a. "Burn candle within sight."
   b. "Keep away from things that catch fire."
   c. "Keep away from children and pets."
   d. "ALWAYS trim wicks to 1/4 inch before each relighting."
   e. "Keep wax pool free of wick trimmings and matches."
   f. "DO NOT burn candle more than 4-hour intervals."
   g. "DO NOT extinguish with water."
   h. "Avoid drafts."

235.     However, these warnings failed to inform consumers of the actual, known risks associated with the candle, including:

   a. The risk of explosion upon first use.
   b. The potential for volatile fragrance compounds to ignite suddenly, even under normal operating conditions.
   c. The instability of the glass container, which could shatter or explode under heat stress.
   d. The chemical hazards associated with the candle's toxic emissions and airborne volatile organic compounds (VOCs).

236.     Nowhere on the packaging did Defendants warn consumers that simply smelling the unlit candle could trigger an explosion, as happened to Plaintiff.

237.     Defendants failed to communicate the severity of the risks involved, leading consumers to believe they were using a safe, properly tested household product when, in reality, they were unknowingly exposing themselves to life-threatening hazards.

<u>DEFENDANTS HAD A LEGAL DUTY TO PROVIDE CLEAR,<br>SPECIFIC, AND ADEQUATE WARNINGS</u>

238.     Under product liability law, manufacturers and distributors are required to warn consumers of any known or foreseeable dangers associated with their products. This duty includes:

   a. Identifying all risks associated with the normal use of the product.
   b. Providing adequate instructions to mitigate risks of injury.
   c. Updating warnings and product information in response to new safety concerns, complaints, or incidents.

239.     Defendants breached this duty by failing to provide an adequate warning despite having prior knowledge of the dangers associated with the Sweater Weather candle.

   a. Bath & Body Works, LLC, as the retailer, had a responsibility to ensure that the products it sold contained appropriate and legally sufficient safety warnings.
   b. The Premier Candle Corporation, as the manufacturer, was obligated to test the product for potential hazards and include warnings specific to the risks identified during safety evaluations.
   c. Neither Defendant took any action to address or warn consumers about the known dangers, creating an unreasonably hazardous condition that led directly to Plaintiff's injuries.

240.     Had Defendants included adequate safety warnings, Plaintiff would have been aware of the risks and could have avoided injury. Instead, Plaintiff relied on the incomplete and misleading safety instructions provided by Defendants, which downplayed the risks of fire, explosion, and serious bodily harm.

<u>CAUSATION LINK FOR FAILURE TO WARN</u>

241.     Had the Defendants included an adequate warning label indicating the risk of explosion, flash ignition, and glass container failure—particularly upon first lighting or during close-range use—Plaintiff Renita Francois would not have used the product in the manner that led to her injuries. Specifically, if the label had stated:

   a. "WARNING: DO NOT LEAN OVER CANDLE WHILE LIT—RISK OF EXPLOSION OR FLARE-UP"
   b. "Contains volatile compounds that may combust unexpectedly. Use extreme caution during first lighting."
   c. "Container may shatter under high heat. Ensure candle is on a fire-resistant surface and never place face or body within close range" —then Plaintiff would have refrained from leaning in to smell the candle while it was burning, or she would have declined to use the candle entirely.

242.     The Plaintiff read and followed the manufacturer's existing safety instructions, which included generic warnings (e.g., "Burn within sight," "Keep away from things that catch fire," etc.). Still, none of the warnings conveyed the actual and material danger posed by the chemical composition and structural vulnerability of the Sweater Weather candle.

243.     As a direct result of Defendants' failure to provide adequate, specific, and timely warnings, Plaintiff was unaware of the product's true dangers, used the candle in a reasonably

54

foreseeable manner, and suffered life-altering injuries that would have been avoided had the product been properly labeled.

PLAINTIFF USED THE CANDLE AS INSTRUCTED,
YET IT EXPLODED WITHOUT WARNING

244.        Plaintiff Renita Francois followed every instruction provided on the candle's packaging before attempting to use the product.

   a. She read and adhered to all safety guidelines, ensuring proper use.
   b. She trimmed the wick according to the manufacturer's specifications.
   c. She ensured the candle was placed on a stable surface, free of debris or obstructions.

245.        She did not exceed the recommended burn time or expose the candle to drafts.

246.        Despite following these precautionary measures, the candle exploded in her face upon first use, covering her skin in molten wax, searing her flesh, and causing immediate and severe burns.

247.        This was not a matter of consumer error—this was a failure of the Defendants to warn of a defect that they knew existed.

LEGAL BASIS FOR FAILURE TO WARN
UNDER FEDERAL AND NEW YORK LAW

Defendants Violated Federal Labeling and Hazard Disclosure Requirements

248.        The Fair Packaging and Labeling Act (FPLA), 15 U.S.C. § 1451 et seq., requires clear and accurate labeling of consumer products.

249.        The Sweater Weather candle failed to provide sufficient warnings about explosion risks, excessive flame height, and glass container failure, violating federal labeling requirements.

Defendants' Failure to Provide Adequate Warnings Violates New York Common Law

250.        Under *Liriano v. Hobart Corp.*, 92 N.Y.2d 232 (1998), a manufacturer is liable for failure to warn if:

   a. The danger was foreseeable and known to the manufacturer.

   b. A warning would have prevented the injury.

251.        Here, the Defendants knew their candles posed an explosion risk yet failed to include clear warnings on the product label, thereby depriving consumers of critical safety information.

The Lack of Warning Labels Violated New York General Business Law § 349

252.        New York GBL § 349 prohibits deceptive trade practices in the sale of consumer goods.

253.        Defendants' failure to disclose known hazards constitutes a deceptive business practice, exposing consumers to serious risks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants Bath & Body Works, LLC and The Premier Candle Corporation, awarding the following relief:

254.        Compensatory Damages for Personal Injury and Emotional Distress

    a.  Past and future medical expenses, including but not limited to:

        1.  Emergency medical treatment, burn care, reconstructive surgery, and dermatological procedures are necessary because of the severe second-degree burns suffered by the Plaintiff.

        2.  Ongoing pain management, mental health therapy, and psychiatric treatment for post-traumatic stress disorder (PTSD), anxiety, depression, and loss of self-esteem caused by the explosion and subsequent injuries.

        3.  Future expenses related to permanent scarring, disfigurement, and any necessary cosmetic or corrective medical procedures.

    b.  Economic damages, including lost wages and future loss of earning capacity:

        1.  Plaintiff, a public-facing leader, has been significantly impacted in her ability to engage in leadership roles, attend public events, and present at meetings due to self-consciousness, anxiety, and the unavoidable distractions caused by her injuries.

    c.  Pain and suffering damages, recognizing:

        1.  The intense physical pain, trauma, and emotional suffering caused by the Defendants' failure to warn about the dangers of the Sweater Weather candle.

        2.  The fear, embarrassment, and distress the Plaintiff experiences daily due to her permanent injuries.

    d.  Loss of enjoyment of life damages, due to:

        1.  Plaintiff's hesitation to engage in professional, social, and personal activities due to the stigma, trauma, and altered perception of her physical appearance.

255.        Punitive Damages for Defendants' Willful Disregard of Consumer Safety

    a.  An award of punitive damages according to New York law and common law principles, based on:

        1.  Defendants' reckless failure to warn consumers despite prior incidents of exploding candles.

        2.  Defendants' continued sale of the Sweater Weather candle despite knowledge of its explosion risk, excessive flame height, and structurally unsound container.

        3.  Defendants' deliberate decision not to recall, reformulate, or modify labeling on its product despite clear evidence of its hazards.

    b.  A judicial finding that Defendants engaged in deceptive and misleading practices, constituting gross negligence and recklessness, warrants the maximum punitive damages available under New York law.

256.    <u>Equitable Relief – Recall and Corrective Action</u>

    a.  A full, mandatory recall of the Sweater Weather candle and all similar candles produced by The Premier Candle Corporation and sold by Bath & Body Works.

    b.  A requirement that Defendants issue public safety warnings and recall notices through:

      1.  Television, online media, newspapers, and in-store signage, ensuring that consumers are properly informed about the hazards associated with these defective products.

    c.  An order requiring Defendants to immediately stop the distribution of hazardous candles until:

      1.  They conduct independent third-party safety audits.
      2.  They modify their products to meet ASTM F2417 (fire safety) and ASTM F2058 (safety labeling) standards.

257.    <u>Injunctive Relief – Regulatory Compliance and Industry Reform</u>

    a.  An injunction requiring Defendants to revise all candle labeling and packaging to ensure:

      1.  Explicit, clear, and conspicuous warnings regarding explosion risks, excessive flame height, and flammable fragrance compounds.
      2.  Warnings that clearly state the potential for spontaneous combustion, thermal container failure, and structural integrity risks.
      3.  Detailed extinguishing instructions specifying the safest way to prevent an explosion upon extinguishment.

    b.  An order mandating Bath & Body Works implement pre-market product testing requirements, ensuring that no future candles are sold under its brand:

      1.  Contain highly flammable and volatile fragrance compounds without thorough stability testing.
      2.  Utilize glass containers that cannot withstand thermal stress from prolonged burning.
      3.  Fail to meet CPSC and FHSA standards for fire risk labeling and burn hazard warnings.

    c.  A requirement that Defendants revise their risk disclosure practices, in compliance with:

      1.  The Consumer Product Safety Act (CPSA), 15 U.S.C. § 2051 et seq., mandates that companies report defective and dangerous products.
      2.  The Federal Hazardous Substances Act (FHSA), 15 U.S.C. § 1261 et seq., which prohibits the sale of consumer products containing hazardous chemicals without adequate labeling.

d. New York General Business Law § 349, prohibiting deceptive business practices that mislead consumers about product safety.

258.     Attorneys' Fees and Litigation Costs

a. An award of attorneys' fees and litigation costs, including:

1. Expert witness fees for fire safety specialists, forensic product engineers, and toxicologists.
2. Costs associated with conducting product testing to demonstrate the hazardous nature of the Sweater Weather candle.

b. An award of statutory attorneys' fees under N.Y. Gen. Bus. Law § 349, for deceptive and misleading business practices related to the Defendants' failure to warn about known explosion risks.

259.     Any Further Relief Deemed Just and Proper

a. Such other and further relief as this Court deems just and appropriate to fully compensate Plaintiffs for their injuries, damages, and losses caused by Defendants' wrongful acts.

## AS FOR THE FOURTH CAUSE OF ACTION
### LOSS OF CONSORTIUM
*(Plaintiff McEvans Francois Against Both Defendants)*

260.     Plaintiff McEvans Francois incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

### DEFENDANTS' NEGLIGENCE AND PRODUCT DEFECTS
### CAUSED CATASTROPHIC INJURIES TO PLAINTIFF'S WIFE

261.     On January 19, 2023, Plaintiff Renita Francois' life was permanently altered when a defective and dangerously designed Sweater Weather candle exploded in her face, covering her skin in molten wax and flames.

262.     As a direct result of Defendants' reckless and negligent actions, Plaintiff McEvans Francois has suffered a profound and devastating loss of consortium, including:

a. The loss of companionship, affection, and shared experiences with his wife, who has been permanently disfigured and emotionally traumatized.
b. The emotional devastation of witnessing his wife scream in pain as fire and molten wax burned her face, permanently altering her appearance.
c. The psychological burden of seeing his once-confident wife struggle with deep insecurities, public anxiety, and hesitation to re-engage in social and professional settings.
d. The loss of intimacy and the natural, unspoken comfort that once defined their marriage.

263.         Before this tragic event, McEvans and Renita Francois shared a life built on love, mutual support, and joyful connection. The defendant's defective product stole that from them in an instant.

<u>THE TRAUMA OF WITNESSING<br/>HIS WIFE'S HORRIFIC INJURIES</u>

264.         Plaintiff McEvans Francois was present at the time of the explosion and was forced to witness, in real-time, the unimaginable horror of his wife's face being engulfed in flames.

  a. He watched helplessly as Renita screamed in agony, clutching her face in an attempt to remove the burning wax that had adhered to her skin.
  b. He saw her once-smooth skin begin to bubble, her eyes filled with terror as her vision blurred from the heat and pain.
  c. He scrambled to help her, trying desperately to cool her burns, but nothing he did could undo the damage that had already been done.

265.         The sheer trauma of that moment—the feeling of helplessness, the sight of his wife suffering, and the realization that their lives had just changed forever—has left an irreversible emotional scar on Plaintiff.

266.         McEvans cannot unsee what happened that night.

  a. Every time he looks at his wife, he is reminded of that explosion.
  b. Every time she flinches from a public stare, he feels the weight of what was taken from her—and him.
  c. Every time she hesitates before stepping into a room, he remembers the confidence she once carried effortlessly.

267.         Defendants did not just harm Renita Francois—they shattered the security, happiness, and emotional foundation of their marriage.

<u>THE PERMANENT CHANGES TO<br/>THEIR MARRIAGE AND DAILY LIFE</u>

268.         The injuries inflicted upon Renita Francois were not temporary. The explosion left her with permanent physical scars and deep emotional trauma—scars that have fundamentally altered their marriage in ways that Defendants must be held accountable for.

269.         As a direct result of Defendants' conduct, McEvans Francois has suffered irreparable damage to his relationship with his wife:

  a. Loss of physical intimacy and sexual companionship, as Plaintiff Renita Francois's injuries have caused her substantial pain, discomfort, emotional trauma, and diminished body confidence, all of which have severely impacted the couple's marital relations;

59

b. Loss of emotional support, comfort, and companionship due to Renita Francois's psychological distress, depression, and persistent anxiety stemming from her disfigurement and trauma;

c. Loss of societal companionship, as the couple's shared activities—including social outings, family traditions, and public events—have been curtailed because of Renita's physical injuries and self-consciousness in public spaces;

d. Loss of household services and shared parenting responsibilities, as Plaintiff McEvans Francois has had to assume increased burdens at home due to Renita's physical limitations during her recovery and ongoing treatment.

<u>Loss of Shared Social and Public Life</u>

270.    Before the explosion, Renita was a confident, outgoing leader. Together, they attended events, enjoyed social gatherings, and lived life fully and in the public eye.

271.    Now, Renita hesitates before stepping outside, fearing the judgment and questions from strangers.

272.    McEvans, who once proudly stood beside his wife as she commanded rooms with her voice and presence, now watches as she struggles with hesitation and self-consciousness.

<u>The Mental and Emotional Toll on McEvans</u>

273.    The helplessness of that night, the unrelenting stress of caring for a severely burned spouse, and the emotional weight of watching Renita suffer have left McEvans with profound emotional trauma.

274.    He has struggled with sleepless nights, anxiety, and the inability to erase the memory of that horrifying moment from his mind.

275.    He now feels the daily pressure of being his wife's protector—not just from future harm, but from the world's gaze, the stares, and the unsolicited sympathy.

<u>Additional Responsibilities and Caregiving Burden</u>

276.    McEvans has had to take on significant caregiving responsibilities to help Renita navigate her physical and emotional recovery.

277.    The time spent caring for his wife's wounds, attending medical visits, and providing emotional reassurance has taken a toll on his own well-being and professional life.

The Loss of Their Former Life Together

278.        Their marriage was built on shared adventures, deep affection, and a natural, easy companionship.

279.        Now, every interaction is shadowed by the reality of what was lost and the pain that lingers.

280.        Their future has been altered by Defendants' negligence, forcing them to navigate a new reality that neither of them asked for.

## DEFENDANTS MUST BE HELD ACCOUNTABLE FOR DESTROYING MORE THAN JUST RENITA'S PHYSICAL WELL-BEING

281.        Bath & Body Works, LLC and The Premier Candle Corporation did not just injure one person—they shattered the emotional, physical, and psychological bond between two people who built a life together.

282.        Loss of consortium is not just about physical intimacy—it is about the loss of partnership, the shared joys, the emotional support, and the love that defines a marriage.

283.        McEvans Francois did everything right:

    a. He was a loving husband.
    b. He was a present and supportive partner.
    c. He was a man who built a home and a future with his wife, only to watch it all change in an instant because the Defendants failed to ensure product safety.

284.        For that, Defendants must be held accountable.

## LEGAL BASIS FOR LOSS OF CONSORTIUM UNDER NEW YORK LAW

Loss of Consortium is Recognized Under New York Law When a Spouse Suffers a Severe Injury

285.        Under *Millington v. Southeastern Elevator Co.*, 22 N.Y.2d 498 (1968), a spouse is entitled to damages when their partner suffers a debilitating injury due to a third party's negligence.

286.        Plaintiff McEvans Francois's loss of companionship, emotional support, and marital enjoyment is a direct result of the Defendants' negligent actions.

Defendants' Liability Extends to Emotional and Psychological Harm

287.        Under *Bovsun v. Sanperi*, 61 N.Y.2d 219 (1984), emotional distress from witnessing a loved one's catastrophic injury can be grounds for damages.

288.        Plaintiff McEvans Francois directly witnessed his wife's face being burned by an explosion; an event that caused significant psychological trauma for which Defendants should be held accountable.

## PRAYER FOR RELIEF

289.        **WHEREFORE**, Plaintiff McEvans Francois respectfully requests that this Court enter judgment in his favor and against Defendants Bath & Body Works, LLC and The Premier Candle Corporation, awarding the following relief:

290.        Compensatory Damages for Loss of Consortium

    a. Damages for loss of companionship, affection, and emotional support, recognizing:

        1. The irreparable damage to the emotional and physical intimacy between Plaintiff and his wife caused by her disfigurement, trauma, and self-consciousness following the explosion.
        2. The loss of the shared joys, activities, and emotional bond that once defined their marriage.

    b. Damages for loss of shared household services, including:

        1. The increased burden of caregiving responsibilities, as Plaintiff now assists his wife with daily physical care, medical treatments, and psychological recovery efforts.
        2. The disruption to the balance of responsibilities in their marriage, requiring Plaintiff to take on additional roles that his wife previously performed.

    c. Economic damages for the impact on Plaintiff's professional and personal life, including:

        1. Lost work hours and income due to the time spent caring for his wife, attending medical appointments, and providing emotional support.
        2. The strain on Plaintiff's ability to focus on his career and professional advancement, as his wife's traumatic injury has required his ongoing physical and emotional investment.

    d. Pain and suffering damages, acknowledging the severe emotional distress caused by witnessing his wife's face engulfed in flames, her screams of agony, and the life-altering consequences of the explosion.

291.        Punitive Damages for Defendants' Reckless and Negligent Conduct

    a. An award of punitive damages, under New York common law and loss of consortium statutes, based on:

        1. Defendants' reckless disregard for consumer safety, despite prior complaints and known incidents of candle explosions.
        2. Defendants' failure to recall, reformulate, or modify their products, knowingly placing defective candles into the marketplace.
        3. Defendants' decision to prioritize profit over human safety, ignoring the foreseeable harm their product would cause.

    b. A judicial finding that Defendants' negligence constitutes gross misconduct, warranting maximum punitive damages under New York law and applicable federal consumer protection statutes.

292.  <u>Equitable Relief – Industry Reform and Consumer Protection</u>

    a. A court-mandated recall and public safety notice requiring Bath & Body Works and

        The Premier Candle Corporation to:

        1. Issue warnings about the explosion risks of the Sweater Weather candle through in-store signage, print media, digital advertising, and customer outreach programs.
        2. Conduct a full-scale recall of all hazardous Bath & Body Works candles manufactured by The Premier Candle Corporation.

    b. A court-ordered consumer awareness initiative, requiring Bath & Body Works to:

        1. Fund an independent consumer product safety study to assess the risk of candle explosions across its product line.
        2. Disclose all hazardous chemical compounds used in its candles on product packaging and online listings.

    c. Implement a safety testing protocol to prevent similar incidents, ensuring compliance

        with:

        1. ASTM F2417-17 (Fire Safety Standard for Candles)
        2. ASTM F2058-21 (Candle Warning Labels and Instructions)
        3. Consumer Product Safety Commission (CPSC) regulations on fire hazards in household products.

293.  <u>Injunctive Relief – Mandatory Corporate Safety Reforms</u>

    a. An injunction requiring Bath & Body Works to implement product safety oversight

        measures, including:

        1. Pre-market testing for all future candles to ensure they do not pose unreasonable risks of explosion, glass breakage, or excessive flame height.
        2. Regular third-party audits of all candle manufacturing facilities, with reports submitted to regulatory agencies.

    b. A requirement that Defendants revise their consumer safety disclosures, ensuring:

        1. A clear and conspicuous warning label on all candles sold by Bath & Body Works, explicitly stating the risk of explosion and glass shattering.
        2. Updated safety instructions explaining the safest methods for extinguishing candles and preventing wax combustion events.

294.  <u>Attorneys' Fees and Litigation Costs</u>

    a. An award of attorneys' fees and litigation costs, pursuant to:

        1. N.Y. Gen. Bus. Law § 349, for Defendants' deceptive practices and failure to disclose known hazards.
        2. 15 U.S.C. § 2064(b), which mandates manufacturer reporting of dangerous product defects to the CPSC.

    b. An award of expert witness fees for testimony regarding:

        1. Fire safety risks associated with scented candles.
        2. The emotional and psychological impact of witnessing traumatic injuries on family members.
        3. Industry safety standards and the necessary reforms to prevent similar injuries.

295.          <u>Any Further Relief Deemed Just and Proper</u>

  a.  Such other and further relief as this Court deems just and appropriate to compensate Plaintiff for the immeasurable loss of companionship, emotional support, and quality of life caused by Defendants' wrongful acts.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Renita Francois and McEvans Francois respectfully request that this Court enter judgment in their favor and against Defendants Bath & Body Works, LLC and The Premier Candle Corporation, and award the following relief:

A. <u>Compensatory Damages for Personal Injury, Economic Loss, and Emotional Distress</u>

1. Full compensation for past and future medical expenses, including but not limited to:
   o Emergency medical care, burn treatment, reconstructive surgery, dermatological care, and pain management therapy are necessary because of the second-degree burns suffered by Plaintiff Renita Francois.
   o Ongoing psychiatric and psychological treatment for trauma, PTSD, anxiety, depression, and loss of self-esteem caused by the explosion.
   o Future expenses related to permanent disfigurement, skin grafts, and any necessary medical procedures for continued treatment.

2. Economic damages for lost wages and future loss of earning capacity, recognizing that:
   o Plaintiff Renita Francois's ability to work in leadership roles and professional settings has been severely impacted due to the physical and emotional trauma caused by the explosion.
   o Plaintiff McEvans Francois has suffered financial strain due to lost work hours and caregiving responsibilities, which directly resulted from Defendants' wrongful conduct.

3. Pain and suffering damages, including:
   o The extreme physical pain, discomfort, and distress caused by Plaintiff's injuries.
   o The lasting emotional and psychological toll of permanent scarring, self-consciousness, and social withdrawal.
   o The anxiety and fear Plaintiff now experiences around open flames, candles, and similar household products.

4. Loss of enjoyment of life damages, including:
   o Plaintiff's diminished ability to participate in public and social activities due to trauma and self-consciousness over her injuries.
   o Plaintiffs' inability to enjoy the same level of companionship, social interactions, and professional engagement as they did before the explosion.

B. <u>Punitive Damages for Defendants' Gross Negligence and Reckless Disregard for Consumer Safety</u>

5. An award of punitive damages according to New York law and common law principles, based on:
   o Defendants' reckless and knowing failure to ensure the safety of their candles before placing them on the market.

64

- o Defendants' deliberate decision not to recall, modify, or warn consumers about their product's explosion risk, despite prior knowledge of similar incidents.
- o Defendants' prioritization of corporate profit over public safety, resulting in foreseeable and preventable harm.

6. A judicial finding that Defendants' actions constitute gross misconduct, warranting maximum punitive damages under New York and federal consumer protection laws.

C. Equitable Relief – Product Recall and Safety Reform

7. A mandatory nationwide recall of all Sweater Weather candles and similarly hazardous Bath & Body Works candles, requiring:
- o Immediate cessation of sales and distribution of all defective products.
- o Public recall notices through online platforms, in-store signage, and media campaigns, warning consumers of the risk of explosion and severe burns.

8. A court-ordered consumer protection initiative, requiring Bath & Body Works to:
- o Disclose all hazardous chemical compounds used in its candles on packaging and online listings.
- o Provide full refunds or replacements to all consumers who purchased Sweater Weather candles or any similar defective products.
- o Create a dedicated consumer hotline to assist customers with concerns about product safety.

9. An independent third-party audit of Bath & Body Works and The Premier Candle Corporation's manufacturing practices, ensuring:
- o Compliance with ASTM F2417 (Fire Safety Standard for Candles) and ASTM F2058 (Candle Warning Labels and Instructions).
- o Adherence to Consumer Product Safety Commission (CPSC) guidelines regarding flammable household goods.
- o Implementation of fire hazard and explosion risk mitigation measures before any future candles are placed on the market.

D. Injunctive Relief – Consumer Protection and Industry Oversight

10. A permanent injunction prohibiting Defendants from selling candles that fail to meet the highest safety standards, including:
1. Mandatory flame height testing to prevent excessive combustion.
2. Wick and fragrance oil volatility testing to prevent flash ignition.
3. Structural integrity testing to prevent glass container shattering.

11. A requirement that Defendants revise all product labeling and packaging, ensuring:
1. Explicit and conspicuous warnings regarding explosion risks, excessive flame height, and flammable fragrance compounds.
2. Provide clear extinguishing instructions to minimize the risks of flash combustion and unexpected flare-ups.
3. Compliance with the Fair Packaging and Labeling Act (15 U.S.C. § 1451 et seq.) and the Federal Hazardous Substances Act (15 U.S.C. § 1261 et seq.).

12. A requirement that Bath & Body Works conduct routine third-party safety audits on all candles before placing them on the U.S. market, ensuring:
1. Thermal stress testing for glass containers.
2. Evaluation of burn stability and chemical safety of all fragrance oils used.

E. Attorneys' Fees and Litigation Costs

13. An award of attorneys' fees and litigation costs, including:
    1. Expert witness fees for fire safety specialists, product engineers, and toxicologists.
    2. Costs associated with conducting forensic product testing to demonstrate the hazardous nature of the Sweater Weather candle.
    3. Reimbursement for Plaintiffs' legal expenses incurred in holding Defendants accountable for their negligent conduct.
14. An award of statutory attorneys' fees according to:
    1. N.Y. Gen. Bus. Law § 349, for deceptive trade practices and failure to disclose known product hazards.
    2. 15 U.S.C. § 2064(b) mandates that manufacturers report dangerous product defects to the CPSC.

F. <u>Any Further Relief Deemed Just and Proper</u>

15. Such other and further relief as this Court deems just and appropriate to fully compensate Plaintiffs for their injuries, damages, and losses caused by Defendants' reckless, negligent, and willfully dangerous conduct.

Date: July 4, 2025

Brooklyn, New York                                                Respectfully Submitted,

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236-4160

## DEMAND FOR INSURANCE COVERAGE

Defendants are demanded to provide a complete copy of their applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

Date: July 4, 2025
Brooklyn, New York                                                Respectfully Submitted,

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236-4160

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Date: July 4, 2025
Brooklyn, New York                                                Respectfully Submitted,

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236-4160

## PRESERVATION NOTICE

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents, and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors.

You are directed from this point forward to prevent any "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any of the information set forth hereafter.

**If you cause any such alteration, destruction, or change, direct it, or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Furthermore, your failure to comply with this request could result in severe penalties against you and form the basis of legal claims for spoliation**.

Electronically Stored Information:
In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete, or allow modifications, alterations, or deletions to be made to any such electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:
In terms of the paper information, you are directed to preserve any and all emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents that pertain in any way to the controversy, parties, or witnesses in this matter.

Through discovery, we expect to obtain from you a number of documents and other data, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery in this case arises independently from any order on such motion.

Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we are likely to seek all documents in their original, electronic form, along with metadata or information about those documents contained in the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, we request that you take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after the date of delivery of this letter, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Date: July 4, 2025

Brooklyn, New York

Respectfully Submitted,

_/s/Tyrone A. Blackburn, Esq._

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236-4160
P: 347-342-7432
E: tblackburn@tablackburnlaw.com