UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Renita Francois, and<br>McEvans Francois,<br><br>                Plaintiffs,<br><br>-against-<br><br><br>Bath & Body Works, LLC,<br>The Premier Candle Corporation,<br>ABC Corporation 1-10, and<br>JOHN and JANE DOES 1-10,<br>                Defendant. | Civil Action No.: 25-3725<br><br>Plaintiffs' Memorandum of Law in Opposition to Defendant Bath & Body Works, LLC's Motion for Leave to Amend Its Answer to Add an Arbitration Defense |

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BATH & BODY WORKS, LLC'S MOTION FOR LEAVE TO AMEND ITS ANSWER TO ADD AN ARBITRATION DEFENSE

<u>Brief by</u>: Tyrone Blackburn, Esq.

1

TABLE OF CONTENTS

INTRODUCTION

PRELIMINARY STATEMENT

STATEMENT OF FACTS

I.       The December 3, 2021, Online Purchase of the Subject Candle.

II.      The Alleged December 11, 2022, In-Store Loyalty Program Enrollment.

III.    Procedural History of This Litigation.

ARGUMENT

I.       Leave to Amend Should Be Denied Because Amendment Would Be Futile.

    1.  No Valid Arbitration Agreement Was Formed as to the Pre-Existing December 2021 Purchase and Subsequent Injury.

        A.  The Online Purchase Predated Loyalty Enrollment by Over One Year — Conditions Precedent to Formation Were Never Satisfied.

        B.  No Meeting of the Minds on Retroactive Application.

        C.  Inadequate Consideration for Retroactive Modification.

    1.  The Purported Retroactive Arbitration Clause Is Unenforceable Under New York Law.

    2.  The Temporal Scope Language Is Insufficient to Encompass Pre-Existing Tort Claims.

II.      Leave to Amend Should Be Denied Due to Undue Delay and Prejudice to Plaintiffs.

    1.  BBW Must Satisfy Rule 16(b)'s Good Cause Standard.

    2.  BBW's Delay Was Unreasonable and Unjustified.

    3.  Plaintiffs Will Suffer Undue Prejudice.

III.    BBW Has Waived Any Right to Assert Arbitration Through Its Litigation Conduct.

    1.  BBW's Jury Trial Demand Constitutes Waiver.

    2.  BBW's Conduct Demonstrates Knowing Relinquishment.

CONCLUSION

TABLE OF AUTHORITIES

Cases

- Adams v. Suozzi, 433 F.3d 220 (2d Cir. 2005).
- AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643 (1986).
- Beacon Terminal Corp. v. Chemprene, Inc., 75 A.D.2d 350 (2d Dep't 1980)
- Belzberg v. Verus Investments Holdings Inc., 21 N.Y.3d 626, 999 N.E.2d 1130 (2013).
- Brevard v. Credit Suisse, No. 23-cv-428 (LJL), 2024 WL 36991 (S.D.N.Y. Jan. 3, 2024).
- Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122 (2d Cir. 2008).
- Burns v. Imagine Films Entertainment, Inc., 165 F.R.D. 381 (W.D.N.Y. 1996).
- Caronia v. Philip Morris USA, Inc., 22 N.Y.3d 439, 5 N.E.3d 11 (2013).
- Carter v. Ralph Lauren Corporation, 683 F. Supp. 3d 400 (S.D.N.Y. 2023).
- Commercial Lubricants, LLC v. Safety-Kleen Systems, Inc., No. 14-CV-7483, 2018 WL 5045760 (E.D.N.Y. Oct. 17, 2018).
- Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775 (2d Cir. 2003).
- Dean Witter Reynolds Inc. v. Prouse, 831 F. Supp. 328 (S.D.N.Y. 1993).
- Desarrolladora La Ribera, S. de R.L. de C.V. v. Anderson, No. 1:24-cv-00067-LAK-BCM (S.D.N.Y. 2024).
- Doyle v. UBS Financial Services, Inc., 144 F.4th 122 (2d Cir. 2025).
- Express Industries & Terminal Corp. v. New York State Department of Transportation, 93 N.Y.2d 584, 715 N.E.2d 1050 (1999).

- First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995).
- Foman v. Davis, 371 U.S. 178 (1962).
- Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 534 N.E.2d 824 (1988).
- In re Celsius Network LLC, 647 B.R. 631 (Bankr. S.D.N.Y. 2023).
- Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992).
- Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90 (1993).
- Louisiana Stadium & Exposition District v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156 (2d Cir. 2010).
- Lucente v. International Business Machines Corp., 310 F.3d 243 (2d Cir. 2002).
- Macioce v. Hisense USA Corp., Slip Copy (S.D.N.Y. 2025).
- Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985).
- Morgan v. Sundance, Inc., 596 U.S. 411 (2022).
- National Federation of the Blind v. Container Store, Inc., 904 F.3d 70 (1st Cir. 2018).
- New Land Interiors Corp. v. Kinsale Insurance Co., No. 25-CV-732 (DEH)(RWL), 2025 LX 529085 (S.D.N.Y. Dec. 12, 2025).
- Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d Cir. 2000).
- Park v. Shinhan Bank America, No. 22-CV-10331 (VSB), 2025 U.S. Dist. LEXIS 420739 (S.D.N.Y. Sept. 23, 2025).
- Pilon v. Discovery Communications, LLC, 769 F. Supp. 3d 273 (S.D.N.Y. 2025).
- Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp., 455 F. Supp. 211 (S.D.N.Y. 1978).
- PPG Industries, Inc. v. Webster Auto Parts, Inc., 128 F.3d 103 (2d Cir. 1997).
- Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115 (2d Cir. 2010).
- Rent-A-Center, Inc. v. 47 Mamaroneck Avenue Corp., 215 F.R.D. 100 (S.D.N.Y. 2003).
- Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010).
- Robinson v. Town of Colonie, 1993 WL 191166 (N.D.N.Y. 1993).
- Ross v. American Express Co., 478 F.3d 96 (2d Cir. 2007).
- S&R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80 (2d Cir. 1998).
- Schmidt v. Merchants Despatch Transportation Co., 270 N.Y. 287 (1936).
- Tokyo Boeki (U.S.A.), Inc. v. S.S. Navarino, 324 F. Supp. 361 (S.D.N.Y. 1971).
- TradeComet.com LLC v. Google, Inc., 435 F. App'x 31 (2d Cir. 2011).
- Trina Solar US, Inc. v. Jasmin Solar Pty Ltd., 954 F.3d 567 (2d Cir. 2020).
- Valle v. ATM National, LLC, 2015 WL 413449 (S.D.N.Y. 2015).
- Wortham v. Total Transportation Corp., No. 22-CV-5513, 2024 WL 1491873 (E.D.N.Y. Apr. 5, 2024).

Rules and Statutes
- Fed. R. Civ. P. 15(a)(2).
- Fed. R. Civ. P. 16(b).
- 9 U.S.C. § 1 et seq. (Federal Arbitration Act).
- N.Y. C.P.L.R. § 214-c.

3

<u>INTRODUCTION</u>

Defendant Bath & Body Works, LLC ("BBW") asks this Court to permit it to amend its Answer — months into litigation, after extensive discovery exchanges, including the depositions of both defendants — to add a purported arbitration defense based on a loyalty program enrollment that occurred more than one year after Plaintiff Renita Francois purchased the defective candle that caused her severe burn injuries. BBW's motion should be denied for three independent reasons: first, futility, because no valid arbitration agreement was formed as to pre-existing claims and any such retroactive agreement would be unconscionable and unenforceable under New York law; second, undue delay and prejudice, because BBW had all relevant information from the outset of litigation yet inexplicably waited months to assert this defense, causing substantial prejudice to Plaintiffs; and third, waiver, because BBW's extensive participation in litigation — including its own affirmative demand for a jury trial — constitutes conduct inconsistent with any purported right to arbitration.

The facts are not in dispute. Plaintiff purchased the "Sweater Weather" candle online on December 3, 2021. More than a year later, on December 11, 2022, she allegedly enrolled in BBW's loyalty rewards program during an in-store visit. The candle subsequently exploded in January 2023 and caused Plaintiff serious burn injuries. BBW now contends that by enrolling in a loyalty program over a year after purchasing the subject candle, Plaintiff somehow agreed to arbitrate claims arising from a product she bought before the loyalty relationship ever existed and before any injury ever occurred.

This strained argument fails as a matter of both law and equity. Rule 15's liberal amendment standard does not require courts to permit futile amendments that could never survive a motion to compel arbitration. Moreover, BBW's inexcusable delay in asserting this defense — despite having access to all relevant information from day one in its own databases — demonstrates bad faith forum manipulation and threatens severe prejudice to Plaintiffs by bifurcating this action and depriving them of their chosen forum for claims against both BBW and co-defendant Premier Candle Corporation.

<u>PRELIMINARY STATEMENT</u>

The timeline of events in this case conclusively demonstrates both the futility and the impropriety of BBW's proposed amendment. On December 3, 2021, Plaintiff purchased the subject "Sweater Weather" candle online through BBW's website under Order Number

4

00474125424434. The order confirmation for that transaction contains no reference whatsoever to arbitration, any loyalty program, or any terms and conditions governing future disputes. Over thirteen months later, on December 11, 2022, Plaintiff allegedly enrolled in BBW's My Bath & Body Works Loyalty Rewards Program at a retail store. In January 2023, the candle exploded and injured Plaintiff. Plaintiffs filed this action on May 2, 2025. On October 29, 2025, Plaintiffs served the First Amended Complaint, which expressly alleged that the subject candle was purchased on December 3, 2021. On November 11, 2025 — just thirteen days after receiving the pleading that stated the purchase date — BBW filed its Answer asserting eighteen affirmative defenses, demanding a jury trial on all issues, and saying nothing whatsoever about arbitration. The parties then engaged in written discovery exchanges through February 2026, during which BBW never raised arbitration, never sought a stay, and never suggested this Court lacked jurisdiction over any claim. Only on February 19, 2026 — more than three months after its Answer and four months after receiving the First Amended Complaint — did BBW file the instant motion claiming it had "recently discovered" a loyalty account connection through records contained in its own internal database.

BBW's explanation for this delay rings hollow. Plaintiffs' purchase history, loyalty account information, and the date of the subject purchase have been known to BBW since the inception of this case. BBW admits in its motion that it obtained Plaintiff's purchase information and loyalty account records through its own internal systems — systems to which it has had access throughout this litigation. Any competent investigation would have immediately cross-referenced the purchase date alleged in the First Amended Complaint with Plaintiff's loyalty account records — an inquiry that would take minutes, not months, using BBW's own systems. The only reasonable inference from this timeline is that BBW deliberately withheld this defense while monitoring the development of the litigation, then selectively deployed it as a strategic maneuver after observing Plaintiffs' case during discovery. That is precisely the kind of bad-faith gamesmanship that Rule 15 and the doctrine of waiver are designed to prevent.

As established by controlling authority in this district, corporate defendants are presumed to have knowledge of their own internal records and customer relationships and cannot excuse procedural delays by claiming ignorance of information within their own possession and control. Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc., No. 14-CV-7483, 2018 WL 5045760, at

5

*10 (E.D.N.Y. Oct. 17, 2018). BBW's assertion that it only "recently discovered" what sat in its own database from day one is legally insufficient and factually implausible.

STATEMENT OF FACTS

I.   The December 3, 2021, Online Purchase of the Subject Candle.

On December 3, 2021, Plaintiff Renita Francois purchased a "Sweater Weather" 3-wick candle from Bath & Body Works through BBW's website. The order, bearing number 00474125424434, also included eight other candles for a total purchase price of $128.98, charged to Plaintiff's MasterCard and shipped to her home at 41 Comber Street, Valley Stream, New York 11580. The order confirmation email — which constitutes the complete written record of that transaction — specifies the product ordered, the quantity, the price, the payment method, the shipping method, and the estimated delivery date.

The order confirmation email is notably and entirely silent as to any arbitration agreement, any mandatory dispute resolution terms, any loyalty program enrollment, any rewards account, and any terms and conditions that might govern future disputes between the parties. At the moment the December 3, 2021, transaction was completed, Plaintiff had no loyalty account with BBW, had enrolled in no rewards program, and had entered into no agreement to arbitrate disputes of any kind.

II.  The Alleged December 11, 2022, In-Store Loyalty Program Enrollment.

According to BBW, on December 11, 2022 — over thirteen months after the subject candle purchase — Plaintiff enrolled in the My Bath & Body Works Loyalty Rewards Program during an in-store transaction. BBW represents that the enrollment required interaction with a touchscreen point-of-sale device and affirmative clicking of "Agree" to the program's terms and conditions. The screenshot of that sign-up screen, submitted as Exhibit C to BBW's motion, shows a generic POS interface with a checkbox reading "Agree to Rewards terms and to receive emails," a small "Terms" link, and an "Agree" button. The screen contains no mention of arbitration, no mention of jury trial waiver, and no mention of any retroactive application of program terms to past purchases or past injury claims.

The full Terms and Conditions of the Rewards Program, submitted as Exhibit D to BBW's motion, run to fifteen pages of dense single-spaced text. The arbitration clause appears in Section 17, beginning on page eight of that document. Even the all-caps warning on the document's first page — which states that "THESE TERMS REQUIRE YOU TO ARBITRATE ANY DISPUTES YOU HAVE WITH US AND YOU WAIVE THE ABILITY TO BRING CLAIMS AGAINST

6

US IN COURT" — contains no statement that this obligation applies retroactively to purchases made before enrollment, nor any indication that it would sweep in personal injury tort claims arising from products already owned by the consumer.

Critically, Section 3 of the Loyalty Terms expressly provides that points are not earned on purchases made more than seven days prior to the enrollment date. BBW has thus drawn a deliberate temporal boundary for purposes of the rewards program itself — the December 3, 2021, purchase fell entirely outside the scope of the loyalty program for earning purposes. **BBW cannot invoke the program's retroactive reach for arbitration purposes while simultaneously excluding the same purchase from the program's benefits structure**.

III. Procedural History of This Litigation.

Plaintiffs filed this product liability action on May 2, 2025, asserting claims for strict liability, negligence, and loss of consortium against BBW and Premier Candle Corporation, the Canadian manufacturer of the subject candle. On October 29, 2025, Plaintiffs served the First Amended Complaint, which provided extensive factual detail about the December 3, 2021, purchase. On November 11, 2025, BBW filed its Answer asserting eighteen affirmative defenses — but no arbitration defense whatsoever — and simultaneously demanding a jury trial on all issues. Between November 2025 and February 2026, the parties engaged in initial written discovery. BBW never sought a stay of proceedings pending arbitration, never moved to compel arbitration, and never raised the existence of an arbitration agreement in any communication with Plaintiffs' counsel. On February 19, 2026, BBW filed the instant motion.

This temporal disconnect is fatal to BBW's formation argument. Under New York law and Second Circuit precedent, courts require a clear temporal connection between when contractual terms are presented and when the transactions occur that they purport to govern. Carter v. Ralph Lauren Corp., 683 F. Supp. 3d 400, 409-10 (S.D.N.Y. 2023). The thirteen-month gap between purchase and enrollment, combined with BBW's own terms excluding the purchase from loyalty benefits, precludes formation of any arbitration agreement covering the pre-existing transaction.

ARGUMENT

Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend "shall be freely given when justice so requires," Foman v. Davis, 371 U.S. 178, 182 (1962) (in the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the

7

leave sought should, as the rules require, be freely given); see also <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008). Each of these countervailing grounds is independently satisfied here.

I.   Leave to Amend Should Be Denied Because Amendment Would Be Futile.

An amendment is futile if the proposed claim could not withstand a motion to dismiss for failure to state a claim. <u>Lucente v. IBM Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002). BBW's proposed arbitration defense is fatally defective on three independent grounds: no valid agreement to arbitrate was ever formed with respect to the pre-existing 2021 purchase and subsequent injury claims; any purported retroactive arbitration clause is unconscionable and unenforceable under New York law; and the temporal scope language of the Loyalty Terms is legally insufficient to encompass personal injury tort claims arising from transactions that pre-date the loyalty relationship.

1.   No Valid Arbitration Agreement Was Formed as to the Pre-Existing December 2021 Purchase and Subsequent Injury.

The Supreme Court has made clear that the first task of any court asked to compel arbitration is to determine whether the parties agreed to arbitrate the dispute. <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985). A party simply "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986).

The threshold question of whether the parties agreed to arbitrate a particular dispute is determined by a court under ordinary state contract law principles, unless the parties clearly and unmistakably delegated that gateway question to an arbitrator. <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995). Here, no such delegation applies: the Loyalty Terms contain no delegation provision expressly assigning threshold arbitrability questions to an arbitrator. Moreover, courts retain inherent authority to decide litigation-conduct waiver issues given their peculiar expertise in managing their own dockets.

A.   The Online Purchase Predated Loyalty Enrollment by Over One Year — *Conditions Precedent to Formation Were Never Satisfied*.

The December 3, 2021, online purchase was a completed, discrete transaction with its own written record. That record — the order confirmation — sets out the parties' complete agreement for that transaction: product, quantity, price, shipping terms, payment method, and delivery date. It is entirely silent as to arbitration. When Plaintiff completed that purchase, the rights and obligations of the parties with respect to it were fixed. Plaintiff had no loyalty account, had enrolled

8

in no rewards program, and had agreed to no arbitration provision. A subsequent loyalty enrollment over thirteen months later cannot retroactively alter the terms of a completed sale or impose arbitration obligations on claims arising from that sale.

Under Second Circuit precedent, when conditions precedent to contract formation fails, no contract arises and arbitration clauses cannot survive because if the contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist. Adams v. Suozzi, 433 F.3d 220, 229 (2d Cir. 2005). Here, BBW's loyalty program terms created conditions precedent to formation of any arbitration agreement covering pre-existing claims by requiring specific notice and acceptance procedures for retroactive application of terms. The loyalty program enrollment process on December 11, 2022, over thirteen months after the December 3, 2021, purchase, failed to satisfy the conditions necessary for formation of an arbitration agreement covering the earlier transaction.

BBW cannot demonstrate that Plaintiff received adequate notice that enrolling in a rewards program would retroactively waive her constitutional jury trial rights for personal injury claims arising from a completed purchase, nor that she manifested clear assent to such retroactive application. The temporal disconnects between the original purchase transaction and the subsequent loyalty enrollment, combined with the lack of clear signaling regarding retroactive arbitration obligations, means the conditions precedent for forming an arbitration agreement covering pre-existing claims were never met.

*B.* No Meeting of the Minds on Retroactive Application.

Under New York law, mutual assent is the bedrock of contract formation. Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp., 93 N.Y.2d 584, 589 (1999). A reasonable consumer in Plaintiff's position, enrolling in a points-based rewards program to earn discounts on future candle purchases, would understand that action as agreement to the mechanics of the loyalty program — how points are earned, how rewards are redeemed, when they expire. That consumer would have no reason to understand, and no basis for understanding, that by enrolling she was simultaneously waiving her constitutional right to a jury trial for personal injury claims arising from a product she had purchased before the loyalty relationship ever began and before any injury had yet occurred.

This conclusion is strongly supported by National Federation of the Blind v. Container Store, Inc., 904 F.3d 70 (1st Cir. 2018), in which the court addressed facts functionally identical

9

to those presented here. Customers had signed up for the Container Store's loyalty program on in-store touchscreen devices, and the store sought to compel arbitration of ADA claims based on an arbitration clause embedded in the loyalty program's terms. The court refused enforcement, holding that no valid agreement to arbitrate had been formed because the customers received insufficient notice that they were waiving their right to pursue claims in court merely by enrolling in a rewards program. The court emphasized that the critical inquiry is whether the consumer received reasonably conspicuous notice of the arbitration provision and its meaning. Id. at 83-85. BBW's POS enrollment screen — which says only "Agree to Rewards terms and to receive emails" and provides a small "Terms" link — fails this standard entirely.

In Carter v. Ralph Lauren Corp., 683 F. Supp. 3d 400, 409-11 (S.D.N.Y. 2023), the court denied a motion to compel arbitration where the retailer sent promotional text messages containing a hyperlink to updated loyalty program terms — including an arbitration clause — but the messages did not clearly signal to the consumer that continuing her program enrollment would constitute agreement to those terms. The court held that no valid agreement to arbitrate was formed because the consumer received insufficient notice that she was agreeing to anything beyond a promotional discount offer, particularly given the nearly three-year gap between her original enrollment and the attempted modification. Id. at 410-11. Carter thus establishes that a retailer's attempt to bind a consumer to arbitration through loyalty program communications fails where the notice lacks the clarity necessary to put a reasonable consumer on inquiry notice that she is waiving her right to a jury trial.

BBW may rely on Macioce v. Hisense USA Corp., Slip Copy (S.D.N.Y. 2025), in which a district court enforced loyalty program terms that explicitly covered disputes arising from the purchase of products sold or distributed by the retailer. Macioce is readily distinguishable. In that case, the court found that the retailer had separately emailed loyalty account holders specifically highlighting the arbitration requirement, and the consumer could not credibly claim lack of notice of the arbitration provision. Here, BBW has made no showing that it separately notified Plaintiff of any arbitration requirement, that the POS enrollment screen provided any conspicuous notice of the arbitration clause, or that Plaintiff received any communication specifically advising her that enrollment would retroactively affect claims from a purchase made thirteen months earlier.

10

Moreover, BBW's own Loyalty Terms exclude the December 2021 purchase from the loyalty program for points purposes under the seven-day rule, undercutting any claim that the program and the pre-enrollment purchase were meaningfully connected.

BBW may also cite <u>Valle v. ATM Nat., LLC</u>, 2015 WL 413449 (S.D.N.Y. 2015), <u>Dean Witter Reynolds Inc. v. Prouse</u>, 831 F. Supp. 328 (S.D.N.Y. 1993), and <u>TradeComet.com LLC v. Google, Inc.</u>, 435 F. App'x 31 (2d Cir. 2011), for the general proposition that arbitration clauses without an express limitation to future disputes may be applied to preexisting claims. These cases are inapposite. Each involved an ongoing relationship — a continuing bank account, an ongoing brokerage agreement, or an existing services relationship — where the arbitration clause was added through modification of an existing bilateral agreement. They do not hold that a customer who enrolled in a wholly separate loyalty program years after a one-time retail purchase can be deemed to have retroactively modified the terms of that prior sale or agreed to arbitrate personal injury tort claims arising from products purchased before the loyalty relationship existed. <u>Valle</u> is particularly distinguishable: the bank gave customers written notice of the new arbitration provision, specifically highlighted it in a cover letter, and gave customers a 45-day opt-out right — none of which BBW has provided here.

BBW may also invoke <u>Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.</u>, 455 F. Supp. 211 (S.D.N.Y. 1978), for the proposition that a broadly worded arbitration clause may reach disputes concerning preexisting transactions. <u>Pollux Marine</u> is wholly inapposite. That case involved a commercial maritime charter party negotiated between two sophisticated commercial entities — a ship owner and a commodity trading corporation — in a specialized commercial context with experienced brokers. It does not hold, and cannot be read to hold, that a consumer who enrolls in a retail candle rewards program thereby agrees to arbitrate personal injury tort claims arising from products purchased over a year before enrollment, without any notice that the arbitration clause would reach back to extinguish pre-existing claims.

*C.* Inadequate Consideration for Retroactive Modification.

Any attempt to retroactively apply the loyalty program's arbitration clause to Plaintiff's December 2021 purchase fails for lack of adequate consideration under New York law. Contract modifications require the same elements as original formation: mutual assent, consideration, and intent to be bound. <u>Beacon Terminal Corp. v. Chemprene, Inc.</u>, 75 A.D.2d 350 (2d Dep't 1980) (contract modification requires consideration and mutual assent, while a signed written

11

modification may substitute for consideration under N.Y. Gen. Oblig. Law § 5-1103, no such signed writing modifying the terms of the December 2021 purchase transaction exists here).

While continued service provision after notice of changes can constitute valid consideration for prospective modifications, BBW provided no new consideration specifically for the retroactive waiver of jury trial rights regarding the already-completed December 2021 purchase transaction. The loyalty program benefits that Plaintiff received were consideration for her prospective participation in the rewards program, not for surrendering constitutional rights related to a transaction that occurred over thirteen months earlier.

BBW cannot demonstrate that Plaintiff received any additional benefit, service, or consideration in exchange for the purported retroactive arbitration obligation beyond what she was already entitled to receive from her completed purchase. The consideration analysis is further undermined by BBW's own loyalty program terms, which exclude the December 2021 purchase from earning loyalty points under the program's seven-day enrollment rule, eliminating any claim that loyalty benefits served as consideration for arbitration obligations related to that specific transaction.

Under Second Circuit precedent, modifications must be based on actual agreement between parties, and acceptance of payment or continued performance must be unambiguously related to the proposed modification terms. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 782 (2d Cir. 2003). Conduct entirely consistent with pre-existing contractual obligations cannot constitute acceptance of material alterations to the agreement. Here, Plaintiff's enrollment in a forward-looking loyalty rewards program is entirely consistent with her pre-existing status as a BBW customer and cannot constitute acceptance of retroactive arbitration terms affecting past purchases.

Without adequate consideration flowing specifically to support the retroactive arbitration obligation, no valid modification of Plaintiff's rights regarding the pre-existing purchase can be established.

2. The Purported Retroactive Arbitration Clause Is Unenforceable Under New York Law.
Even if some form of agreement was reached in December 2022 — which Plaintiffs contest — any attempt to apply it retroactively to claims arising from a December 2021 purchase would be unenforceable under New York law as unconscionable, contrary to public policy, and illusory.

12

New York law requires courts to assess both the procedural and substantive dimensions of unconscionability. Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10-11 (1988). The procedural prong considers the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power. The loyalty program terms were presented on a take-it-or-leave-it basis via a store tablet, with no opportunity for negotiation of any kind, and the gross disparity in bargaining power between a multi-billion-dollar retail corporation and an individual consumer enrolling in a candle rewards program could hardly be starker.

BBW may argue that under New York law, a standard adhesion contract is generally insufficient to render terms unconscionable when the party had the ability to take its business elsewhere. See Pilon v. Discovery Commc'ns, LLC, 769 F. Supp. 3d 273 (S.D.N.Y. 2025). But the procedural unconscionability argument here is far stronger than a mere standard adhesion case: Plaintiff could not meaningfully review fifteen pages of fine print on a store tablet at a checkout counter; the arbitration provision began on page eight with no conspicuous disclosure at the point of enrollment; and no opt-out mechanism was provided or explained to her. The combination of format, setting, and lack of any targeted disclosure of the retroactive arbitration provision goes well beyond ordinary adhesion into procedural overreach.

On the substantive side, the terms are deeply one-sided. Most critically, Section 1 of the Loyalty Terms grants BBW the unilateral right to "CHANGE ANY AND ALL ASPECTS OF THE PROGRAM, SPECIAL PROMOTIONS, AND THESE TERMS, OR OTHERWISE END THE PROGRAM" at any time. An arbitration agreement supported by a unilateral modification clause of this scope presents serious illusory contract concerns, because BBW can revise or eliminate the arbitration provision whenever it wishes while Plaintiff remains permanently bound. Additionally, no new consideration was provided specifically for the retroactive waiver of jury rights as to already-completed purchases — the loyalty program offered only prospective benefits in exchange for enrollment, providing no consideration for the retroactive extinguishment of Plaintiff's vested right to pursue judicial remedies for a transaction completed before the loyalty relationship existed.

The Loyalty Terms also impose a shortened two-year limitations period that impairs Plaintiff's rights under New York's three-year personal injury statute, and the complex mass-

13

arbitration bellwether process in Section 19 would render these claims economically unviable. Taken together, these provisions demonstrate a systematic effort to insulate BBW from accountability, not a fair exchange of rights and obligations.

The public policy implications of BBW's theory are equally serious. If accepted, corporations could sell products with no arbitration terms, later entice consumers into loyalty programs with retroactive arbitration fine print, and then invoke those programs when injuries occur — systematically stripping injured consumers of court access for claims that pre-date the loyalty relationship. New York's strong public interest in ensuring consumer access to courts and in holding defective product manufacturers accountable demands that no such result be permitted.

3.  The Temporal Scope Language Is Insufficient to Encompass Pre-Existing Tort Claims. BBW's entire retroactivity argument rests on Section 16 of the Loyalty Terms, which defines arbitrable disputes to include "any claim against Bath & Body Works regarding any transactions between you and Bath & Body Works, whether heretofore or hereafter arising." This language is insufficient to carry the weight BBW places on it for three reasons.

First, the phrase is ambiguous at best. The word "arising" is temporally indeterminate — it could refer to the date of the underlying transaction, the date of the injury, the date the cause of action accrued, or the date the lawsuit was filed. Under New York law, ambiguities in contractual waivers of jury trial rights are strictly construed against the drafter and in favor of the party's access to the courts. BBW, as drafter, bears the consequence of its own ambiguous draftsmanship. If it intended the arbitration clause to clearly reach back and cover personal injury tort claims from purchases made before enrollment, it had every opportunity to say so plainly. It did not.

Second, and more fundamentally, the language speaks to disputes regarding "transactions" — not to tort claims arising from those transactions. Plaintiff's claims are tort claims — strict products liability, negligence, and loss of consortium — that arose when the candle exploded in January 2023. Under New York law, a personal injury tort cause of action does not accrue at the time of the underlying transaction; it accrues when the injury occurs. Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993); Schmidt v. Merchants Desp. Transp. Co., 270 N.Y. 287, 300 (1936) (superseded on other grounds by N.Y. C.P.L.R. 214-c in latent toxic exposure contexts, as stated in Caronia v. Philip Morris USA, Inc., 22 N.Y.3d 439, 448 (2013); the core accrual rule — that a tort cause of action accrues upon injury, not upon the underlying transaction — remains fully

14

operative here). The event giving rise to Plaintiff's claims is not the purchase of the candle in 2021 — it is the candle's explosion in 2023.

Third, the FAA does not override this analysis. The FAA requires courts to enforce arbitration agreements according to their terms, but it presupposes the existence of a valid agreement. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). The threshold question of whether the parties agreed to arbitrate a particular dispute is determined by a court under ordinary state contract law principles, unless the parties have clearly and unmistakably delegated that question to an arbitrator — which they have not done here because no valid agreement was formed at all. First Options, 514 U.S. at 944. Because no valid agreement to arbitrate Plaintiff's claims was formed under New York law, the FAA has nothing to enforce.

## II. Leave to Amend Should Be Denied Due to Undue Delay and Prejudice to Plaintiffs.

Even if the proposed arbitration defense were not futile — and it plainly is — leave to amend should still be denied because BBW's delay was unreasonable and unjustified, and granting leave would cause substantial and undue prejudice to Plaintiffs.

### 1. BBW Must Satisfy Rule 16(b)'s Good Cause Standard.

In the ordinary course, when a party moves to amend the pleadings after the deadline to do so in the court's scheduling order has passed, that party must satisfy the good cause requirement of Fed.R.Civ.P. 16(b) — despite the lenient standard for amendment under Fed.R.Civ.P. 15(a) — before leave to amend may be granted. Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000); Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 102 (S.D.N.Y. 2003).

The reason for this is simple: scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed. Parker, 204 F.3d at 339-40. If Rule 15(a) is considered without regard to Rule 16(b), scheduling orders could be rendered meaningless, and Rule 16(b) would be rendered nugatory. Id.

A finding of good cause depends on the diligence of the moving party. Id. at 341. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence. Robinson v. The Town of Colonie, 1993 WL 191166, 1993 U.S. Dist. Lexis 7464 (N.D.N.Y. 1993). "If that party was not diligent, the inquiry should end." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992); Rent-A-Center, 215 F.R.D. at 103.

15

In Rent-A-Center, the Southern District denied leave to amend where defendants sought to expand their counterclaim four months after the scheduling order's amendment deadline had passed. Id. The court found that defendants' failure to comply with the scheduling order resulted from a lack of diligence, because "the substance of the defendants' "new" claim was known when the defendants filed their original amended answer." Id. The court emphasized that defendants offered "no explanation for why they failed to include the subject matter of the proposed amendment in their earlier amendment [pleading]" or "why the deadline set forth by the Court's Scheduling Order could not be reasonably met." Id.

Similarly, in Burns v. Imagine Films Entertainment, Inc., 165 F.R.D. 381, 384 (W.D.N.Y. 1996), the Western District found that defendants' "oversight within defense counsels' law office" regarding possession of relevant agreements, or an earlier determination that agreements were irrelevant, constituted insufficient reasons to excuse delay in asserting arbitration defenses. The court emphasized that "defendants had possession of the relevant agreements from before they filed their original answer," making any subsequent delay inexcusable. Id.

Here, BBW's failure to assert its arbitration defense when filing its November 2025 Answer — despite having had the relevant information in its own database since May 2025 when this action was filed — demonstrates the same lack of diligence that warranted denial in Rent-A-Center and Burns.

2. BBW's Delay Was Unreasonable and Unjustified.

BBW's purported justification for its delay — that it only "recently discovered" the loyalty account connection — is not credible. The information BBW claims to have discovered came from BBW's own internal customer database, to which BBW has had unrestricted access throughout this litigation. The purchase date was disclosed on the face of the First Amended Complaint in October 2025. Any competent defense counsel, upon learning of that purchase date, would immediately query BBW's own records to determine whether the plaintiff had a loyalty account, when it was created, and whether the loyalty terms contained an arbitration clause.

As the Eastern District has held, corporate defendants are presumed to have knowledge of agreements to which they are parties, including specific clauses within those agreements, and arguments that delay was caused by "recently identifying" information during discovery are "meritless" where defendants have access to and knowledge of their own documents and are on

16

notice of their contractual obligations. Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc., No. 14-CV-7483, 2018 WL 5045760, at *10 (E.D.N.Y. Oct. 17, 2018).

The law does not permit corporate defendants to claim excusable delay based on their failure to conduct elementary searches of their own databases, especially when the relevant customer information was readily accessible through standard business records that BBW maintains in the ordinary course of business. BBW's attempt to characterize this as a recent discovery rather than a failure of reasonable investigation demonstrates either inadequate legal preparation or a deliberate litigation strategy inconsistent with good faith pleading requirements.

The only inference consistent with the facts is that BBW either neglected this elementary investigation or deliberately withheld this defense while evaluating the strength of Plaintiff's case during the initial months of discovery. Either explanation reflects a failure of diligence — and the latter reflects the kind of bad faith and dilatory motive that Foman identifies as a proper basis for denial of leave to amend. *See* 371 U.S. at 182.

Moreover, BBW's belated assertion of arbitration rights constitutes an improper attempt to avoid potential litigation sanctions and adverse rulings by seeking refuge in an alternative forum after extensive judicial proceedings. Courts have recognized that allowing parties to resort to arbitration after substantial litigation participation would defeat arbitration's purpose of resolving disputes with dispatch and minimum expense, and would effectively permit parties sensing adverse court decisions to seek a second chance in another forum. Burns, 165 F.R.D. at 385-86.

BBW's motion timing, filed in February 2026 after months of discovery and litigation activity, suggests a strategic decision to evaluate case strength in federal court before asserting arbitration rights as a litigation escape mechanism. The law does not permit defendants to use arbitration clauses as insurance policies against unfavorable litigation developments, and BBW cannot be allowed to secure the benefits of judicial discovery and motion practice while simultaneously claiming entitlement to arbitral resolution when litigation appears disadvantageous.

BBW may invoke Tokyo Boeki (U.S.A.), Inc. v. S.S. Navarino, 324 F. Supp. 361 (S.D.N.Y. 1971), for the proposition that a party may add an arbitration defense upon genuinely discovering a relevant document during litigation. Tokyo Boeki is inapposite. In that case, the court accepted defense counsel's representation that it had no knowledge of a fixture note — a document generated in a separate shipping transaction — until the document surfaced during a

17

deposition. Unlike <u>Tokyo Boeki</u>, where the court credited a specific, sworn showing of actual ignorance of an external transaction document, here BBW has made no such showing. The information BBW claims to have "recently discovered" was in BBW's own proprietary customer database — a system BBW designed, maintains, and has controlled from the inception of this case. <u>Tokyo Boeki</u> excuses genuine ignorance of an external document; it does not excuse a corporate defendant's failure to query its own internal records.

BBW may also contend, citing <u>Desarrolladora La Ribera, S. De R.L. De C.V. v. Anderson</u>, No. 1:24-cv-00067-LAK-BCM (S.D.N.Y. 2024), that a party cannot waive a right it was unaware of and that prompt action upon discovery is sufficient. But where, as here, the "discovery" resulted from a party's own failure to examine its own records — records it has controlled throughout the litigation — courts have found that such ignorance is tantamount to bad faith. BBW cannot convert its own investigative negligence or litigation strategy into an excuse for delay.

3.  Plaintiffs Will Suffer Undue Prejudice.

The prejudice to Plaintiffs from granting leave at this stage would be substantial and multidimensional. Discovery is already underway, and Plaintiffs have expended significant time and resources preparing this case for litigation in this Court. More critically, granting leave would immediately threaten the integrity of the entire litigation through the prospect of bifurcation.

Co-defendant Premier Candle Corporation, the Canadian manufacturer of the allegedly defective candle, is not a party to any arbitration agreement with Plaintiff and cannot be compelled to arbitrate these claims. Premier is not a signatory to the loyalty program terms, has no relationship whatsoever with BBW's rewards program, and possesses an independent right to litigate Plaintiff's claims in this Court.

If this Court were inclined to grant BBW's motion and BBW were subsequently to move to compel arbitration, the result would be catastrophic: Plaintiffs would be forced to simultaneously prosecute a personal injury action against Premier in federal court while pursuing arbitration against BBW in a private forum. This would create duplicative proceedings on identical facts — the same product, the same injury, the same causation evidence, the same damages — adjudicated in two separate forums with no coordination mechanism.

The prejudice from such bifurcation is manifest. First, Plaintiffs face the risk of inconsistent factual findings, including the possibility that the arbitrator attributes fault to Premier while this Court attributes fault to BBW, leaving Plaintiffs unable to recover from either defendant. Second,

18

joint-and-several liability under New York law would be rendered meaningless if defendants cannot be held accountable in a single proceeding. Third, BBW's own Answer asserts comparative fault defenses against Premier, yet BBW seeks a procedural framework that would make it impossible to litigate those comparative fault issues in a unified proceeding. Fourth, Premier would be deprived of its right to crossclaim against BBW and seek contribution or indemnification in the same forum where Plaintiffs' claims against Premier are being adjudicated.

Courts in this Circuit have consistently recognized that bifurcation between arbitration and litigation constitutes substantial prejudice warranting denial of arbitration motions. See Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 126-27 (2d Cir. 2010) (stay of non-signatory claims pending arbitration requires showing that claims are "'inextricably intertwined' or... 'inherently inseparable'" from arbitrable claims). BBW cannot meet this standard. Even if this Court were to consider staying Plaintiffs' claims against Premier pending the outcome of arbitration with BBW — which Plaintiffs strenuously oppose — such a stay would impose additional prejudice by delaying Plaintiffs' access to justice against a non-signatory defendant who has made no election to arbitrate and cannot be forced into that forum.

The bifurcation problem is compounded by the status of Plaintiff McEvans Francois. McEvans never purchased any product from BBW, never enrolled in any loyalty program, never clicked 'agree' on any touchscreen device, and is not a party to any purported arbitration agreement. His loss of consortium claim is derivative of his wife's injuries but constitutes an independent cause of action belonging to him personally. Under New York law, a spouse's loss of consortium claim 'belongs to the spouse, not to the injured party,' and cannot be subject to an arbitration agreement to which the spouse is not a party. New Land Interiors Corp. v. Kinsale Ins. Co., No. 25-CV-732 (DEH) (RWL), 2025 LX 529085, at *5 (S.D.N.Y. Dec. 12, 2025) ("The 'guiding principle' of the theory 'is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause.'" Trina Solar, 954 F.3d at 572 (quoting Belzberg v. Verus Investments Holdings Inc., 21 N.Y.3d 626, 633, 999 N.E.2d 1130, 977 N.Y.S.2d 685 (N.Y. 2013)). "Indirect benefits are advantages a non-signatory gain from the broader business relationship or downstream effects of a contract, rather than rights that the contract itself confers on that non-signatory. Id. Because they are incidental to, or derivative of, the contracting parties' dealings, such indirect benefits do not support compelling arbitration under estoppel principles. See, e.g., Id. at 572-73."); Ross v. Am. Express Co., 478 F.3d 96, 99 (2d Cir.

19

2007) (recognizing that arbitration agreements generally bind only signatories, and that while equitable estoppel may in limited circumstances permit enforcement by or against a non-signatory, no such circumstances exist here — McEvans Francois is not a party to any agreement with BBW, has no loyalty account, and derives no direct benefit traceable to the Loyalty Terms).

Even if this Court were to find — contrary to Plaintiffs' arguments above — that Renita Francois could somehow be compelled to arbitrate her direct injury claims, McEvans Francois's loss of consortium claim must remain in this Court. BBW has cited no authority, and none exists, permitting a court to compel arbitration of a non-signatory spouse's derivative loss of consortium claim based solely on an arbitration agreement signed by the injured party. The result would be further fragmentation: Renita's claims in arbitration, McEvans's claims in this Court against BBW, and both Plaintiffs' claims against Premier in this Court — three parallel proceedings arising from a single candle explosion. Such a result would be absurd, inefficient, and manifestly prejudicial.

This additional layer of bifurcation provides yet another independent ground for denying BBW's motion for leave to amend. Permitting BBW to assert an arbitration defense would inevitably lead to a motion to compel that cannot succeed as to McEvans, guaranteeing the very fragmentation and parallel proceedings that courts uniformly recognize as grounds for denying arbitration enforcement.

Plaintiffs will also suffer discovery advantage prejudice. Under Second Circuit and Eastern District precedent, proceeding with discovery constitutes prejudice because discovery procedures utilized in federal court are generally not available in arbitration. S&R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 84-85 (2d Cir. 1998) (see also parenthetical noting that Morgan v. Sundance abrogated S&R's separate prejudice requirement, but the principle that affirmative litigation conduct is inconsistent with the arbitration right remains sound).

Here, BBW engaged in written discovery exchanges through February 2026 without once raising arbitration, seeking a stay, or suggesting the court lacked jurisdiction over the claims. This discovery participation allowed BBW to secure benefits of pretrial discovery procedures that would not have been available in an arbitral forum, including the ability to conduct comprehensive fact-finding regarding Plaintiff's claims and defenses.

Beyond bifurcation and discovery prejudice, Plaintiffs chose this Court as their home forum for sound reasons: it offers full discovery rights, public adjudication of important product safety issues, and the constitutional right to a jury trial. Forcing them into private arbitration nine

20

months into litigation — based on a retroactive clause of doubtful validity that was never disclosed to them at the time of purchase — constitutes exactly the kind of substantial prejudice the Foman doctrine is designed to prevent. Burns v. Imagine Films Entm't, Inc., 165 F.R.D. 381, 388 (W.D.N.Y. 1996) (denying leave to add arbitration defense after extended litigation where defendants secured for themselves the benefits of pretrial discovery which are often unavailable in an arbitral forum).

III. BBW Has Waived Any Right to Assert Arbitration Through Its Litigation Conduct.

Even if a valid arbitration agreement existed — which it does not — BBW has waived any right to enforce it through its conduct in this litigation. Before the Supreme Court's decision in Morgan v. Sundance, Inc., 596 U.S. 411, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022), the Second Circuit considered three factors in deciding whether a party has waived its right to arbitration under the FAA: the time elapsed from when litigation was commenced until the request for arbitration; the amount of litigation to date, including motion practice and discovery; and proof of prejudice. Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156 (2d Cir. 2010).

In Morgan, the Supreme Court held that "the usual federal rule of waiver does not include a prejudice requirement," and that courts must focus instead on whether a party has "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." 596 U.S. at 419; see also Park v. Shinhan Bank Am., No. 22-CV-10331 (VSB), 2025 U.S. Dist. LEXIS 420739, at *18-19 (S.D.N.Y. Sept. 23, 2025). The Court emphasized that federal policy favoring arbitration does not justify the creation of arbitration-specific procedural rules — waiver of an arbitration right is governed by the same ordinary standards as waiver of any other contractual right. Morgan, 596 U.S. at 419.

Under Doyle v. UBS Fin. Servs., Inc., 144 F.4th 122 (2d Cir. 2025), the Second Circuit clarified the post-Morgan framework. To determine whether a party has acted inconsistently with the right to arbitrate, a court may consider all aspects of the moving party's conduct — including the time elapsed from when litigation was commenced until the request for arbitration and the amount of litigation to date, including motion practice and discovery — "as long as we do not do so through the lens of prejudice." Id. at 126, 130. As Louisiana Stadium (cited with approval in Doyle) instructs, "There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of

21

each particular case." 626 F.3d at 159 (That said, the key to a waiver analysis is prejudice') abrogated on other grounds by Morgan v. Sundance, Inc., 596 U.S. 411, 419 (2022)).

Applying those factors here, both the time elapsed and the nature of BBW's litigation activity demonstrate knowing and inconsistent conduct that constitutes waiver.

1. BBW's Jury Trial Demand Constitutes Waiver.

BBW's most egregious act of waiver is its affirmative demand for a jury trial. A party cannot demand a jury trial for itself while simultaneously seeking to deprive Plaintiff of her jury trial right. This conduct represents an unequivocal election of the judicial forum.

Under Second Circuit precedent, parties cannot avoid consequences of litigation conduct through late arbitration demands, particularly where they have affirmatively invoked judicial procedures. S&R Co. of Kingston, 159 F.3d at 83-84 (see also parenthetical noting that Morgan v. Sundance abrogated S&R's separate prejudice requirement, but the principle that affirmative litigation conduct is inconsistent with the arbitration right remains sound). The Western District has similarly held that defendants who repeatedly invoked and submitted to the [court's] jurisdiction through motions, discovery participation, and settlement conferences over an extended period waive arbitration rights. Burns, 165 F.R.D. at 388.

BBW's Answer explicitly demands "a trial by jury on all issues so triable" and requests that the Court "dismiss the Complaint with prejudice and award defendants their costs and attorneys' fees incurred herein, and such other and further relief as the Court deems just and proper." This affirmative invocation of the judicial forum, combined with BBW's failure to plead arbitration as an affirmative defense, demonstrates a clear election to proceed in federal court rather than arbitration.

Under the post-Morgan framework, BBW's jury trial demand is particularly probative of waiver because it represents an affirmative choice to invoke the very judicial procedures that arbitration is designed to replace. The inconsistency between demanding jury trial and later seeking arbitration cannot be reconciled and demonstrates BBW's knowing relinquishment of any arbitration right through conduct incompatible with arbitral resolution.

2. BBW's Conduct Demonstrates Knowing Relinquishment.

As to knowledge, the information needed to identify the loyalty account and evaluate the arbitration defense was sitting in BBW's own database from the moment it received the First Amended Complaint in October 2025. Corporate defendants are presumed to know the contents of their own records. Knowledge is conclusively established.

22

As to conduct inconsistent with that right, BBW filed an Answer asserting eighteen substantive defenses without any reference to arbitration. It engaged in written discovery over the following months without once raising arbitration, seeking a stay, or suggesting this Court lacked jurisdiction. And it affirmatively demanded a jury trial on all issues in that same Answer.

In the wake of Morgan, courts assess inconsistent conduct without imposing a prejudice requirement, focusing instead on whether the party knowingly relinquished the right to arbitrate by acting inconsistently with it. Morgan, 596 U.S. at 419. Brevard v. Credit Suisse, No. 23-cv-428 (LJL), 2024 U.S. Dist. LEXIS 2231, at *21-22 (S.D.N.Y. Jan. 3, 2024), recognizes that the time elapsed and extent of litigation activity remain highly probative indicia of waiver because they identify "affirmative conduct or . . . a failure to act that can manifest a clear intent to relinquish a contractual protection."

Having elected the judicial forum by demanding a jury trial, participating in discovery, and litigating the merits of Plaintiffs' claims for nine months, BBW has made its choice. It cannot now reverse course. PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997) (waiver analysis is fact-specific, applied to the totality of a party's conduct).

CONCLUSION

For the foregoing reasons, Defendant Bath & Body Works, LLC's motion for leave to amend its Answer to add an arbitration defense should be **DENIED** in its entirety.

The proposed amendment is futile: no valid arbitration agreement was formed for the December 3, 2021 purchase because conditions precedent to formation were never satisfied, there was no meeting of the minds on retroactive application, there was no adequate consideration for the retroactive modification, and the thirteen-month temporal disconnect precludes formation under controlling Second Circuit and district court authority. Any purported retroactive clause is unconscionable, illusory, and contrary to public policy under New York law. The temporal scope language does not unambiguously cover pre-existing personal injury tort claims.

The motion should also be denied for undue delay. Where a scheduling order amendment deadline has passed, BBW must satisfy Rule 16(b)'s good cause standard, which requires a showing of diligence BBW cannot make. BBW is presumed to know its own database records and cannot claim excusable ignorance of information in its possession from day one. BBW's conduct suggests strategic "wait-and-see" litigation and an improper attempt to avoid litigation consequences by seeking refuge in arbitration after evaluating its litigation position. Plaintiffs will

23

suffer substantial prejudice — particularly from the threatened bifurcation of proceedings between this Court and arbitration, with non-signatory co-defendant Premier left in federal court, as well as from BBW's obtaining discovery advantages unavailable in arbitration.

Moreover, even if this Court were inclined to permit BBW to assert an arbitration defense — which Plaintiffs submit would be clear error — the presence of non-signatory co-defendant Premier Candle Corporation AND non-signatory Plaintiff McEvans Francois, neither of whom can be compelled to arbitrate nor has elected to do so, provides independent and dispositive grounds for denying any subsequent motion to compel arbitration or stay these proceedings. McEvans never enrolled in any loyalty program, never agreed to any arbitration terms, and possesses an independent loss of consortium claim that belongs to him personally and cannot be subject to an arbitration agreement he never signed. The Court cannot and should not fragment this single-incident product liability action into three parallel proceedings that would undermine judicial efficiency, risk inconsistent outcomes, and deprive both Plaintiffs and Premier of their rights to unified adjudication of interrelated claims arising from the same defective product.

Finally, BBW has waived any arbitration right through nine months of litigation conduct, most critically its own demand for a jury trial, which is fundamentally inconsistent with arbitration and demonstrates an unequivocal election of the judicial forum. BBW's discovery participation and engagement with the merits without once preserving arbitration rights constitute knowing relinquishment under Morgan v. Sundance and Doyle v. UBS Fin. Servs., Inc.

Justice does not require — and affirmatively forbids — granting leave to amend under these circumstances. Plaintiffs respectfully request that this Court deny BBW's motion in its entirety and order that this case proceed to trial in this Court on all claims against all defendants.

Date: April 12, 2026
Brooklyn, New York

                                                                  Respectfully Submitted,

                                                          _____/s/Tyrone A. Blackburn, Esq._
                                                          Tyrone A. Blackburn, Esq.
                                                          T. A. Blackburn Law, PLLC
                                                          1242 E. 80th Street, 3rd Floor
                                                          Brooklyn, NY 11236-4160
                                                          P: 347-342-7432
                                                          E: tblackburn@tablackburnlaw.com
                                                          *Attorneys for Plaintiffs Renita Francois and McEvans Francois*

24

<u>CERTIFICATE OF SERVICE</u>

I, Tyrone A. Blackburn, an attorney duly admitted to practice before this Court, hereby certify under penalty of perjury that on April 12, 2026, I caused a true and correct copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendant Bath & Body Works, LLC's Motion for Leave to Amend Its Answer to Add an Arbitration Defense, together with all accompanying papers, to be served upon all counsel of record via the Court's Electronic Case Filing (ECF) system pursuant to Local Civil Rule 5.2 of the Eastern District of New York. Electronic transmission of the Notice of Electronic Filing constitutes service upon all parties whose counsel are registered ECF participants.

Dated: April 12, 2026
Brooklyn, New York

Respectfully Submitted,

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236-4160
P: 347-342-7432
E: tblackburn@tablackburnlaw.com
*Attorneys for Plaintiffs Renita Francois and McEvans Francois*

25