**T. A. BLACKBURN LAW, PLLC**
1242 E. 80th Street, 3rd Floor | Brooklyn, NY 11236-4160
Tel: (347) 342-7432 | tblackburn@tablackburnlaw.com

July 9, 2026

VIA ECF — EMERGENCY APPLICATION
Honorable Steven L. Tiscione, U.S.M.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East, Brooklyn, New York 11201

Re: Francois et al. v. Bath & Body Works, LLC et al.
Case No. 2:25-cv-03725 (GRB)(ST)

EMERGENCY MOTION FOR RECONSIDERATION OF ORDER (DKT. 48)

Dear Judge Tiscione:

Plaintiffs Renita Francois and McEvans Francois, through undersigned counsel, respectfully move on an emergency basis for immediate reconsideration of this Court's July 9, 2026, Order (Dkt. 48) pursuant to Local Civil Rule 6.3. Reconsideration is warranted to prevent manifest injustice. See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992); Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). There are two independent grounds for reconsideration, each sufficient standing alone: (1) the complete factual defense on the merits — Plaintiff's production was performed pursuant to a negotiated, written meet-and-confer agreement with Defendants' counsel that Defendants appear to have withheld from the Court's attention; and (2) counsel's internal calendaring error, which caused a non-appearance at a hearing that counsel had recorded as an opposition filing deadline, and for which Plaintiffs bear absolutely no responsibility.

Counsel takes sole and complete responsibility for the calendaring error described in Point III and respectfully implores the Court not to punish blameless clients for it. The emergency is real and irreversible: the fact discovery deadline is July 14, 2026 — five days from today. Unless the Order is reconsidered before that date, Plaintiffs will be permanently deprived of the ability to present their treating providers at trial through no fault of their own.

I.    The April 16, 2026, Meet-and-Confer Agreement — Memorialized in Writing by Defendants' Counsel — Defined Exactly How Production Would Be Made, and Plaintiffs Complied with It

Before the Court can evaluate whether a violation occurred, it must be told something Defendants appear to have omitted from their motion papers: the parties reached a comprehensive written meet-and-confer agreement governing the precise discovery at issue — including each of the four providers named in Defendants' motions — and Plaintiff produced records in conformity with that agreement.

On or about April 14, 2026, the parties held a meet-and-confer call. Defendant BBW's lead counsel, David S. Osterman, Esq. (Goldberg Segalla), memorialized the parties' agreement in a detailed April 16, 2026, email to undersigned counsel. The

agreement expressly covered the following providers (Exhibit A — April 16, 2026, Osterman Email):

- Nassau University Medical Center — HIPAA authorization to be sent directly to provider with copy to all counsel;
- Northwell Health / Long Island Jewish Valley Stream Medical Center — same;
- Dr. Achiamah Osei-Tutu (Osei-Tutu Dermatology) — same;
- Dr. Jennifer Balfour (primary care) — same, with HIV records excluded;
- Dr. Bijan Setareh-Shenas (dermatology consultant) — same; Osterman's email expressly acknowledged "Dr. Shenas is not likely to have any records beyond his short report previously produced"; and
- Jessica Mofield (therapist/LMHC) — a specifically negotiated two-step protocol: Plaintiff's counsel would obtain all records, review them, and produce a redacted set limited to treatment pertaining to the injuries in this case, with all records designated confidential.

This was the agreement Plaintiff understood to be operative throughout the ensuing months. The Court's April 17, 2026, Order (Dkt. 34) denied Defendants' first motion to compel as moot based on the representation that the parties had agreed to a production protocol — which is precisely this agreement. Plaintiff sent authorizations to the providers directly consistent with the agreement. Ms. Mofield transmitted a treatment summary and a signed HIPAA release directly to Cameron Kamer, Esq. (Wilson Elser) and David Osterman (Goldberg Segalla) on June 1, 2026 — eight days before the June 9 Court-ordered deadline.

Dr. Osei-Tutu's records, delayed only by the provider's vacation and medical mission work, were produced on June 30, 2026. Dr. Setareh-Shenas conducted a single one-visit consultation, and Defendants' own counsel acknowledged in the April 16 email that he was "not likely to have any records beyond his short report previously produced." Dr. Balfour remains on vacation; her records are forthcoming within thirty days.

Defendants' motion papers do not mention the April 16 agreement or the fact that Plaintiff's production was structured around it. That omission is material. A party seeking Rule 37 sanctions must present the Court with a complete and accurate account of the discovery history. The Court is respectfully asked to consider the full record, including the bilateral agreement under which Plaintiff was performing.

II.  The Governing Rule 37 Standard Requires Willfulness, Bad Faith, Or Culpable Fault — None of Which Exists Here — And Mandates Consideration of Less Drastic Remedies Before Preclusion

Under Fed. R. Civ. P. 37, district courts are authorized to enforce discovery orders by issuing "just orders," which may include prohibiting a disobedient party from introducing designated matters into evidence or dismissing the action. Fed. R. Civ. P. 37(b)(2)(A); Icon Int'l, Inc. v. Elevation Health LLC, 347 F.R.D. 274 (S.D.N.Y. 2024). When considering whether to impose sanctions under Rule 37, courts analyze four non-exhaustive factors: 1. the willfulness of the non-compliant party or the reason for noncompliance; 2. the efficacy of lesser sanctions; 3. the duration of the period of

noncompliance; and 4. whether the non-compliant party had been warned of the consequences of noncompliance. Icon Int'l, Inc. v. Elevation Health LLC, 347 F.R.D. 274 (S.D.N.Y. 2024); Davidson v. Dean, 204 F.R.D. 251 (S.D.N.Y. 2001); Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009); S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010).

Because of the harshness of preclusion, it is justified only in rare situations evincing culpable conduct by the party against whom the sanction is to be imposed. Ferring Pharms. Inc. v. Serenity Pharms., LLC, 331 F.R.D. 75 (S.D.N.Y. 2019). Before precluding relevant evidence, a court must inquire more fully into the actual difficulties caused by the violation and consider less drastic responses. Ferring Pharms. Inc. v. Serenity Pharms., LLC, 331 F.R.D. 75; Outley v. New York, 837 F.2d 587 (2d Cir. 1988). Preclusion is a "harsh remedy to be used only in extreme situations," upon a finding of willfulness, bad faith, or fault. Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990). Specifically, before ordering preclusion, courts weigh: 1. the party's explanation for the failure to comply; 2. the importance of the precluded evidence; 3. the prejudice suffered by the opposing party; and 4. the possibility of a continuance. Ferring Pharms., 331 F.R.D. at 75; Outley, 837 F.2d at 587.

All four factors weigh decisively in Plaintiffs' favor:
- Explanation for noncompliance: Production was made pursuant to the April 16 bilateral written meet-and-confer agreement; any remaining gap is caused by provider unavailability beyond Plaintiffs' control, not any willful refusal to comply. The status of each provider is addressed in full in Point IV below.
- Importance of the evidence: The precluded providers are Plaintiff's treating physicians documenting permanent injuries — lichen planus pigmentosus, frontal fibrosing alopecia, and systemic lupus — caused by Defendants' product. Preclusion effectively forfeits Plaintiff's entire damages case.
- Prejudice to Defendants: Three of four providers have already produced; no trial date has been set. No meaningful prejudice exists that a brief, final extension would not remedy.
- Possibility of continuance: A 30-day extension with automatic sanctions as to the sole outstanding provider is available, adequate, and proportionate. Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).

III.  Counsel's Internal Calendaring Error Caused the Non-Appearance; Plaintiffs are Entirely Blameless; and Counsel was Mid-Filing When the Order was Entered

The July 9, 2026, hearing was recorded in Plaintiff's counsel's office calendar as an opposition filing deadline — not as a court appearance. Due to this internal error, undersigned counsel did not appear at the 10:00 a.m. hearing. Counsel takes full, unequivocal, and sole responsibility for this error.

At the moment the Order was entered, undersigned counsel was actively preparing to upload Plaintiffs' opposition papers to ECF. The opposition letter was

finalized, the supporting exhibits were assembled, and the filing was imminent. It was at that precise moment that counsel was alerted to the entry of Dkt. 48. Counsel was not ignoring this litigation. Counsel was, at that exact moment, preparing to file with this Court.

Plaintiffs Renita Francois and McEvans Francois bear absolutely no fault. They are the injured parties in a products liability case involving permanent physical injuries caused by a defective Bath & Body Works candle. They cooperated throughout discovery and never expressed any intention of withholding records or abandoning their claims.

IV.    Status of Each Provider
   A. Ms. Jessica Mofield — Produced June 1, 2026; Signed HIPAA Release Transmitted to Defense Counsel Eight Days Before the June 9 Court-Ordered Deadline

On June 1, 2026, Ms. Mofield emailed Cameron Kamer, Esq, and David Osterman directly, and transmitted both a treatment summary and a signed HIPAA authorization for Renita Francois — eight days before the Court-ordered deadline and in conformity with the April 16 meet-and-confer agreement. Defendants acknowledged receipt in their own motion papers. With that signed authorization, Defendants independently may obtain any additional records directly from Ms. Mofield. The motion as to Ms. Mofield should be denied as moot.

   B. Dr. Achiamah Osei-Tutu — Records Produced on or about June 30, 2026; Delay Caused Solely by Provider's Vacation

Dr. Osei-Tutu was on vacation and engaged in medical mission work during the period surrounding the June 9 deadline. Her records were signed June 22, 2026, and produced to Defendants on or about June 30, 2026. The brief delay was caused entirely by the provider's personal unavailability — not by any act or omission of Plaintiff. Third-party provider delays not caused by the party do not constitute willful noncompliance sufficient to justify preclusion. Agiwal, 555 F.3d at 302.

   C. Dr. Bijan Setareh-Shenas — Single One-Visit Consultation; No Records Exist Beyond His Previously Produced Short Report

Dr. Setareh-Shenas saw Plaintiff on one occasion for a consultation. Defendants' own counsel acknowledged in the April 16, 2026, email: "We understand that Dr. Shenas is not likely to have any records beyond his short report previously produced." That report has been produced. There is nothing further to provide and no basis for preclusion.

   D. Dr. Jennifer Balfour — The One Outstanding Provider; On Vacation; Records Confirmed Forthcoming Within 30 Days

Dr. Balfour is presently on vacation and has confirmed that records will be produced upon her return within the coming weeks. Undersigned counsel represents to the Court that Dr. Balfour's records will be produced within thirty (30) days and consents to automatic preclusion if that deadline is not met. A targeted extension — not permanent preclusion — is the proportionate remedy for a single provider's vacation-related delay. Shcherbakovskiy, 490 F.3d at 140.

V.  The IME: Plaintiff Concedes the No-Show Fee and Consents to Expense Award Under Rule 37(B)(2)(C); The Adverse Inference Should Be Vacated and The Ime Rescheduled on Properly Served Notice

As a threshold matter, Defendants were not entitled to conduct an Independent Medical Examination of Plaintiff as a matter of right. Under Fed. R. Civ. P. 35(a)(2), a physical or mental examination may be ordered only by the Court, upon a showing of good cause, by motion served on all parties and the person to be examined, specifying the time, place, manner, conditions, and scope of the examination and the person who will perform it — or, in the alternative, by written stipulation of the parties. Fed. R. Civ. P. 35; Schlagenhauf v. Holder, 379 U.S. 104, 121 (1964). Defendants obtained neither. They did not move for a court order, and they did not reach a written or oral agreement with Plaintiff consenting to an IME or to the selection of Dr. Fayer as the examining physician. The designation was transmitted by email alone — an instrument that does not, standing alone, satisfy Rule 35 or constitute the required party consent. Accordingly, the June 23, 2026, IME was not properly noticed, and Plaintiff's non-appearance cannot constitute a sanctionable violation of a court order that never existed.

Notwithstanding Defendants' failure to comply with Rule 35's mandatory prerequisites, Plaintiff offers, as a gesture of good faith and in the interest of moving this litigation forward expeditiously, to pay Dr. Fayer's reasonable and documented no-show fee. This concession is made without any admission that the IME was properly scheduled or that Plaintiff was obligated to appear. Under Rule 37(b)(2)(C), in lieu of the sanctions enumerated in Rule 37(b)(2)(A), a court may require the party failing to obey an order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C); Alcon Vision, LLC v. Lens.com, Inc., No. 18-CV-407 (NG), 2020 U.S. Dist. LEXIS 210656, at *20 (E.D.N.Y. Nov. 10, 2020). An expense award for the no-show fee fully compensates Defendants for any actual costs incurred. An adverse inference, by contrast, effectively adjudicates Plaintiff's entire emotional distress damages case without any examination ever having been conducted — a result that is grossly disproportionate to any harm caused and unsupported by the record.

The email-only designation independently fails for a second and distinct reason: it did not constitute valid service under the Federal Rules or the Local Civil Rules of this Court.

Defendants' email-only designation independently fails for a second and distinct reason: it did not constitute valid service under the Federal Rules or the Local Civil Rules of this Court. Under Fed. R. Civ. P. 5(b)(2)(E), service of a discovery paper or order upon a party's attorney by electronic means — including email — is permissible only if the attorney has consented to such service in writing or is a registered user on the Court's Electronic Case Filing (ECF) system for that specific category of service. Fed. R. Civ. P. 5; Dempster v. Dempster, 404 F. Supp. 2d 445 (E.D.N.Y. 2005); Vaughn v. Consumer Home Mortg. Co., 470 F. Supp. 2d 248 (E.D.N.Y. 2007). Defendants never obtained Plaintiff's prior written consent to accept service of the IME designation by email, and an IME notice is not a document filed or served through the ECF system — it is a unilateral scheduling communication that requires either a court order or express party consent.

Because neither condition was satisfied, the email designation did not constitute legally sufficient notice, and Plaintiff's non-appearance cannot serve as the predicate for any sanction, let alone an adverse inference that would effectively dispose of her emotional distress damages claim. <u>Dormitory Auth. of the State of N.Y. v. Cont'l Cas. Co.</u>, 756 F. Supp. 2d 491, 501 (S.D.N.Y. 2010) (Rule 37 sanctions for IME non-appearance inappropriate where notice was deficient).

Plaintiff respectfully requests that the Court: (i) vacate the adverse inference in its entirety; (ii) direct the parties to meet and confer within ten (10) days to select a mutually agreeable examining physician and schedule a properly noticed Rule 35 IME — by court order or written stipulation — within thirty (30) days thereafter; and (iii) accept Plaintiff's good-faith offer to pay Dr. Fayer's documented no-show fee for the June 23, 2026 missed appointment as a voluntary expense contribution under Rule 37(b)(2)(C), without any admission that the IME was properly noticed or that Plaintiff was under any obligation to appear.

## VI.    <u>Emergency Relief Requested</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court:

(1) Immediately stay enforcement of the July 9, 2026, Order (Dkt. 48) pending resolution of this emergency motion;

(2) Schedule an emergency telephone conference at the Court's earliest convenience;

(3) Vacate the preclusion as to Ms. Mofield, Dr. Osei-Tutu, and Dr. Setareh-Shenas: Ms. Mofield's treatment summary and signed HIPAA release were produced eight days before the June 9 deadline; Dr. Osei-Tutu's records were produced June 30, 2026, the brief delay caused solely by the provider's vacation; and Dr. Setareh-Shenas conducted a single-visit consultation with no further records in existence — a fact acknowledged in writing by Defendants' own counsel in the April 16, 2026, email;

(4) Grant a thirty (30) day extension for Dr. Balfour's records — the only outstanding provider — with automatic preclusion if records are not produced within the time permitted, in lieu of immediate permanent preclusion;

(5) Vacate the adverse inference sanction, direct the parties to schedule a properly noticed Rule 35 IME within thirty (30) days, and order Plaintiff to pay Dr. Fayer's documented no-show fee for the June 23, 2026, missed examination, pursuant to Fed. R. Civ. P. 37(b)(2)(C) and Alcon Vision, LLC v. Lens.com, Inc., No. 18-CV-407 (NG), 2020 U.S. Dist. LEXIS 210656, at *20 (E.D.N.Y. Nov. 10, 2020); and

(6) To the extent any further award of expenses is appropriate, limit it to amounts directly and demonstrably caused by violations that survive this Court's full review of the complete factual and procedural record, including the April 16, 2026, meet-and-confer agreement.

The complete record — including the April 16, 2026, meet-and-confer email (Exhibit A), the June 1 Mofield production email (Exhibit B), Dr. Osei-Tutu's June 30 records (Exhibit C), and the email-only IME designation (Exhibit D) — will be filed with this letter, along with a copy of all of the decisions cited to herein. Undersigned counsel again takes full responsibility for the calendaring error and respectfully asks the Court not to allow the permanent forfeiture of injured clients' rights as the consequence of their

attorney's mistake. Plaintiffs stand ready to appear before the Court at any time convenient to Your Honor.

Respectfully submitted,

*s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor, Brooklyn, NY 11236-4160
(347) 342-7432 | tblackburn@tablackburnlaw.com
Attorneys for Plaintiffs Renita Francois and McEvans Francois

cc: All Counsel of Record (via ECF)