

July 10, 2026

Cameron Kamer
Cameron.Kamer@wilsonelser.com

**VIA PACER**

The Honorable Steven L. Tiscione, USMJ
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> **Re:    Francois, Renita et al. v. Bath and Body Works, LLC et al.**
> **Case No.: 2:25-cv-03725**

Dear Judge Tiscione,

Defendant The Premier Candle Corporation ("Premier") respectfully submits this letter in opposition to Plaintiffs' "Emergency Motion for Reconsideration of Order (Dkt. 48)." Premier will call this filing what it is: an attempt to obtain, after the fact and on an "emergency" basis, the very opposition opportunity that Plaintiffs already had, and let pass, not once, but on at least five separate occasions. The motion identifies no controlling decision or fact that this Court overlooked. It should be denied in its entirety.

Under Local Civil Rule 6.3, a motion for reconsideration must identify "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). It is not a vehicle for "relitigating old issues, presenting the case under new theories,. . .  or otherwise taking a second bite at the apple," *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). Further, reconsideration is properly denied absent an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Plaintiffs' motion satisfies none of these criteria; it simply recycles excuses that were available to Plaintiffs for weeks and that Plaintiffs chose not to raise until after the Court ruled.

**I. Plaintiffs' Own Motion Ignores the Rules It Invokes, and Plaintiffs Had Five Separate Chances to Meet a Deadline They Now Call an Accident**

This Court's Individual Rules, and Local Rules, limit letter motions and responses to three pages and require a response within five business days of receipt. Plaintiffs' motion is <u>untimely</u>, seven pages,  and invokes no novel arguments. A party that invokes this Court's rules to attack Defendants' conduct, while ignoring the same rules in its own filing, is not confused about the rules. <u>It is selective</u>.

Nor can Plaintiffs credibly claim surprise. Three attorneys, and staff, across two firms, all on ECF, received **five separate notices** that responses was due: Premier's motion (Dkt. No. 43), BBW's motion (Dkt. No. 44), Premier's supplemental submission (Dkt. No. 45), BBW's Motion for Sanctions (Dkt. No. 46) and the Court's June 30 notice scheduling the July 9 hearing. Plaintiffs filed no opposition and did not appear. A calendaring error might explain one missed date on one lawyer's calendar. It does not explain a month of silence across an entire litigation team, with discovery closing in days.

1133 Westchester Avenue • White Plains, NY 10604 • p 914.323.7000 • f 914.323.7001

Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston • Indiana • Kentucky
Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • New Jersey • New Orleans • New York • Orlando • Philadelphia • San Diego • San Francisco
Stamford • Virginia • Washington, DC • West Palm Beach • White Plains

wilsonelser.com



- 2 -

## II. The April 16 "Agreement" Does Not Excuse Noncompliance — and Plaintiffs' Own Production Undercuts Their Claim of Compliance

Plaintiffs' lead argument — that the Court failed to "consider" an April 16, 2026, meet-and-confer agreement — is not new evidence; it is an issue the Court already resolved.  The agreement was expressly referenced in the Court's April 17, 2026, Order (Dkt. 34), which denied BBW's first motion to compel as moot precisely because the parties represented they had reached it, and again in Defendants' June 15, 2026 motions. What the Court found, and what Plaintiffs' motion omits, is not that the agreement failed to exist, but that <u>Plaintiffs did not honor it</u>. Premier respectfully refers the Court to its underlying motion detailing Plaintiffs' noncompliance.

More troubling, the production Plaintiffs point to as proof of compliance does not hold together on its own terms. Plaintiffs' counsel represented to this Court on June 2, 2026, that authorizations had "already been sent" to the providers weeks earlier — a representation this Court relied on in setting the June 9 and June 12 deadlines in its Order (Dkt. 41), both of which Plaintiffs then missed. Records recently produced for Dr. Osei-Tutu include a letter dated April 25, 2026, attached an authorization dated more than **<u>five weeks in the future</u>**, on June 1, 2026. An authorization cannot postdate the letter it purportedly authorized. That inconsistency is not a clerical curiosity; it is a reason for this Court to question whether Plaintiffs' counsel's representations about when and how compliance occurred can be taken at face value.

## III. This "Emergency" Is the Latest Example of a Pattern: Ignore the Deadline, Wait for a Motion, Then Ask Forgiveness

Plaintiffs portray this filing as an isolated mistake. It is not. Rather, it reflects a recurring pattern of ignoring deadlines, offering excuses only after faced with motion practice, and seeking additional time. Premier served its first authorization requests in February 2026, yet Plaintiffs' noncompliance required multiple motions to compel and two Court Orders, including the June 2 Order setting June 9 and June 12 deadlines—both missed. Plaintiffs also failed to appear for two Rule 30(b)(6) depositions they noticed, failed to appear for a duly noticed IME, and allowed **<u>Defendants' five motion filings</u>**, to proceed entirely unopposed before failing to appear at the July 9 hearing. This is not an isolated oversight, but a consistent pattern of delay and disregard for Plaintiffs' discovery obligations and Court orders.

Further, in their Motion, Plaintiffs identify no error in the Court's analysis—only a request for one more chance. The relevant preclusion factors remain unchanged: Plaintiffs offer no credible explanation for their noncompliance, Defendants continue to suffer prejudice from further delay, given a discovery deadline now days away, and the "continuance" Plaintiffs request is one they have already received, repeatedly, without benefit to anyone but Plaintiffs.

## IV. Plaintiffs' Rule 35 and Service Arguments Are Waived and Cannot Be Squared With Plaintiffs' Own Position

Plaintiffs argue for the first time that the IME designation was defective because no Rule 35 order was obtained and because it was transmitted by email rather than formally served under Rule 5. Both arguments come too late, and neither survives scrutiny.

Plaintiffs had actual notice. The designation was sent on May 13, 2026, discussed at the June 2, 2026 conference—at which Plaintiffs' counsel appeared without objection—and re-sent by email on June 8, 2026. A party who participates in a conference where an IME is discussed, receives multiple notices, raises no objection, and simply fails to appear waives any later challenge to the form of notice. *See Schlagenhauf,* 379 U.S. 104 (1964).

**WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 3 -

Plaintiffs' position is also internally inconsistent. They simultaneously contend they lacked notice of the IME and that Defendants had no right to compel one. If Plaintiffs knew of the examination, any objection should have been raised before the missed appointment—not after sanctions were imposed.

Nor can Plaintiffs selectively disavow email as a means of communication. The parties have exchanged discovery by email throughout this litigation without objection from either side. Plaintiffs cannot treat email as binding when it produces an agreement they want enforced, and as legally void when it produces a notice they would prefer to ignore.

## V. A Note on Plaintiffs' Reliance on Caselaw

For example, Plaintiffs cite *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274 (S.D.N.Y. 2024), for the general four-factor willfulness test — but that citation actually cuts against them. In *Icon*, the court precluded evidence at issue and awarded fees against a noncompliant party that raised essentially the same excuse Plaintiffs raise here: that the failures were counsel's fault, not the client's. The *Icon* court rejected that argument, holding that an attorney's willfulness is imputed to the client absent evidence the client tried to monitor counsel's handling of the case, and it precluded the party's late-produced evidence despite that excuse. Plaintiffs cite *Icon* as if it supports leniency, when it is actually a case where the same four factors led to sanctions against a client blaming its lawyer.

Plaintiffs also attempt to rely on *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759 (2d Cir. 1990). However, Plaintiffs materially misstate the holding. Plaintiffs' motion substitutes "preclusion" for "dismissal with prejudice" while otherwise preserving the case's exact phrasing. *Bobal* does not, in fact, use the word "preclusion." Rather, the Second Circuit held that "dismissal with prejudice is a harsh remedy to be used only in extreme situations," focusing on a pro-se plaintiff. By replacing "dismissal with prejudice" with "preclusion," Plaintiffs materially alter the court's holding and overstate the scope of *Bobal*. That distinction is significant because dismissal terminates an action entirely, whereas evidentiary preclusion is a lesser discovery sanction serving a different purpose.

## VI. Conclusion

For the foregoing reasons, Premier respectfully requests that the Court deny Plaintiffs' Emergency Motion for Reconsideration in its entirety, deny Plaintiffs' request to stay Dkt. 48, deny any further extensions, and, should the Court determine that a further conference is warranted, require the parties to appear in person rather than telephonically in light of the notice, service, and calendaring disputes raised by Plaintiffs so that the record may be fully developed.

Plaintiffs have had months of accommodations, court orders, and extensions. What they have not had, at any point, is a reason for their conduct that survives scrutiny. Reconsideration is not warranted where, as here, the movant's only argument is that it should be spared the consequences of a pattern it created.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

By: _____

Cameron F. Kamer, Esq.
*Attorneys for Defendants*
**THE PREMIER CANDLE CORPORATION**