

David S. Osterman  |  Partner
Direct 609.986.1310  |  dosterman@goldbergsegalla.com

July 13, 2026

Honorable Steven L. Tiscione, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

>              **Re:**    ***Francois, Renita v. Bath & Body Works, LLC et al.***
>                        **Case No. 2:25-cv-03725**

Dear Judge Tiscione:

Defendant Bath & Body Works, LLC ("BBW") respectfully submits this letter in opposition to Plaintiff's "Emergency Motion for Reconsideration of Order" [Dkt. 48].

There is no basis to grant Plaintiff's request. "Reconsideration of a court's previous order is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.' *Amadi v. United States*, 2025 U.S. Dist. LEXIS 186006, at \*8-9 (E.D.N.Y. Sep. 22, 2025), quoting *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005). Plaintiff's motion fails to meet the high burden of showing "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020).  Plaintiff can show none of those things.

Plaintiff argues that "[r]econsideration is warranted to prevent manifest injustice." Case law does not support her position. "In the context of a motion for reconsideration, 'manifest injustice' is defined as an error committed by the trial court that is ***direct, obvious, and observable.***" *Idowu v. Middleton, No. 12 Civ. 1238*, 2013 U.S. Dist. LEXIS 13843, 2013 WL 371657, at \*1 n.1 (S.D.N.Y. Jan. 31, 2013) (emphasis added). Put differently, reconsideration to prevent "manifest injustice" "is not warranted ***unless the prior decision is dead wrong.***" *In re Air Crash at Belle Harbor, N.Y.* 2007 WL 4563485, at \*1 n.1 (S.D.N.Y. Dec. 18, 2007)(emphasis added).  That is clearly not the case here.

Plaintiff makes no attempt to argue that the controlling law has changed, nor does she cite any new facts.  Instead, she insists she has a "complete factual defense on the merits" that she and her attorney failed to bring forth because of a "calendaring error."

**Please send mail to our scanning center at: PO Box 580, Buffalo NY 14201**

**OFFICE LOCATION** 301 Carnegie Center, Suite 200, Princeton, NJ 08540-6587  |  **PHONE** 609-986-1300  |  **FAX** 609-986-1301  |  **www.goldbergsegalla.com**

CALIFORNIA | CONNECTICUT | DELAWARE | FLORIDA | ILLINOIS | NEW JERSEY | NEW YORK | NORTH CAROLINA | MARYLAND | MISSOURI | PENNSYLVANIA

57809368.v1

A careful review of the submissions (including the multiple prior motions relating to this same issue) reveals that the facts resemble an indictment more than a complete defense. Additionally, her attorneys' failure to appear (again) for the hearing is not the reason the Court characterized her motion as unopposed. The motion was deemed unopposed because she (again) failed to submit any written opposition to the motion.

Plaintiff's so-called "complete defense on the merits" is that she is now (finally) in the process of complying with the parties' April 13th agreement to produce records. Plaintiff's "defense" of compliance with the prior agreement is frivolous, if not outrageously false.

Plaintiff's counsel begins by <u>falsely</u> accusing the Defendants of having "omitted from their motion papers" details about the April 13th agreement. This is patently untrue. BBW's May 19, 2026, motion papers [Dkt 38] described the agreement *in detail* (at pg 1) and attached (as Exhibit A) the email chain documenting both the original agreement and BBW's multiple attempts to get Plaintiff to honor the agreement. Plaintiff further falsely claims that she has now complied with the April 13th agreement. Again, that is simply and demonstrably not true.[1] Defendant's May 19th motion was filed for the simple reason that Plaintiff had failed to take any steps to honor her promise to allow Defendants to collect her medical records as part of their investigation of her claims and she failed to respond to multiple emails inquiring about the records. Although Your Honor's rules required Plaintiff to submit any opposition to BBW's motion within five (5) business days, Plaintiff did **not** file written opposition to that motion.

On May 29, 2026, BBW filed another letter with the court, this time specifically addressing Plaintiff's failure to provide redacted records from a therapist, Jessica Mofield, and specifically requesting an order compelling plaintiff to provide a signed authorization *directly to Defendants* so that Defendants could collect the records themselves, rather than waiting for Plaintiff and her

---

[1] Although BBW first demanded medical authorizations in December, 2025, as of this date we still have neither records nor authorizations for Plaintiff's treating doctors Balfour or Setarech-Shenas, and we received only an incomplete record summary for the therapist (Mofield). Mofield's "summary" is incomplete as it is missing the past year of treatment. Dr. Osei-Tutu emailed records to Premier's counsel (not to BBW) the night before the last hearing. BBW received the records when they were shockingly attached to Plaintiff's reconsideration motion as a public filing. BBW still does not have a HIPPA compliant authorization allowing it to serve and enforce its own subpoena to collect her complete records and therefore no way to be certain if the records are complete. More troublingly, and as detailed in Premier's opposition letter, Plaintiff appears to have amateurishly backdated a cover letter to one provider on April 24, to make it look like she sent an authorization that was not signed until June 1st.

counsel to continue to slow walk the process. [Dkt 39]. Plaintiff did **not** submit written opposition to that motion either.

On June 2, 2026, one of Plaintiff's counsel (Mr. Blackburn) appeared during a telephonic hearing with the Court. Plaintiff's counsel told the court and all counsel that his client had signed authorizations that he promptly sent to all of the providers, but he blamed the providers for the delays in responding. I told the Court in response that the reason we were now insisting on being provided the authorizations (rather than relying on Plaintiff to send the authorization) was so that Defendants could move to compel production directly from the providers if there were any delays. ***The Court agreed and ordered Plaintiff to provide Defendants with copies of the authorizations (that counsel said had already been sent to the Providers) and copies of counsel's correspondence to the Providers***. Plaintiff was ordered to do so by June 9, 2026. [Dkt 41]. Shockingly (but by this point not surprisingly), Plaintiff failed to comply with the Order.

On June 15, 2026, BBW was forced to file another motion, this time to preclude the providers covered by the prior order.[Dkt 44]. Plaintiff did **not** submit written opposition to this motion either. After Plaintiff failed to appear for a properly noticed IME, BBW moved again, this time for sanctions and to preclude Plaintiff's emotional distress claim in its entirety. [Dkt 46]. Once again, Plaintiff did **not** submit written opposition to this motion.

This is not simply a matter of one attorney mistakenly calendaring the due date of one motion. It is worth emphasizing that Plaintiff is represented by ***two different law firms***. A total of seven (7) individuals receive ECF notices from the court about this case on Plaintiff's behalf.



Additionally, Mr. Blackburn has ECF notices forwarded to a calendaring service entitled "Docket Bird", a service designed to prevent the very thing he claims happened here:



See: www.docketbird.com.

The evidence suggests that Plaintiff's repeated delays and obstructive behavior throughout this case is a *tactic* designed to frustrate discovery and drive-up defense costs, and not a simple one time "calendaring error." It is simply too much to believe that **seven people** assisted by a professional docketing service managed to somehow overlook **multiple** motions that detailed and alleged **repeated** discovery violations, including:

- failure to provide authorizations allowing defendants to obtain medical records despite multiple requests, a negotiated agreement, and eventually a court order;
- failure to appear at depositions that were scheduled and confirmed by Plaintiff's counsel; and,
- failure to appear for a properly noticed medical exam,

This is not a one-time, excusable mistake. *It is a pattern*. Plaintiff's failure to respond to Defendant's June 15th and June 29th motions [Dkts 44 and 46] is no different than her failure to respond to Defendant's May 19th and May 29th motions [Dkts, 38 and 39]. It is consistent with her pattern of obstructing BBW's attempts to collect her medical records going back to December.

July 13, 2026
Page 5

       Plaintiff's motion for reconsideration should be denied. The court's decision was not "dead wrong", nor does it represent a "manifest injustice."  It was plainly correct.

       Respectfully submitted,

       David S. Osterman


DSO:cao
cc:     All Counsel of Record