**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| RENITA FRANCOIS AND MCEVANS FRANCOIS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 2:25-cv-03725 |
| | § | |
| BATH & BODY WORKS, LLC., THE PREMIER CANDLE CORPORATION, ABC CORPORATION 1-10, and JOHN AND JANE DOES 1-10, Defendants. | § § § § § | |

---

**DEFENDANT PREMIER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THE EMERGENCY MOTION FOR RECONSIDERATION AND MOTION TO EXTEND DISCOVERY**

---

## PRELIMINARY STATEMENT

Defendant The Premier Candle Corporation ("Premier") respectfully submits this Memorandum of Law in Opposition to Plaintiffs' supplemental submission (Dkt. 57), filed under seal on July 24, 2026, pursuant to the Court's July 21, 2026 minute order (Dkt. 56). Premier incorporates by reference the arguments and record citations in its July 10, 2026 and July 15, 2026 oppositions (Dkt. Nos. 50, 54) and Bath & Body Works' July 17, 2026 opposition (Dkt. 55).

Plaintiffs' supplemental submission fails for three independent reasons. First, it exceeds the limited scope of the Court's authorization by advancing entirely new legal theories that were neither raised in the underlying motions nor invited by the Court. Second, the objective record affirmatively contradicts Plaintiffs' newly asserted timeline. Throughout the period now

1

characterized as one of personal hardship, counsel continued to actively litigate this case and numerous others, while never advising either Defendants or the Court that those circumstances affected his ability to comply with discovery obligations. Finally, the supplemental submission represents the latest in a recurring pattern of shifting, after-the-fact justifications. Only after prior explanations—including calendaring error, trial commitments, alleged discovery deficiencies, and other excuses—proved unsuccessful did Plaintiffs invoke the personal circumstances now advanced.

The Court need not question the legitimacy of counsel's personal circumstances to deny relief. Even accepting those circumstances as genuine, Plaintiffs have failed to demonstrate the diligence required by Rule 16(b)(4), and the record does not support disturbing the Court's July 9, 2026 Order or reopening discovery.[1]

---

[1] To preserve the confidentiality of Plaintiffs' sealed submission, Premier does not address the specific personal circumstances asserted therein. Nothing in this opposition should be construed as admitting or disputing those assertions. Instead, Premier confines its arguments to the objective procedural record, including the docket chronology, Plaintiffs' repeated discovery defaults, and the timing of Plaintiffs' disclosure, all of which demonstrate that Plaintiffs cannot establish the diligence or good cause required for the requested relief.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................................1

TABLE OF AUTHORITIES ..............................................................................................................4

PROCEDURAL HISTORY AND RELEVANT BACKGROUND.............................................................5

ARGUMENT.................................................................................................................................7

    **I.**    **Plaintiffs' Supplemental Submission Exceeds the Scope of the Court's Authorization**..........7

    **II.**    **The Objective Record Affirmatively Refutes Plaintiffs' Newly Asserted Timeline** ............8

        A.    Counsel Knew Exactly How and When to Disclose Personal Circumstances, Never Told Defendants or This Court, and Continued to Litigate This Action Throughout the Relevant Period **Error! Bookmark not defined.**

        B.    Counsel Knew the Mechanism for Disclosure and Used It Repeatedly in Other Matters and Even in This Case—But Never as to the Circumstances Now Claimed............**Error! Bookmark not defined.**

        C.    Counsel Never Told Premier or the Court, and Instead Continued to Actively Litigate This Action Throughout the Relevant Period ............................................. **Error! Bookmark not defined.**

    **III.**    **Counsel's Own Withdrawal Narrative Was Selective, and His New-Filing Activity Is Fundamentally Inconsistent With a Claim of Incapacity**...................................................12

        A.    The Selective and Unfulfilled December 2025 Withdrawal.......................................................12

        B.    Counsel's New Lawsuits Filed During the Claimed Incapacity Period ....................................13

        C.    Counsel's Contemporaneous Filings in Other Pending Litigation ...........................................15

    **IV.**    **Co-Counsel's, Rodeny Diggs, Continued Involvement Further Undermines Any Claim of Incapacity** .................................................................................................................................17

    **V.**    **Plaintiffs' Belated Reliance on Personal Circumstances Is the Latest in a Recurring Pattern of Shifting, After-the-Fact Justifications** .............................................................................19

    **VI.**    **Plaintiffs Cannot Establish Good Cause Under Rule 16(b)(4) Because Every Material Delay Was Their Own Doing** .......................................................................................................21

    **VII.**    **Premier Would Be Substantially Prejudiced by Crediting Yet Another Newly Asserted Justification** ........................................................................................................................23

CONCLUSION.............................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*AMW Materials Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67 (E.D.N.Y. 2003) ................... 21

*Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002) ........................................................... 22

*Carnrite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 441 (W.D.N.Y. 1997) ....................... 21

*DiGennaro v. Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012) ....................................................... 20

*Dowling v. City of Philadelphia*, 855 F.2d 136, 139–40 (3d Cir. 1988) ...................................... 22

*Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) ..................................................... 18, 20, 21

*Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274 (S.D.N.Y. 2018) ..................... 7

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361 (S.D.N.Y. 1997) ......... 7

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ................................. 18, 21

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009) ...... 20

*Shemendera v. First Niagara Bank N.A.*, 288 F.R.D. 251, 252 (W.D.N.Y. 2012) ....................... 22

*Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21 (E.D.N.Y. 2025) ................................................. 21

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 164 n.5 (S.D.N.Y. 2015) ................................................................................................................................................. 7

**Statutes**

Fed. R. Civ. P. 37(b)(2)(A) ............................................................................................................... 19

Rule 6(b)(1)(B) ...................................................................................................................................... 7

Rule 60(b)(6), .......................................................................................................................................... 7

**Other Authorities**

3 Moore's Federal Practice §16.14[1][b] ........................................................................................... 21

## PROCEDURAL HISTORY AND RELEVANT BACKGROUND

Since the filing of the Amended Complaint (Dkt. No. 9), the record reflects a sustained pattern of noncompliance by Plaintiffs, and their counsel, with Court-ordered deadlines and discovery obligations, met at each turn by Defendants' diligent motion practice. Despite two offices of record, Plaintiffs' counsel first failed to appear at the January 5, 2026, initial conference despite multiple attorneys of record being listed on the docket (Dkt. No. 17), an omission for which counsel submitted a same-day letter accepting "full responsibility" (Dkt. No. 18). That representation did not translate into subsequent compliance.

Following Plaintiffs' dilatory discovery efforts, Defendants were forced to seek judicial intervention through motion practice. At the April 17, 2026 hearing, the Court granted in part Bath & Body Works' letter motion for discovery (Dkt. No. 29) and Premier's motion to compel discovery responses and for a protective order (Dkt. No. 30), directing Plaintiffs to serve supplemental discovery responses by May 1, 2026, and extending fact discovery to July 14, 2026. (Dkt. No. 34.) Despite that relief and the additional time afforded by the Court, Plaintiffs neither timely complied with the Court's Order nor produced the outstanding discovery that Defendants had demanded well before being compelled to resort to motion practice.

By the June 2, 2026, hearing, the Court found that Plaintiffs still had not produced the supplemental responses discussed at the April 17, 2026, conference, nor the medical authorizations Defendants had been separately pursuing since May 19, 2026, (Dkt. No. 38) and May 29, 2026, (Dkt. Nos. 39, 40). The Court accordingly granted Defendants' motions to compel (Dkt. Nos. 38, 40), ordering production of authorizations by June 9, 2026, and further supplemental responses by June 12, 2026 (Dkt. No. 41).

Despite Cour order, Plaintiffs' repeated failure to comply with their discovery obligations culminated in Defendants' June 2026 motion practice. On June 15, 2026, Premier and Bath & Body Works each moved for discovery-related relief, including preclusion. (Dkt. Nos. 43, 44.) Bath & Body Works thereafter filed a separate motion for sanctions on June 29, 2026. (Dkt. No. 46.) <u>Plaintiffs neither opposed any of those motions nor appeared at the July 9, 2026 hearing</u>. As the Court observed, "Plaintiffs did not appear at the hearing and never responded to any of the motions filed by Defendants," and accordingly granted all three motions. (Dkt. No. 48).

Based upon Plaintiffs' repeated violations of the Court's April 17 and June 2 discovery orders, the Court precluded Plaintiffs, pursuant to Rule 37(b)(2)(A), from introducing evidence concerning treatment from four medical providers, precluded reliance upon documents withheld in violation of those Orders, and, based upon Plaintiff's failure to appear for her properly noticed independent medical examination, awarded Defendants their resulting costs and fees, an adverse inference regarding Plaintiff's emotional distress claims, and the reasonable expenses incurred in bringing the underlying motions. (Dkt. No. 48).

Rather than demonstrate compliance with the Court's prior Orders or establish good cause for their repeated defaults, Plaintiffs sought an "emergency" reconsideration of the July 9 Order (Dkt. No. 49), followed days later by an application seeking a 45-day extension of fact discovery. (Dkt. Nos. 52-53). Both Premier and Bath & Body Works separately opposed each application. (Dkt. Nos. 50-51, 54-55).

For all reasons set forth below, Plaintiffs have failed to establish good cause, excusable neglect, or any basis to disturb the Court's prior rulings. Accordingly, Plaintiffs' motion should be denied in its entirety.

**ARGUMENT**

I.    **Plaintiffs' Supplemental Submission Exceeds the Scope of the Court's Authorization**

As an initial matter, the Court's minute order directed Plaintiffs to submit "a supplemental memorandum in support" addressed to the diligence question raised at the July 21 hearing—a narrow inquiry into whether personal circumstances warranted a short extension. (Dkt. 56). What Plaintiffs filed is a 17-page memorandum of law with a table of contents, a table of authorities citing more than a dozen cases, and five sections advancing legal theories **never presented in the underlying motions**—including excusable neglect under Rule 6(b)(1)(B), relief under Rule 60(b)(6), and a six-factor test for reopening discovery.

It is well established that a court need not consider arguments or legal theories raised in supplemental submissions that exceed the scope of the leave the court granted. *See Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274 (S.D.N.Y. 2018) (court need not consider new claims or arguments raised in supplemental filings submitted without leave); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361 (S.D.N.Y. 1997) (declining to consider supplemental papers where the party lacked court authorization to make the additional submission, recognizing that supplemental briefing is not permitted absent authorization under the applicable rules or leave of court); *see also Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 164 n.5 (S.D.N.Y. 2015) (disregarding supplemental letter that "improperly raises new arguments after the close of briefing and argument, without having sought or obtained permission for such a submission").

The principle applies with equal force here. The Court's authorization was limited to the diligence question with respect to Plaintiff's "personal circumstance" justifications for their dilatory efforts; it did not invite briefing on excusable neglect, Rule 60(b)(6) relief, or a multi-

factor test for reopening discovery. Having been granted narrow leave to address one issue, Plaintiffs may not bootstrap that limited invitation into an opportunity to relitigate their entire position under new legal standards never previously raised. Premier respectfully requests that the Court disregard any portion of Dkt. 57 beyond the narrow inquiry it invited.

## II.    The Objective Record Affirmatively Refutes Plaintiffs' Newly Asserted Timeline

Plaintiffs' sealed submission asserts that personal circumstances impaired counsel's ability to meet this Court's deadlines during the relevant period.[2] The objective record, however, tells a different story. It demonstrates that counsel continued to litigate this case and numerous others throughout the very period now claimed as one of impediment, rendering Plaintiffs' newly asserted timeline irreconcilable with the contemporaneous record.

### A. Counsel Demonstrated That He Knew How to Timely Disclose Personal Impediments to the Court

On December 3, 2025, more than seven months before Dkt. 57, counsel filed a Notification of Leave of Absence in the U.S. District Court for the District of New Jersey, *Kertesz v. Colony Tire Corp.*, No. 2:24-cv-08419-JKS-JBC, ECF No. 13, disclosing an inability to continue actively practicing in that matter. That filing is annexed to Plaintiffs' own sealed submission as an exhibit. Having invoked exactly this mechanism in another federal court, counsel cannot credibly claim ignorance of the need, or the means, to give this Court the same notice at any point between December 2025 and July 24, 2026. He never did.

Moreover, despite that announced withdrawal, counsel did not in fact withdraw from *Kertesz* or from any of the four other District of New Jersey matters he identified in the December

---

[2] *Supra* note 1.

3, 2025 letter (*Fred v. American Honda,* 2:25-cv-17979 (D.N.J.)*; Yewaisis v. Union County Savings Bank,* 2:25-cv-1536 (D.N.J.); *Hildebrandt v. Siparadigm Diagnostics,* 2:24-cv-265 (D.N.J.)). **He continued to actively litigate each of them**. And the December 3 letter failed to mention additional pending matters in which counsel was simultaneously active—*Braithwaite v. Talavera,* 2:24-cv-8910 (D.N.J.); *Gardner v. Combs,* 2:24-cv-7729 (D.N.J.); *and Roque v. Venetian Care,* 3:23-cv-20659 (D.N.J.); —all of which counsel continued to litigate without any claim of incapacity. From December 3, 2025 through present, counsel made at least 31 appearances or filings across these matters alone.

The December 2025 filing was not an isolated instance. Counsel has consistently demonstrated, across multiple matters spanning 2023 through early 2026, that when travel or medical circumstances impede his ability to meet a deadline, he discloses the impediment to the court immediately and in writing. In *Clovey v. NYU Langone Hospital et al.*, Supreme Court, Queens County, Index No. 711511/2022, Mr. Blackburn wrote to the court, two weeks before a scheduled status conference, explaining that he "will be out of the country on a preplanned trip and cannot attend the Court Status Conference" and providing a specific return date. (*See* Exhibit "C"). In *Lewis v. Rivers, Supreme Court*, New York County, Index No. 952337/2023, Mr. Blackburn wrote on October 15, 2024 that he had "been dealing with serious health challenges, which have had a debilitating impact on my ability to file the opposition," proposed a new deadline, and offered to "provide my medical information to the court via direct email to chambers." He followed up on November 30, 2024, updating the court that his "health has improved" and the filing was complete. (*See* Exhibit "D"). And in *Cartagena v. Dixon*, S.D.N.Y., No. 1:25-cv-03552 (Rochon, J.), following medical procedures on January 23 and February 3, 2026, counsel notified

opposing counsel by email and separately advised the Court, requesting a two-month extension. (*See* Exhibits "E" and "F").

Critically, counsel's October 15, 2024 and November 30, 2024 "serious health challenges" letters in *Lewis v. Rivers* occurred contemporaneously with active mediation efforts in the present matter during that same October–November 2024 window, during which defense counsel communicated with counsel on an ongoing, collegial basis. **At no point during those communications did counsel indicate that he was experiencing any issue that might interfere with his ability to meet deadlines or represent Plaintiffs in this action**. This temporal overlap is dispositive: counsel disclosed a health impediment in one matter while remaining entirely silent about any impediment in this one, during the exact same period.

Similarly, in this case, whenever personal circumstances arose, Mr. Blackburn notified the parties and the Court. At Dkt. 18, counsel explained his absence from a January 5, 2026, conference as due to a "sudden and devastating family tragedy," representing "I remain fully committed to diligently prosecuting this action." On March 31, 2026, counsel advised of two family deaths and requested a 60-day extension, which was granted. (*See* Exhibit "G").[3] On June 5, 2026, counsel advised he was on a "long-haul flight" and represented supplemental Rule 26 disclosures would be served upon landing. (*See* Exhibit "H"). The significance of these communications is that **counsel plainly knew how to seek relief when personal circumstances affected his practice**—yet during the period now claimed as one of total incapacity, he never once attributed any failure to personal circumstances or sought relief on that basis.

---

[3] Throughout this litigation and now, both Mr. Blackburn and Mr. Diggs repeatedly represented, either expressly or through their litigation conduct, that they intended to diligently prosecute this action. The procedural record demonstrates otherwise, reflecting repeated missed deadlines, discovery defaults, and failures to comply with Court orders.

B.  Counsel Never Invoked the Circumstances Now Asserted Until After Plaintiffs' Dilatory Conduct Resulted in Adverse Discovery Rulings

Counsel did not merely refrain from disclosing the circumstances now described in Dkt. 57—he affirmatively continued to prosecute this action and repeatedly sought relief from the Court without identifying any personal circumstance as affecting Plaintiffs' ability to comply with their discovery obligations. Indeed, after missing the January 5, 2026 settlement conference for an unrelated reason, Mr. Blackburn represented to the Court that he "remain[ed] fully committed to diligently prosecuting this action." (Dkt. 18).

Mr. Blackburn participated in the April 16, 2026 meet-and-confer that resulted in a written discovery agreement, appeared at the April 17, 2026 scheduling conference where he requested a 60-day extension without identifying any personal impediment (Dkt. 34), and again appeared at the June 2, 2026 hearing without attributing Plaintiffs' continued discovery failures to any such circumstance.

When he failed to appear at the July 9, 2026 hearing, Mr. Blackburn thereafter filed a detailed "Emergency" Motion for Reconsideration (Dkt. 49), supported by case law and a four-factor preclusion analysis, attributing his nonappearance solely to a "calendaring error." Days later, on July 13, 2026, he filed a further Application (Dkt. 52) and supporting Declaration (Dkt. 53), **advancing numerous additional justifications for Plaintiffs' delay**—including attempting to shift responsibility to Defendants based upon unfounded discovery deficiencies that had never previously been raised or pursued—**yet again made no mention of any personal impediment**.

Throughout this approximately seven-month period, Mr. Blackburn remained actively involved in the litigation—appearing before the Court, attending settlement conferences, negotiating discovery, serving deposition notices, preparing substantive motion papers, and

seeking affirmative relief. **Yet at none of these repeated opportunities did he advise Defendants or the Court that personal circumstances were affecting his ability to comply with Court-ordered deadlines.** Those circumstances were first raised only after Plaintiffs' repeated discovery defaults resulted in adverse rulings and their previously asserted explanations proved unsuccessful. This chronology is significant not because it calls into question the existence of counsel's personal circumstances, but because it bears directly on the weight to be afforded Plaintiffs' present attempt to invoke them to excuse months of noncompliance.

### III.   Counsel's Own Withdrawal Narrative Was Selective, and His New-Filing Activity Is Fundamentally Inconsistent With a Claim of Incapacity

A.  The Selective and Unfulfilled December 2025 Withdrawal

Plaintiffs' present filing represents that circumstances arising during the relevant period rendered counsel unable to meet this Court's deadlines in this action. That representation cannot be reconciled with the objective record of counsel's own conduct during the identical window.

If the circumstances now described genuinely impaired counsel's capacity to practice law, that impairment would not be expected to stop at the courthouse door of this action alone—yet the record reflects *no comparable curtailment of counsel's practice anywhere else*. To the contrary, the only precedent for a representation of this kind is counsel's own December 3, 2025, letter in a different federal case, and even that announcement was selective and ultimately unfulfilled: it identified only five District of New Jersey matters as bases for withdrawal, omitted at least three other matters counsel was actively litigating at the same time, and counsel did not in fact withdraw from any of the five matters he did identify. Counsel's own prior representation of an inability to

practice, in other words, was never comprehensive even on its own terms—and the present motion's representation fares no better. (*See* Plaintiff's Exhibit "B").

B.  Counsel's New Lawsuits Filed During the Claimed Incapacity Period

Perhaps the more fundamental problem is not what counsel *continued* during the relevant period; it is what he *began*. During the very period now described as one of impediment, counsel was not merely maintaining existing cases—he was **affirmatively commencing brand-new litigation across multiple jurisdictions**. Initiating a new lawsuit requires counsel to take on or continue a new representation, investigate the underlying facts, research the applicable claims, and draft—and, where required, personally verify under penalty of perjury—an original pleading, all before any filing can be made. Counsel cannot credibly represent to this Court that he was unable to attend to discovery obligations in this action because he was unable to practice law, while the record shows him undertaking that entire process anew, more than once, in multiple courts, during the same weeks. The record reflects at least 11 new cases filed by counsel in NYSCEF alone between February and July 2026:

*Nantongo v. Charles*, E.D.N.Y., No. 1:26-cv-1769 (filed Mar. 25, 2026); *In re The Venetian Care & Rehabilitation Center*, D.N.J. Bankr., No. 2:26-bk-14510 (filed Apr. 23, 2026); *Christman v. Shapiro*, Sup. Ct., Kings Cnty., Index No. 520111/2026 (filed May 29, 2026); *Blackburn v. Tacopina*, Sup. Ct., Kings Cnty., Index No. 523539/2026 (filed June 26, 2026); *Blackburn v. EHM Productions, Inc. et al.*, Sup. Ct., Kings Cnty., Index No. 523929/2026 (verified complaint dated June 24, 2026, filed June 26, 2026; 71 pages) (*See* Exhibit "A"); *Blackburn v. Reed Smith LLP et al.*, Sup. Ct., Kings Cnty., Index No. 524424/2026 (verified complaint dated

June 29, 2026, filed June 30, 2026; 62 pages) (*See* Exhibit "B"); and *Emer v. Kelley*, S.D.N.Y., No. 1:26-cv-5862 (filed in State Court on May 4, 2026).[4]

The distinction between continuing old matters and commencing new ones is not a semantic one. Both maintaining pending litigation and commencing new actions require active lawyering. The commencement of a new lawsuit, however, is an inherently affirmative decision that reflects counsel's determination that he was prepared to undertake additional professional obligations. Having elected to assume those new obligations, counsel cannot persuasively contend that he was simultaneously unable to satisfy the obligations already imposed by this Court.

Each of the eight filings identified above reflects a deliberate, affirmative decision by counsel—made with the presence of mind necessary to take on a new matter, evaluate its merits, and draft an original pleading—undertaken during the same weeks he now says he was unable to attend to comparatively modest discovery obligations in this action. The ability to initiate multiple new lawsuits across multiple jurisdictions, including two verified complaints totaling over 130 pages filed in a single two-week span in late June 2026, is flatly irreconcilable with an inability to attend to this action's discovery obligations during the same period.

Read together with the selective and unfulfilled withdrawal represented in the December 3, 2025 letter, the record permits only one conclusion: whatever the circumstances Plaintiffs now describe, they did not preclude counsel from performing complex, voluntary legal work during the relevant period—they simply were not brought to this Court's attention until every other justification for Plaintiffs' noncompliance had failed.

---

[4] The foregoing examples are illustrative rather than exhaustive and are offered solely to demonstrate the contemporaneous pattern reflected in the public record. Premier does not represent that these are the only matters in which counsel engaged in similar conduct during the relevant period.

C. Counsel's Contemporaneous Filings in Other Pending Litigation

Beyond initiating new lawsuits, counsel was also continuously engaged in substantial, contested litigation activity in other pending matters throughout the identical period. That activity was not passive: it consisted of counsel personally drafting, filing, and defending on the merits a steady stream of motions, oppositions, and declarations in matters unrelated to this action. The volume and substance of that contemporaneous work product is difficult to reconcile with an inability to attend to comparatively modest obligations in this action during the same weeks.

For example, in *Gardner v. Combs et al.* (D.N.J. 2:24-cv-7729), a case counsel conspicuously omitted from his December 3, 2025, withdrawal letter altogether, counsel nevertheless remained actively engaged throughout the very period in which he now contends he was incapacitated, making numerous filings, appearing before the court, and continuing to litigate the matter without ever attributing his conduct or any litigation deficiencies to the personal circumstances now advanced before this Court.

The richest evidence of contemporaneous litigation activity, however, comes from *Dixon v. Cartagena/Cartagena v. Dixon*, S.D.N.Y. Nos. 1:25-cv-05144 and 1:25-cv-03552 (Rochon, J.). On July 6, 2026, counsel confirmed payment of sanctions-related invoices to the court. (No. 1:25-cv-03552, ECF No. 209.) On July 7, 2026—the same day he filed a motion for leave to withdraw as counsel (No. 1:25-cv-03552, ECF No. 210) and two days before he filed the July 9, 2026 Emergency Motion for Reconsideration in this action (Dkt. 49)—counsel was simultaneously responding to allegations that he had included fabricated, artificial-intelligence-generated quotations in an opposition to a sanctions motion. (No. 1:25-cv-05144, ECF No. 108.) The following day, July 8, 2026, counsel filed a second, case-specific motion to withdraw (No. 1:25-

cv-03552, ECF No. 212), while opposing counsel filed sealed emergency motions seeking to strike counsel's filing. (No. 1:25-cv-03552, ECF Nos. 213–214.)

On July 10, 2026—one day after counsel attributed his conduct in this action solely to a "calendaring error"—Magistrate Judge Willis granted the motion to strike counsel's opposition, finding that his "repeated inclusion of fabricated quotes in his filings demonstrates a pattern of complete disregard for his ethical obligations," that he had "been sanctioned repeatedly for his reliance on AI without verifying the quotations and citations," and that although he "represented to a court last year that he understands words 'must never be enclosed in quotation marks unless they accurately reflect the precise language of the cited source,' he brazenly minimizes and attempts to justify identical behavior here." (No. 1:25-cv-03552, ECF No. 220.) The court referred him to the Southern District of New York's Grievance Committee.

This sequence corroborates the same point established earlier: courts have found that Mr. Blackburn's own contemporaneous conduct, not any incapacity, explains his repeated noncompliance with court orders—including the court's prior finding in the same litigation that "[o]nly after Plaintiff moved to compel compliance…did [Blackburn] inform the court that they would not attend the ordered deposition dates."[5] (No. 1:25-cv-03552, ECF No. 191.) In the identical week counsel now claims total incapacity in this action, he was drafting substantive filings, responding to serious ethical allegations, and defending himself against a motion for criminal contempt in another federal court.

---

[5] This conduct is materially indistinguishable from counsel's conduct in this case. Counsel of record failed to appear for both Court-ordered depositions, permitted multiple dispositive motions to go unopposed, and repeatedly allowed briefing deadlines to expire, only attempting to remedy those defaults through oral argument or untimely applications after the submission deadlines had already passed.

This pattern of contemporaneous activity is fundamentally inconsistent with the representation Plaintiffs now make to this Court. Mr. Blackburn asks the Court to accept that personal circumstances arising during this same period rendered counsel unable to meet his obligations in this action. (Dkt. No. 57). Yet during that identical window, counsel was drafting and filing an original new complaints, confirming payment of sanctions-related invoices, filing motions to withdraw, responding on the merits to serious allegations of fabricated citations, and defending against a motion for criminal contempt—all in other courts, all requiring sustained attention and legal judgment.

Whatever the circumstances described in the sealed submission, the record of counsel's contemporaneous activity elsewhere is difficult to reconcile with an inability to attend to the comparatively modest discovery obligations at issue in this action during the same period.

## IV. Co-Counsel's, Rodeny Diggs, Continued Involvement Further Undermines Any Claim of Incapacity

Further, Mr. Blackburn's attempt to insulate co-counsel Rodney Diggs and his office from responsibility for Plaintiffs' repeated discovery failures is unavailing.

Mr. Diggs has appeared as counsel of record throughout this litigation, actively participated in discovery, sought and obtained scheduling extensions, appeared in connection with settlement conferences, and otherwise remained involved in this action. Even accepting Plaintiffs' assertion that Mr. Blackburn functioned as "lead counsel," **the presence of multiple attorneys of record across multiple offices should have enhanced Plaintiffs' ability to comply with discovery**

**obligations and Court-ordered deadlines—not served as a shield against them**.[6] Indeed, one of the principal benefits of staffing litigation with multiple attorneys is to ensure continuity of representation and the orderly progression of the case when one attorney becomes unavailable.

If Mr. Blackburn's personal circumstances genuinely prevented timely compliance, Mr. Diggs or another attorney could have advanced the litigation, responded to outstanding discovery, or, at minimum, promptly notified opposing counsel and the Court that additional time was necessary. Instead, no attorney did so until after repeated deadlines had expired, multiple Court orders had gone unheeded, and Plaintiffs' prior explanations had proven insufficient.[7] That sequence of events further undermines any contention that Plaintiffs exercised the diligence required to establish good cause or excusable neglect and instead reinforces that the newly asserted justification is an after-the-fact attempt to explain months of inaction.

Taken together, the record is dispositive. The totality of counsel's conduct during the relevant period does not suggest any incapacity; rather, it evinces a pattern of responding to missed deadlines and sanctions motions with post hoc excuses only after the harm has already been done. A party genuinely experiencing a disqualifying impediment would have notified the Court at the first available opportunity—as counsel demonstrably knew how to do—rather than filing multiple rounds of detailed briefing in this Court, commencing eight new lawsuits in four jurisdictions, making 31 filings in other pending matters, and citing every justification except the one now offered. *See Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) ("Whether good cause exists

---

[6] As discussed in Premier's prior opposition papers, Mr. Diggs' office has been involved in this litigation since its inception. Indeed, in May 2026, attorneys from his office represented that they were assuming handling of the matter. Yet no meaningful action followed.

[7] Mr. Diggs' reliance on his trial schedule fares no better. Trial calendars are foreseeable, not unforeseen emergencies. Had his schedule genuinely affected Plaintiffs' ability to comply with the Court's Orders, he should have timely notified the Court and opposing counsel. Instead, that explanation surfaced only after Plaintiffs' repeated discovery defaults resulted in adverse rulings.

turns on the diligence of the moving party."); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

**V.**    **Plaintiffs' Belated Reliance on Personal Circumstances Is the Latest in a Recurring Pattern of Shifting, After-the-Fact Justifications**

The belated reliance on personal circumstances cannot be viewed in isolation. Rather, it is the latest in a recurring pattern in which Plaintiffs advance a new explanation only after the preceding one has been contradicted by the record:

When Plaintiffs' counsel failed to appear at the January 5, 2026, initial conference despite two attorneys of record being listed on the docket, the excuse offered was a same-day letter accepting "full responsibility" and acknowledging that the absence "caused inconvenience to the Court and to opposing counsel". (Dkt. 18).

At the April 17, 2026 hearing, the Court granted Defendants' discovery motions in part, ordering Plaintiffs to provide supplemental responses by May 1, 2026 and extending fact discovery to July 14, 2026. (Dkt. 34). **Plaintiffs took no action to comply**. At the June 2, 2026 hearing, the Court found that Plaintiffs **still had not produced the supplemental responses discussed** at the April 17 conference or the medical authorizations Defendants had requested, and accordingly granted Defendants' letter motions to compel authorizations, ordering production by June 9, 2026 and supplemental responses by June 12, 2026. (Dkt. 41).

Plaintiffs' continued inaction culminated at the July 9, 2026 hearing, where the Your Honor noted that "Plaintiffs did not appear at the hearing and never responded to any of the motions filed by Defendants," resulting in three defense motions—Premier's first motion for discovery re: preclusion, Bath & Body Works' letter motion for discovery, and Bath & Body Works' motion for sanctions—being granted. (Dkt. 48).

Those July 9 rulings led the Court to preclude Plaintiffs under Fed. R. Civ. P. 37(b)(2)(A) from introducing testimony or evidence concerning treatment from four named providers, to preclude any documents not produced in violation of the Court's April 17, 2026 and June 2, 2026 orders, and, because Plaintiff also failed to appear for her properly noticed independent medical examination, to award Defendants reimbursement of resulting costs and fees, an adverse inference on any claimed emotional distress damages, and reasonable expenses incurred in bringing the underlying motions. *Id*.

Rather than address those discovery failures, Plaintiffs pivoted to an emergency motion to expedite reconsideration of that order, filed the same day, which both Premier and Bath & Body Works opposed. (Dkts. 49 – 51). Days later, on July 13, 2026, Plaintiffs advanced yet another justification—an emergency application citing personal circumstances—seeking a 45-day extension of the fact discovery deadline, which both Defendants again opposed. (Dkts. 52 – 54, 55). **<u>Significantly, those filings made no mention of any personal circumstances</u>**.[8] Instead, Plaintiffs relied on counsel's trial schedule, advanced accusations of discovery deficiencies against Defendants, and asserted—incorrectly—that Defendants had failed to properly serve the IME notice. Only after those arguments proved unsuccessful did Plaintiffs, days later, file an emergency application seeking a 45-day extension of the discovery deadline based on personal circumstances. (Dkts. 52-55.)

Viewed chronologically, Plaintiffs' explanations follow a consistent pattern: when one justification proved insufficient or was contradicted by the record, another emerged in its place.

---

[8] Mr. Blackburn did not meaningfully rely on the asserted personal circumstances until after the Court rejected Plaintiffs' previously advanced explanations. Only then did counsel expand upon that argument. Although Defendants do not necessarily dispute the existence of those circumstances, the timing of their disclosure bears directly on the weight of Plaintiffs' latest explanation for their repeated discovery defaults.

The personal-circumstances explanation did not accompany Plaintiffs' months of discovery noncompliance, their violations of two Court orders, their failure to appear at the July 9 hearing, or their ensuing Emergency Motion for Reconsideration. It surfaced only after Plaintiffs' previously asserted explanations—including counsel's trial schedule, unfounded discovery deficiencies attributed to Defendants, and purported defects in the IME notice—failed to establish good cause. The Court need not question the legitimacy of counsel's personal circumstances to conclude that their belated disclosure does not demonstrate the diligence required by Rule 16(b)(4). *See DiGennaro v. Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012) (affirming finding of no good cause where plaintiff failed to act diligently within the scheduling order); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009) (good cause requires both justification for delay and due diligence); *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) ("Whether good cause exists turns on the diligence of the moving party.").

### VI. Plaintiffs Cannot Establish Good Cause Under Rule 16(b)(4) Because Every Material Delay Was Their Own Doing

Under Fed. R. Civ. P. 16(b)(4), a scheduling order "may be modified only for good cause." The Second Circuit has made clear that good cause "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000*).* Prejudice to the non-movant is irrelevant absent that threshold showing. 3 Moore's Federal Practice §16.14[1][b].

A party "does not meet its burden of showing good cause or diligence if the proposed basis rests on information it knew, or should have known, in advance of the relevant deadline." *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21 (E.D.N.Y. 2025) (cit*ing Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340–41 (2d Cir. 2000). That principle applies squarely here. Counsel necessarily knew of his own personal circumstances throughout the period in which Plaintiffs

repeatedly failed to comply with their discovery obligations and the Court's Orders. **Yet Plaintiffs never invoked those circumstances to seek timely relief from the scheduling order**. Only after the deadlines passed, adverse rulings followed, and their other asserted justifications proved insufficient did Plaintiffs rely upon circumstances that had been known to counsel all along. Such belated reliance on previously known facts does not establish the diligence necessary to demonstrate good cause.

The Eastern District of New York has emphasized the importance of strict enforcement in precisely these circumstances. In *AMW Materials Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67 (E.D.N.Y. 2003), the court found no good cause where counsel deliberately ignored a scheduling order, never sought to modify it, and later offered only inadvertence as justification. Quoting *Carnrite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 441 (W.D.N.Y. 1997), the court observed:

> "[S]trict enforcement of the good cause requirement of Rule 16 may seem like unnecessarily strong medicine, but if the courts do not take seriously their own scheduling orders who will?" (*AMW Materials Testing*, 215 F.R.D. at 75)

The record here—set forth in detail in Dkts. 54 and 55—demonstrates that every material delay was attributable to Plaintiffs' own counsel: depositions noticed and then abandoned without explanation; scope discussions left to lapse through Plaintiffs' silence after Defendants made good-faith proposals; and no deficiency letter, notice of deficient production, or motion to compel ever served—despite a representation to this Court that a motion to compel was "forthcoming." (Dkt. 54 at 1–2.) Indeed, Plaintiffs' own exhibits (A–H to Dkt. 52) contain no deficiency letter, no notice of any deficient production, and no motion to compel ever served on either Defendant. It was Defendants who repeatedly pursued discovery enforcement. (Dkts. 30, 38, 39, 43, 44, 45, 46.)

The parallel to the personal-circumstances excuse is direct: just as Plaintiffs' purported discovery disputes were never actually raised with Defendants or pursued through any available procedural mechanism before being deployed as a litigation excuse, counsel's personal circumstances were never identified to Defendants or the Court as an impediment to compliance until Plaintiffs' other justifications had proven unsuccessful. Both are after-the-fact explanations that do not demonstrate the diligence necessary to establish good cause. *See Shemendera v. First Niagara Bank N.A.*, 288 F.R.D. 251, 252–53 (W.D.N.Y. 2012) (denying extension where the party failed to diligently pursue discovery before the deadline and emphasizing that good cause turns on the moving party's diligence); *see also Dowling v. City of Philadelphia*, 855 F.2d 136, 139–41 (3d Cir. 1988) (rejecting claim that outstanding discovery prevented the party from proceeding where available procedural avenues, including a motion to compel, were never pursued).

## VII.    Premier Would Be Substantially Prejudiced by Crediting Yet Another Newly Asserted Justification

Permitting Plaintiffs to rely on yet another newly asserted justification at this late stage would substantially prejudice Premier. Throughout this litigation, Defendants have been required to investigate and respond to a succession of shifting explanations for Plaintiffs' repeated discovery failures. Each time one justification has proven insufficient, Plaintiffs have advanced another—from calendaring errors, to trial-schedule conflicts, to newly retained counsel, to personal circumstances. Only after every prior explanation failed, the motions were fully briefed, adverse rulings were issued, and the Court expressly questioned Plaintiffs' diligence did Plaintiffs invoke purported personal circumstances as their latest excuse.

Allowing Plaintiffs to continually revise the factual basis for their noncompliance would reward dilatory conduct, undermine the Court's scheduling orders, and force Defendants to

repeatedly litigate against an ever-evolving narrative rather than the contemporaneous reasons actually provided. Having diligently complied with their own obligations and litigated this matter in reliance on the Court's deadlines, Premier should not be prejudiced by Plaintiffs' latest *post hoc* rationalization Rule 16 was designed to prevent precisely this result.

## CONCLUSION

For all of the foregoing reasons, and for those set forth in Premier's July 10, 2026 and July 15, 2026 oppositions (Dkt. Nos. 50, 54), which are incorporated herein by reference, Plaintiffs have failed to establish good cause, excusable neglect, or any basis to disturb the Court's July 9, 2026 Order or reopen fact discovery. Accordingly, Premier respectfully requests that the Court 1) deny Plaintiffs' supplemental application and all related requests for relief in their entirety, 2) leave the Court's July 9, 2026 Order (Dkt. 48) undisturbed, maintain all previously imposed discovery sanctions and preclusion orders, and 3) grant such other and further relief as the Court deems just and proper.

Dated:  White Plains, New York
        August 4, 2026


Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


By:  _____
     Cameron Kamer, Esq.
     *Attorneys for Defendant*
     THE        PREMIER        CANDLE
     CORPORATION
     1133 Westchester Avenue
     White Plains, New York 10604
     (914) 323-7000

TO: **<u>VIA PACER</u>**

Tyrone Anthony Blackburn, Esq.
T.A. BLACKBURN LAW, PLLC
*Attorney for Plaintiffs*
1242 East 80th Street, Ste 3rd Floor
Brooklyn, New York 11236
(347) 342-7432

Rodney Diggs, Esq.
IVIE MCNEILL WYATT PURCELL & DIGGS
*Attorney for Plaintiffs*
444 S. Flower Street, Suite 3200
Los Angeles, CA 90071
(213) 489-0028

David S. Osterman, Esq.
Matthew George Miller, Esq.
GOLDBERG SEGALLA LLP
*Attorneys for Defendants Bathe and Body Works, LLC*
902 Carnegie Center, Suite 100
Princeton, NJ 08540
(609) 986-1300